**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CARLOS CABRERA, individually
and all others similarly situated,

CASE NO.: 12-cv-61390-KMW

*Plaintiff*,
vs.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, and
BELL, LLC,

*Defendants*.
_____/

**PLAINTIFF'S FIRST SET OF REQUESTS TO ADMIT TO DEFENDANT BELL, LLC**

Plaintiff Carlos Cabrera, pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby requests that Defendant Bell, LLC admit or deny the following under oath, within thirty (30) days of service of these Requests.

*I.     Definitions*

1. "ATTACHMENTS" means or refers to files or data that are physically or logically associated with or embedded into email, and should be identified by mapping to their parent by the DOCUMENT or production number.

2. "BELL" means or refers to Defendant Bell, LLC and its divisions, subsidiaries, RELATED companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all PERSONS acting or purporting to act on behalf of any of them.

3. "COMPLAINT" shall mean Plaintiff's Class Action Complaint filed in this

1

action.

4. "COMPUTER" or "COMPUTER EQUIPMENT" means all data processing equipment, INCLUDING central processing units (CPUs), whether contained in a server or free standing computer or laptop or PDA or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure or storage is virtualized, whether that data be structured or unstructured, and also INCLUDING any equipment where computer files (INCLUDING without limitation, records, DOCUMENTS, logs, and any other contiguous of non-contiguous bit strings), hidden system files or METADATA presently reside such as hard disk drives, optical disk drives, removable MEDIA, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing cards, computer magnetic tapes, backup tapes, drum and disk storage devices or any other similar electronic storage MEDIA or system of whatever name or description. "COMPUTER OR COMPUTER EQUIPMENT" also means all digital image evidence that may be stored on any type of hardware used to store or manipulate electronic images, INCLUDING microfilm, microfiche and their repositories and readers, or design or engineering computer systems and regardless of any digital image's format, INCLUDING .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings. "COMPUTER OR COMPUTER EQUIPMENT" also refers to sources of digital evidence that may not presently be in use by YOU or may have been deleted from YOUR active systems, whether the source is a backup tape or disk, some other data retention system or some form of disaster recovery system. "COMPUTER OR COMPUTER EQUIPMENT" also refers to places where digital evidence may reside that may have been deleted from YOUR active files and which may not be readily recoverable from a backup medium, such as METADATA.

5. "COMPUTER SYSTEM" refers to free standing servers, COMPUTERS and laptops, and also refers to YOUR network infrastructure and computer support systems of the or subject to YOUR possession, custody or control, such as YOUR subsidiaries, predecessors, successors, assigns, joint ventures, partners, parents, agents or affiliates (in this country or throughout the world), INCLUDING the following:

(a) YOUR LAN, WAN or other network systems, regardless of methods of connectivity (e.g., by T1, T3 or optical lines), domains, INCLUDING PDCs, network OS (such as Novell, Microsoft, UNIX, Citrix or some other similar type) or protocols, backup and disaster recovery hardware and media, regardless of the physical location of those electronic storage systems.

(b) YOUR email servers and any repository of email (INCLUDING within the inbox, sent box, deleted box or some similar file of the COMPUTERS of employees or management), or in any backup form whatsoever, regardless of whether you use Microsoft Exchange, Outlook, Outlook Express, Lotus Notes or some combination of email management software or some alternative commercial or proprietary email management software.

(c) YOUR administrative offices, INCLUDING backup and disaster recovery restoration plans and repositories, data retention plans and repositories, purge plans and repositories, training plans and repositories, and libraries of hardcopy materials of any description (regardless of where located) and online training and operation manuals that have been scanned to disk.

(d) YOUR offsite technical and service bureau support systems, INCLUDING ASP (application service provider) support, scanning or data conversion support,

offsite data storage or archive support.

(e) YOUR web hosting and administration services, INCLUDING intranet and extranet sites, regardless of whether they are now publicly posted or exist in English, or some other language.

6. "DATE" means the exact year, month and day, if known, or, if not known, YOUR best approximation thereof.

7. "DESCRIBE" or "DESCRIBING" when used in relation to any process, policy, act or event means to explain the process, policy, act or event in complete and reasonable detail, stating the time, DATE, and location, IDENTIFYING all PERSONS participating or present, and IDENTIFYING all DOCUMENTS RELATING thereto.

8. "ELECTRONICALLY STORED INFORMATION" or "ESI" as used herein, means and refers to COMPUTER generated information or data, of any kind, stored on COMPUTERS, file servers, disks, tape or other devices or MEDIA, or otherwise evidenced by recording on some storage MEDIA, whether real virtual, or cloud-based.

9. "GEICO" means or refers to Defendant Government Employees Insurance Company and its divisions, subsidiaries, related companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all PERSONS acting or purporting to act on behalf of any of them.

10. "INCLUDING" means "including, but not limited to;" "INCLUDES" means "includes, but not limited to."

11. "IDENTIFY" when used with respect to a natural PERSON, means to state the PERSON'S full name, present or last known business affiliation and position, past and present home address and past position and business affiliation, if any, with any of the parties herein.

12. "IDENTIFY" when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to IDENTIFY its principal proprietors, officers and/or directors.

13. "IDENTIFY" when used with respect to a DOCUMENT, means to state the DATE(S) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of DOCUMENT (e.g., "letter," "Terms of Service" or "email"), and to IDENTIFY its last known custodian or location.

14. "NUMBER TRAPPING" means or refers to the practice of utilizing caller identification technology to collect a PERSON'S phone number when that PERSON places a call to Defendants GEICO and/or BELL.

15. "PERSON" or "PERSONS" means or refers to any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

16. "PHONE CALLS" means or refers to the telephone calls described in the COMPLAINT REGARDING insurance subrogation claims.

17. "PLAINTIFF" means or refers to the plaintiff in this action, Carlos Cabrera.

18. "PROPOSED BELL CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the Bell Cellular Telephone Class and the Bell Robocall Class as set forth in Paragraph 25 of the COMPLAINT.

19. "PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the Bell Cellular Telephone Class as set forth in Paragraph 25 of the COMPLAINT.

20. "PROPOSED BELL ROBOCALL CLASS MEMBERS" means those PERSONS,

INCLUDING PLAINTIFF, who fall under the definition of the Bell Robocall Class as set forth in Paragraph 25 of the COMPLAINT.

21. "PROPOSED GEICO CLASSES" or "PROPOSED GEICO CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the GEICO Cellular Telephone Class and the GEICO Robocall Class as set forth in Paragraph 25 of the COMPLAINT.

22. "REGARDING", "RELATING", "RELATING TO", "RELATE" or "RELATED" means discussing, mentioning, addressing, referring to, analyzing, comprising, underlying, memorializing, describing, or showing the subject indicated.

23. "RELEVANT TIME PERIOD" means or refers to the time period between July 13, 2008 and the present.

24. "ROBOCALL" means or refers to telephone calls utilizing a pre-recorded or artificial voice rather than a live person.

25. "SKIP TRACE" means or refers to the practice of locating a PERSON'S contact information, including his or her phone number, through searching phone number databases, credit reports (*e.g.*, information provided on a loan application, credit card application, and/or in other debt collector databases), job application information, criminal background checks, utility bills, social security records, disability, public tax information, and other public and private contextual data sources to use available information (such as past or present name or address) to determine more current contact information.

26. "TCPA" means the Telephone Consumer Protection Act (47 U.S.C. § 227).

27. "TELEPHONE DIALING EQUIPMENT" means or refers to the telecommunications equipment, other telemarketing systems and/or COMPUTERS or

COMPUTER SYSTEMS used to make the PHONE CALLS.

28.     "YOU," "YOUR," "DEFENDANT," or "BELL," means or refers to Defendant Bell, LLC and its divisions, subsidiaries, related companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all PERSONS acting or purporting to act on behalf of any of them.

## II.     Instructions

1.      A matter is admitted unless, within 30 days after being served, YOU serve on the requesting party, through his counsel, a written answer or objection addressed to the matter and signed by YOU or YOUR attorney.

2.      If a matter is not admitted, YOUR answer must specifically deny it or state in detail why YOU cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that YOU qualify an answer or deny only a part of a matter, YOUR answer must specify the part admitted and qualify or deny the rest. YOU may assert lack of knowledge or information as a reason for failing to admit or deny only if YOU state that YOU have made reasonable inquiry and that the information YOU know or can readily obtain is insufficient to enable YOU to admit or deny.

3.      The grounds for objecting to a request must be stated. YOU may not object solely on the ground that the request presents a genuine issue for trial.

4.      Where a request addresses acts or omissions of any entity, it shall be construed and interpreted to apply to the acts or omissions of that entity and the acts or omissions of that entity's employees, assigns, contractors, and any other agent of that entity.

5.      Unless otherwise stated, all Requests pertain to the RELEVANT TIME PERIOD.

### III. Requests To Admit

1. YOU made PHONE CALLS to PLAINTIFF.

2. YOU made PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

3. YOU made PHONE CALLS to PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS' cellular telephones.

4. YOU were instructed by GEICO to make PHONE CALLS to PLAINTIFF.

5. YOU were instructed by GEICO to make PHONE CALLS to PROPOSED GEICO CLASS MEMBERS

6. YOU were instructed by GEICO to make PHONE CALLS to PROPOSED GEICO CELLULAR TELEPHONE CLASS MEMBERS' cellular telephones.

7. YOU made PHONE CALLS to PLAINTIFF on behalf of GEICO.

8. YOU made PHONE CALLS TO PROPOSED GEICO CLASS MEMBERS on behalf of GEICO.

9. A third party made PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

10. A third party made PHONE CALLS to PROPOSED BELL CLASS MEMBERS on YOUR behalf.

11. PLAINTIFF did not provide YOU with prior express consent to make PHONE CALLS to him on his cellular telephone.

12. PLAINTIFF did not provide GEICO with prior express consent to make PHONE CALLS to him on his cellular telephone.

13. YOU made ROBOCALLS to PLAINTIFF.

14. YOU made ROBOCALLS to PLAINTIFF on GEICO'S behalf.

8

15. YOU made ROBOCALLS to PROPOSED BELL ROBOCALL CLASS MEMBERS.

16. YOU made ROBOCALLS to PROPOSED GEICO ROBOCALL CLASS MEMBERS.

17. YOU made ROBOCALLS to PROPOSED GEICO ROBOCALL CLASS MEMBERS on GEICO's behalf.

18. PROPOSED BELL CLASS MEMBERS did not provide YOU with prior express consent to make PHONE CALLS to them.

19. PROPOSED GEICO CLASS MEMBERS did not provide YOU with prior express consent to make PHONE CALLS to them.

20. PROPOSED BELL ROBOCALL CLASS MEMBERS did not provide YOU with prior express consent to make ROBOCALLS to them.

21. PROPOSED GEICO ROBOCALL CLASS MEMBERS did not provide YOU with prior express consent to make ROBOCALLS to them.

22. PROPOSED GEICO ROBOCALL CLASS MEMBERS did not provide GEICO with prior express consent to make ROBOCALLS to them.

23. PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS' did not provide YOU with prior express consent to make PHONE CALLS to them on their cellular telephone.

24. PROPOSED GEICO CELLULAR TELEPHONE CLASS MEMBERS' did not provide GEICO with prior express consent to make PHONE CALLS to them on their cellular telephone.

25. PLAINTIFF did not provide YOU with his telephone number.

26. PLAINTIFF did not provide GEICO with his telephone number.

27. At the time YOU made phone calls to PLAINTIFF, YOU were not in a contractual relationship with PLAINTIFF.

28. At the time YOU made phone calls to PLAINTIFF, GEICO was not in a contractual relationship with PLAINTIFF.

29. At the time YOU made telephone calls to PLAINTIFF, GEICO did not have an enforceable judgment requiring PLAINTIFF to pay GEICO money.

30. YOU acquired PLAINTIFF'S phone number from a police report.

31. YOU acquired PLAINTIFF'S phone number from Progressive Insurance.

32. YOU acquired PLAINTIFF'S phone number from a SKIP TRACE.

33. YOU acquired PLAINTIFF'S phone number from a third party PERSON.

34. YOU acquired PLAINTIFF'S phone number from public records.

35. YOU acquired PLAINTIFF'S phone number through NUMBER TRAPPING.

36. GEICO acquired PLAINTIFF'S phone number from a police report.

37. GEICO acquired PLAINTIFF'S phone number from Progressive Insurance.

38. GEICO acquired PLAINTIFF'S phone number from a SKIP TRACE.

39. GEICO acquired PLAINTIFF'S phone number from a third party PERSON.

40. GEICO acquired PLAINTIFF'S phone number from public records.

41. GEICO acquired PLAINTIFF'S phone number through NUMBER TRAPPING.

42. YOU acquire phone numbers from third party PERSONS, other than GEICO, for the purpose of making PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

43. Since July 13, 2008, YOU made more than 10,000 PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

44. Since July 13, 2008, YOU made more than 50,000 PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

45. Since July 13, 2008, YOU made more than 100,000 PHONE CALLS to the PROPOSED BELL CLASS MEMBERS.

46. Since July 13, 2008, YOU made more than 10,000 PHONE CALLS to PROPOSED GEICO CLASS MEMBERS.

47. Since July 13, 2008, YOU made more than 50,000 PHONE CALLS to PROPOSED GEICO CLASS MEMBERS.

48. Since July 13, 2008, YOU made more than 100,000 PHONE CALLS to the PROPOSED GEICO CLASS MEMBERS.

49. There are more than 10,000 PROPOSED BELL CLASS MEMBERS.

50. There are more than 50,000 PROPOSED BELL CLASS MEMBERS.

51. There are more than 100,000 PROPOSED BELL CLASS MEMBERS.

52. There are more than 500,000 PROPOSED BELL CLASS MEMBERS.

53. There are more than 10,000 PROPOSED GEICO CLASS MEMBERS.

54. There are more than 50,000 PROPOSED GEICO CLASS MEMBERS.

55. There are more than 100,000 PROPOSED GEICO CLASS MEMBERS.

56. There are more than 500,000 PROPOSED GEICO CLASS MEMBERS.

57. YOU used TELEPHONE DIALING EQUIPMENT to make PHONE CALLS to PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS.

58. The PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS were not manually or individually made from a telephone.

59. The PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS were made, in part, without human intervention.

60. The PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS were made to telephone number(s) contained in a list, spreadsheet or database.

61. The TELEPHONE DIALING EQUIPMENT that was used to make the PHONE CALLS to PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to generate numbers in a random or sequential fashion.

62. The TELEPHONE DIALING EQUIPMENT that was used to make the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to store numbers in a random or sequential fashion.

63. The TELEPHONE DIALING EQUIPMENT that was used to make the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to dial numbers in a random or sequential fashion.

64. The TELEPHONE DIALING EQUIPMENT that made the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to dial telephone numbers as part of an automated process.

65. The TELEPHONE DIALING EQUIPMENT that made the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to store call recipients' telephone numbers prior to making the PHONE CALLS.

66. The TELEPHONE DIALING EQUIPMENT that made the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS had the capacity to automatically randomize phone numbers.

67. The TELEPHONE DIALING EQUIPMENT that made the PHONE CALLS to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS dialed phone numbers as part of an automated process.

68. YOU created, or had created for YOU, pre-recorded messages for the purpose of making ROBOCALLS to PROPOSED BELL ROBOCALL CLASS MEMBERS.

69. YOU created, or had created for YOU, recordings utilizing an artificial voice for the purpose of making ROBOCALLS to PROPOSED BELL ROBOCALL CLASS MEMBERS.

70. Prior to making the PHONE CALLS to the PROPOSED BELL CLASS MEMBERS, YOU were aware that making PHONE CALLS to a cellular telephone without the prior express consent of the recipient violated the TCPA.

71. Prior to making the PHONE CALLS to the PROPOSED BELL CLASS MEMBERS, YOU were aware that making ROBOCALLS without the prior express consent of the recipient violated the TCPA.

\*     \*     \*

CARLOS CABRERA, individually and on behalf of all those similarly situated,

Date: January 4, 2013

By: /s/ Christopher L. Dore
One of Plaintiff's Attorneys

Rafey S. Balabanian (Admission *pro hac vice* pending)
Benjamin H. Richman (Admission *pro hac vice* pending)
Christopher L. Dore (Admission *pro hac vice* pending)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
rbalabanian@edelson.com
brichman@edelson.com
cdore@edelson.com

Scott D. Owens
LAW OFFICE OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Tel: 954.589.0588
scott@scottdowens.com

Bret Leon Lusskin , Jr.
BRET LUSSKIN, P.A.
1001 N. Federal Hwy, Ste 106
Hallandale Beach, FL 33009
(954) 454-5841
blusskin@lusskinlaw.com

## CERTIFICATE OF SERVICE

I, Christopher L. Dore, an attorney, hereby certify that on January 4, 2013, I served the above and foregoing *Plaintiff's First Set Requests to Admit to Defendant Bell, LLC,* by causing a true and accurate copy of such paper to be transmitted to the persons shown below via electronic mail and further, by placing a true and accurate copy of such paper in a postage prepaid envelope addressed to the persons shown below and depositing such envelope in the U.S. Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654, on this the 4th day of January 2013.

John P. Marino
Fowler White Boggs
50 North Laura Street, Suite 2800
Jacksonville, Florida 32202
jmarino@fowlerwhite.com

David P. Hartnett
Hinshaw & Culbertson
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
dhartnett@hinshawlaw.com

By: /s/ Christopher L. Dore