# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

CARLOS CABRERA, individually
and all others similarly situated,         **CASE NO.: 12-cv-61390-KMW**

        Plaintiff,

vs.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, and
BELL, LLC,

        Defendants.

_____/

**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF**
**DOCUMENTS TO DEFENDANT BELL, LLC**

Plaintiff Carlos Cabrera, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant Bell, LLC produce the following documents for inspection and copying at the offices of Edelson McGuire, LLC, 350 North LaSalle Street, Suite 1300, Chicago, Illinois 60654, within thirty (30) days of service hereof.

*I.     Definitions*

1.      "ATTACHMENTS" means or refers to files or data that are physically or logically associated with or embedded into email, and should be identified by mapping to their parent by the DOCUMENT or production number.

2.      "COMMUNICATION" or "COMMUNICATIONS" means or refers to the transmittal of information, facts or ideas INCLUDING communications in the form of any discussion, conversation, inquiry, negotiation, agreement, contract, understanding, meeting, telephone conversation, letter, correspondence, note, memorandum, e-mail message, telegram,

audio recordings, advertisement or other form of exchange of words, whether oral or written. "COMMUNICATION" or "COMMUNICATIONS" also means or refers to all written and unwritten but recorded correspondence, including non-duplicate drafts, versions not sent, and copies that differ only in margin notes or annotations, INCLUDING memos, letters analog or digital recordings, audio recordings, voicemail, email, COMPUTER files, COMPUTER disks, or other things sent or received by YOU to or from any entity, INCLUDING files maintained or exchanged internally within YOUR business or with YOUR employees.

     3.    "COMPLAINT" shall mean Plaintiff's Class Action Complaint filed in this action.

     4.    "COMPUTER" or "COMPUTER EQUIPMENT" means all data processing equipment, INCLUDING central processing units (CPUs), whether contained in a server or free standing computer or laptop or PDA or similar device that may contain data storage capabilities, irrespective of whether such computing platform, infrastructure or storage is virtualized, whether that data be structured or unstructured, and also INCLUDING any equipment where computer files (INCLUDING without limitation, records, DOCUMENTS, logs, and any other contiguous of non-contiguous bit strings), hidden system files or METADATA presently reside such as hard disk drives, optical disk drives, removable MEDIA, such as floppy disk drives, CD-ROM and DVD drives, Zip drives, Jaz drives, Maxtor drives or snap drives, data processing cards, computer magnetic tapes, backup tapes, drum and disk storage devices or any other similar electronic storage MEDIA or system of whatever name or description. "COMPUTER OR COMPUTER EQUIPMENT" also means all digital image evidence that may be stored on any type of hardware used to store or manipulate electronic images, INCLUDING microfilm, microfiche and their repositories and readers, or design or engineering computer systems and

regardless of any digital image's format, INCLUDING .jpg, .bmp, or some other advanced or proprietary form of digital image format, such as CAD layered drawings. "COMPUTER OR COMPUTER EQUIPMENT" also refers to sources of digital evidence that may not presently be in use by YOU or may have been deleted from YOUR active systems, whether the source is a backup tape or disk, some other data retention system or some form of disaster recovery system. "COMPUTER OR COMPUTER EQUIPMENT" also refers to places where digital evidence may reside that may have been deleted from YOUR active files and which may not be readily recoverable from a backup medium, such as METADATA.

     5.    "COMPUTER SYSTEM" refers to free standing servers, COMPUTERS and laptops, and also refers to YOUR network infrastructure and computer support systems of the or subject to YOUR possession, custody or control, such as YOUR subsidiaries, predecessors, successors, assigns, joint ventures, partners, parents, agents or affiliates (in this country or throughout the world), INCLUDING the following:

     (a)    YOUR LAN, WAN or other network systems, regardless of methods of connectivity (e.g., by T1, T3 or optical lines), domains, INCLUDING PDCs, network OS (such as Novell, Microsoft, UNIX, Citrix or some other similar type) or protocols, backup and disaster recovery hardware and media, regardless of the physical location of those electronic storage systems.

     (b)    YOUR email servers and any repository of email (INCLUDING within the inbox, sent box, deleted box or some similar file of the COMPUTERS of employees or management), or in any backup form whatsoever, regardless of whether you use Microsoft Exchange, Outlook, Outlook Express, Lotus Notes or some combination of email management software or some alternative commercial

or proprietary email management software.

(c)     YOUR administrative offices, INCLUDING backup and disaster recovery restoration plans and repositories, data retention plans and repositories, purge plans and repositories, training plans and repositories, and libraries of hardcopy materials of any description (regardless of where located) and online training and operation manuals that have been scanned to disk.

(d)     YOUR offsite technical and service bureau support systems, INCLUDING ASP (application service provider) support, scanning or data conversion support, offsite data storage or archive support.

(e)     YOUR web hosting and administration services, INCLUDING intranet and extranet sites, regardless of whether they are now publicly posted or exist in English, or some other language.

6.      "DATE" means the exact year, month and day, if known, or, if not known, YOUR best approximation thereof.

7.      "DESCRIBE" or "DESCRIBING" when used in relation to any process, policy, act or event means to explain the process, policy, act or event in complete and reasonable detail, stating the time, DATE, and location, IDENTIFYING all PERSONS participating or present, and IDENTIFYING all DOCUMENTS RELATING thereto.

8.      "DOCUMENT" or "DOCUMENTS" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, INCLUDING ESI—stored in any medium from which information can be obtained.

9.      "DUPLICATES" means exact duplicate ESI DOCUMENTS (based on MD5 or SHA-1 hash values) within YOUR possession, custody or control. Only DOCUMENTS where

the main DOCUMENT and the attachments are exactly the same will be considered exact duplicates. ESI with differing file names but identical hash values shall not be considered duplicates. Exact duplicate shall mean bit-for-bit identicality with both DOCUMENT content and any associated METADATA. Where any such DOCUMENTS have attachments, hash values must be identical for both the DOCUMENT and attachment (INCLUDING associated METADATA), as well as for any attachment (INCLUDING associated METADATA) standing alone.

      10.    "ELECTRONICALLY STORED INFORMATION" or "ESI" as used herein, means and refers to COMPUTER generated information or data, of any kind, stored on COMPUTERS, file servers, disks, tape or other devices or MEDIA, or otherwise evidenced by recording on some storage MEDIA, whether real virtual, or cloud-based.

      11.    "GEICO" means or refers to Defendant Government Employees Insurance Company and its divisions, subsidiaries, related companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all PERSONS acting or purporting to act on behalf of any of them.

      12.    "IDENTIFY" when used with respect to a natural PERSON, means to state the PERSON'S full name, present or last known business affiliation and position, past and present home address and past position and business affiliation, if any, with any of the parties herein.

      13.    "IDENTIFY" when used with respect to a company or other business entity, means to state the company's legal name, the names under which it does business, its form (e.g., partnership, corporation, etc.), the address of its principal place of business, and to IDENTIFY its principal proprietors, officers and directors.

      14.    "IDENTIFY" when used with respect to a DOCUMENT, means to state the

DATE(S) prepared, drafted or generated, the author(s), intended and actual recipient(s), type of DOCUMENT (e.g., "letter," "Terms of Service" or "email"), and to IDENTIFY its last known custodian or location.

15.    "IDENTIFY" when used in reference to an event, transaction, or occurrence, means to DESCRIBE the act in complete and reasonable detail; state the time, DATE, location; IDENTIFY all PERSONS participating or present; and IDENTIFY all DOCUMENTS RELATING thereto.

16.    "IDENTIFY" when used with respect to a COMMUNICATION, means to state type of COMMUNICATION (i.e., telephone discussion, email, face-to-face, etc.), the name and present address of each PERSON present during the COMMUNICATION, or who otherwise observed or heard the COMMUNICATION and to state the subject matter of the COMMUNICATION and the DATE upon which it occurred. If the COMMUNICATION was in writing, IDENTIFY all DOCUMENTS that RELATE or are RELATING TO the COMMUNICATION in the manner provided above.

17.    "INCLUDING" means "including, but not limited to;" "INCLUDES" means "includes, but not limited to."

18.    "MEDIA" means an object or device, real or virtual, INCLUDING a disc, tape, COMPUTER or other device, on which data is or was stored.

19.    "METADATA" means and refers to data about data, INCLUDING without limitation information embedded in a native file or other data that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and validity of the electronic file as well as information generated automatically by the operation of a computer or other information technology system

6

when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user

of such system, INCLUDING the following (to the extent available):

• Document number or Production number (INCLUDING the document start and document end numbers). This should use the standard Bates number in accordance with those used in previous productions.

• BeginAttach

• EndAttach

• Title/Subject

• Sent/Date and Time (for emails only)

• Last Modified Date and Time Created Date and Time (for ESI)

• Received DATE and Time (for emails only)

• Author

• Recipients

• cc:

• bcc:

• Source (custodian)

• Hash Value

• File Path

• Media (type of media that the DOCUMENT was stored on when it was collected)

• Page Count

• Original File Name

• DOCUMENT extension

• Full Text

• Accessed DATE & Time

• Last Print DATE

20.     "NATIVE DATA FORMAT" means and refers to the format of ESI, whether structured or unstructured, in which it was generated and as used by YOU in the usual course of YOUR business and in YOUR regularly conducted activities.

21.     "NUMBER TRAPPING" means or refers to the practice of utilizing caller identification technology to collect a PERSON'S phone number when that PERSON places a call to Defendants GEICO and/or BELL.

22.     "PAPER DOCUMENTS" means paper-based original DOCUMENTS (i.e., DOCUMENTS which were not first generated by a COMPUTER, such as hand written memoranda).

23.     "PERSON" or "PERSONS" means or refers to any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature.

24.     "PHONE CALLS" means or refers to the telephone calls described in the COMPLAINT REGARDING insurance subrogation claims.

25.     "PLAINTIFF" means or refers to the plaintiff in this action, Carlos Cabrera.

26.     "PROPOSED   BELL   CLASS   MEMBERS"   means   those   PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the Bell Cellular Telephone Class and the Bell Robocall Class as set forth in Paragraph 25 of the COMPLAINT.

27.     "PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the Bell Cellular Telephone Class as set forth in Paragraph 25 of the COMPLAINT.

28.     "PROPOSED BELL ROBOCALL CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the Bell Robocall Class as set forth

8

in Paragraph 25 of the COMPLAINT.

29.     "PROPOSED GEICO CLASSES" or "PROPOSED GEICO CLASS MEMBERS" means those PERSONS, INCLUDING PLAINTIFF, who fall under the definition of the GEICO Cellular Telephone Class and the GEICO Robocall Class as set forth in Paragraph 25 of the COMPLAINT.

30.     "REGARDING", "RELATING", "RELATING TO", "RELATE" or "RELATED" means discussing, mentioning, addressing, referring to, analyzing, comprising, underlying, memorializing, describing, or showing the subject indicated.

31.     "RELEVANT TIME PERIOD" means or refers to the time period between July 13, 2008 and the present.

32.     "ROBOCALL" means or refers to telephone calls utilizing a pre-recorded or artificial voice rather than a live person.

33.     "TCPA" means the Telephone Consumer Protection Act (47 U.S.C. § 227).

34.     "TELEPHONE DIALING EQUIPMENT" means or refers to the telecommunications equipment, other telemarketing systems and COMPUTERS or COMPUTER SYSTEMS used to make the PHONE CALLS.

35.     "YOU," "YOUR," "DEFENDANT," or "BELL," means or refers to Defendant Bell, LLC, and its divisions, subsidiaries, related companies, predecessors, and successors, all present and former officers, directors, agents, attorneys, employees, and all PERSONS acting or purporting to act on behalf of any of them.

## II.     Instructions

1.     If, in responding to these Requests, YOU encounter any ambiguity in construing either the Request or any instruction relevant to the Request, YOU should nonetheless respond to

the Request, set forth the matter deemed ambiguous, and set forth the construction used in responding to the Request.

2.      These are intended as continuing Requests having within them a duty to timely supplement YOUR responses until and during the course of trial. Information sought by these Requests that YOU obtain after YOU serve YOUR responses must be disclosed to PLAINTIFF by supplementary responses.

3.      If YOU object to answering all or any part of any Request on the grounds of privilege or work product, IDENTIFY the privileged matter, materials and DOCUMENT(S), and with respect to each, IDENTIFY:

(a)      the DATE appearing on such DOCUMENT, or if no DATE appears, the DATE on which such DOCUMENT or ESI was prepared;

(b)      ESI METADATA creation, revision, transmission, receipt, and last access dates;

(c)      the name of each PERSON to whom such material, DOCUMENT or ESI was addressed;

(d)      the name of each PERSON, other than the addressee(s) IDENTIFIED in subparagraph (b) above, to whom such material, DOCUMENT or ESI, or copy thereof was sent, or with whom such material, DOCUMENT or ESI was discussed;

(e)      the name of each PERSON who signed such material, DOCUMENT or ESI, if not signed, the name of each PERSON who prepared it;

(f)      the name of each PERSON making any contribution to the authorship of such material, DOCUMENT or ESI;

10

(g)     the job title or position of each PERSON IDENTIFIED in subparagraphs

(b), (c), (d), and (e) above;

(h)     the DATE such material, DOCUMENT or ESI was received or discussed

by each PERSON IDENTIFIED in subparagraphs (b) or (c) above;

(i)     the general nature or description of such material, DOCUMENT or ESI,

and where applicable, its number of pages;

(j)     the name of each PERSON who currently has custody of such material,

DOCUMENT or ESI; and

(k)     the specific ground(s) upon which the privilege or work product rests.

4.     When producing the requested DOCUMENTS, YOU are to designate for which specific Request(s) the DOCUMENT is responsive or produce the DOCUMENTS as they are kept in the ordinary course of YOUR business activities. All DOCUMENTS are to be produced in the form, order, and manner in which they are generated and maintained by YOU in the usual course of YOUR everyday routine business activities. Where structured data (e.g., data from a database) is requested, appropriate queries will be used to extract relevant data from any such database, which data shall match specified criteria, and returning specified fields, in a form and format that is verifiable and readable by the use of commonly available tools. DOCUMENTS are to be produced in folders, cartons, or containers, in which they have been maintained, stored, clipped, stapled, or otherwise arranged in the same form and manner in which they were found and in such manner that the office and location from which they were produced is readily identifiable. Whenever a DOCUMENT or a group of DOCUMENTS is taken out of a file folder, file drawer, file box, or notebook, before the same is produced, attach thereto a copy of the label on the file folder, file box, or notebook from which the DOCUMENT or group of

DOCUMENTS was removed. All ESI should be produced in NATIVE DATA FORMAT, reasonably usable, and verifiably responsive to the pertinent Request(s) and processable using readily available tools.

5.     PAPER DOCUMENTS shall be produced in hard copy.

6.     Each page of a produced DOCUMENT, or MEDIA upon which ESI in NATIVE DATA FORMAT is produced, shall have a legible, unique page identifier (i.e.,"Bates Number") electronically "burned" onto or associated with the MEDIA, or image in such a manner that information from the source DOCUMENT is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the DOCUMENT image unless a DOCUMENT qualifies for confidential treatment pursuant to the terms of a Protective Order in this litigation, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in any Protective Order, a designation may be "burned" onto or otherwise associated with the DOCUMENT'S image at a location that does not obliterate or obscure any information from the source DOCUMENT. For redacted material, the word "Redacted" should be burned onto the DOCUMENT image over the protected information, except as otherwise inconsistent with any Protective Order entered in this matter. To the extent native files are produced, the producing party will name the native file with the Bates number.

7.     Where production of .tiff images rather than native format ESI is requested or agreed to, each DOCUMENT image file produced shall be named with the unique Bates Number of the first page of the DOCUMENT, followed by the extension ".tif" or ".tiff." To the extent separate text files are produced, text files should be named the same as the first .tif or .tiff image of the DOCUMENT.

8.     If an original DOCUMENT contains color, YOU may produce black and white

image(s) for each such DOCUMENT. However, PLAINTIFF reserves the right to request that color copies of DOCUMENTS be produced on an as-needed basis.

9.      If any DOCUMENT requested has been lost or destroyed since its creation, IDENTIFY the type of DOCUMENT (e.g., letter, email, etc.), the DATE of the DOCUMENT, the PERSON(s) who sent and received the original and copies of the DOCUMENT, a summary of the content of the DOCUMENT and describe when, where, how, and by whom said DOCUMENT was lost or destroyed, and state the name of the PERSON(s) who last had custody thereof.

10.     If ATTACHMENTS and embedded files are combined with their parent DOCUMENTS, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded DOCUMENT must be included.

11.     Singular and plural words should be read so as to bring within the scope of these Requests any information that might otherwise be construed to be outside their scope.

12.     For any term used herein, which is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these Requests shall be resolved so as to construe these Requests as broadly as possible.

13.     Unless otherwise stated, all Requests pertain to the RELEVANT TIME PERIOD.

### III.      *Requests for Production*

## REQUEST FOR PRODUCTION NO. 1

All DOCUMENTS and ESI RELATING TO drafting YOUR Answer and Affirmative Defenses to the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 2**

All DOCUMENTS and ESI RELATING TO drafting YOUR answers to PLAINTIFF'S First Set of Interrogatories and First Set of Requests to Admit Facts.

**REQUEST FOR PRODUCTION NO. 3**

All DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO GEICO providing YOU with the PROPOSED GEICO CLASS MEMBERS' telephone numbers.

**REQUEST FOR PRODUCTION NO. 4**

All COMMUNICATIONS exchanged between YOU and GEICO RELATING TO GEICO providing YOU with the PROPOSED GEICO CLASS MEMBERS' telephone numbers.

**REQUEST FOR PRODUCTION NO. 5**

All DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO GEICO obtaining prior express consent to make PHONE CALLS to the cellular telephones of the PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 6**

All COMMUNICATIONS exchanged between YOU and GEICO RELATING TO GEICO obtaining prior express consent to make PHONE CALLS to the cellular telephones of the PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 7**

All DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO YOU obtaining prior express consent to make PHONE CALLS to the cellular telephones of the PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 8**

All COMMUNICATIONS exchanged between YOU and GEICO RELATING TO YOU obtaining prior express consent to make PHONE CALLS to the cellular telephones of the PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 9**

All DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO GEICO acquiring, locating, and searching for phone numbers belonging to PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 10**

All COMMUNICATIONS exchanged between YOU and GEICO RELATING TO GEICO acquiring, locating, and searching for phone numbers belonging to PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 11**

All DOCUMENTS and ESI, exchanged between YOU and any third party (excluding GEICO) that provided YOU with the PROPOSED BELL CLASS MEMBERS' telephone numbers, that RELATE TO the provision of such telephone numbers.

**REQUEST FOR PRODUCTION NO. 12**

All COMMUNICATIONS, exchanged between YOU and any third party (excluding GEICO) that provided YOU with the PROPOSED BELL CLASS MEMBERS' cellular telephone numbers, that RELATE TO the provision of such telephone numbers.

**REQUEST FOR PRODUCTION NO. 13**

All DOCUMENTS and ESI, exchanged between YOU and any third party (excluding GEICO) that provided YOU with the PROPOSED BELL CELLULAR TELEPHONE CLASS

MEMBERS' cellular telephone numbers, that RELATE TO obtaining prior express consent for YOU to make PHONE CALLS to PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS' cellular telephones.

**REQUEST FOR PRODUCTION NO. 14**

All COMMUNICATIONS, exchanged between YOU and any third party (excluding GEICO) that provided YOU with the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS' cellular telephone numbers, that RELATE TO obtaining prior express consent for YOU to make PHONE CALLS to PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS' cellular telephones.

**REQUEST FOR PRODUCTION NO. 15**

All DOCUMENTS RELATING TO YOU making subrogation related PHONE CALLS to PROPOSED BELL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 16**

All policies, procedures, manuals and other materials RELATING TO YOU making subrogation PHONE CALLS.

**REQUEST FOR PRODUCTION NO. 17**

All COMMUNICATIONS between YOU and PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 18**

All DOCUMENTS and ESI exchanged between YOU and PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 19**

All COMMUNICATIONS exchanged between YOU and GEICO RELATING TO PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 20**

All COMMUNICATIONS exchanged between YOU and any third party PERSON RELATING TO PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 21**

All COMMUNICATIONS by, or between YOU, YOUR officers, directors, employees, and agents RELATING TO PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 22**

All COMMUNICATIONS between YOU and PROPOSED BELL CLASS MEMBERS RELATING TO YOU making PHONE CALLS to the telephones of the PROPOSED BELL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 23**

All COMMUNICATIONS by, or between YOU, YOUR officers, directors, employees and agents RELATING TO PROPOSED BELL CLASS MEMBERS submitting complaints about receiving PHONE CALLS from YOU.

**REQUEST FOR PRODUCTION NO. 24**

All DOCUMENTS RELATING TO how the PHONE CALLS to PLAINTIFF and the PROPOSED BELL CLASS MEMBERS were made, INCLUDING, DOCUMENTS DESCRIBING or IDENTIFYING all TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS, and how the telephone numbers of the PLAINTIFF and the PROPOSED BELL CLASS MEMBERS were inputted, processed, stored, and dialed.

**REQUEST FOR PRODUCTION NO. 25**

All DOCUMENTS and ESI that IDENTIFY the total number of PHONE CALLS YOU made to the PROPOSED BELL CELLULAR TELEPHONE CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 26**

All DOCUMENTS and ESI that IDENTIFY the total number of PHONE CALLS YOU made to the PROPOSED BELL ROBOCALL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 27**

All DOCUMENTS and ESI that IDENTIFY the total number of PHONE CALLS YOU made to PROPOSED GEICO CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 28**

All DOCUMENTS and ESI that IDENTIFY the total number of PHONE CALLS YOU made to the PROPOSED BELL ROBOCALL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 29**

All DOCUMENTS and ESI that refer or RELATE TO any complaints received by YOU, INCLUDING consumer complaints and government investigations, RELATING TO the PHONE CALLS, or any alleged violations of the TCPA, regardless of whether lawsuits arose out of such complaints.

**REQUEST FOR PRODUCTION NO. 30**

All insurance policies that may provide, or upon which YOU may make claims for, coverage RELATING TO the subject matter of this lawsuit.

**REQUEST FOR PRODUCTION NO. 31**

All DOCUMENTS and ESI RELATING TO the technological capability and capacity of the TELEPHONE DIALING EQUIPMENT used to make PHONE CALLS to PLAINTIFF and the PROPOSED BELL CLASS MEMBERS, INCLUDING DOCUMENTS DESCRIBING, disclosing, discussing, and RELATING TO:

    (a)     the make and model of all TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS;

    (b)     the ability of the TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS to dial multiple telephone numbers simultaneously; and

    (c)     the ability of the TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS to store or produce telephone numbers to be called using a random or sequential number generator.

**REQUEST FOR PRODUCTION NO. 32**

All DOCUMENTS and ESI RELATING TO the process(es) by which YOU, or any third party making PHONE CALLS on YOUR behalf, obtained the phone numbers of PLAINTIFF and the PROPOSED BELL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 33**

All DOCUMENTS and ESI IDENTIFYING, DESCRIBING or referring to the purpose, context, conduct, and methodology used to verify prior and continuing express consent from PLAINTIFF and any PROPOSED BELL CLASS MEMBER to receive PHONE CALLS.

**REQUEST FOR PRODUCTION NO. 34**

All COMMUNICATIONS RELATING TO obtaining prior express consent from PROPOSED BELL CLASS MEMBERS to receive PHONE CALLS from YOU.

**REQUEST FOR PRODUCTION NO. 35**

All COMMUNICATIONS RELATING TO the TCPA.

**REQUEST FOR PRODUCTION NO. 36**

All DOCUMENTS and ESI RELATING TO the TCPA.

**REQUEST FOR PRODUCTION NO. 37**

All COMMUNICATIONS RELATING TO consumer complaints lodged with YOU RELATING TO the PHONE CALLS.

**REQUEST FOR PRODUCTION NO. 38**

All COMMUNICATIONS RELATING TO the TELEPHONE DIALING EQUIPMENT used to make the PHONE CALLS.

**REQUEST FOR PRODUCTION NO. 39**

All COMMUNICATIONS RELATING TO YOU or a third party using a SKIP TRACE to locate phone numbers belonging to PROPOSED BELL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 40**

All DOCUMENTS and ESI RELATING TO YOU or a third party using a SKIP TRACE to locate phone numbers belonging to PROPOSED BELL CLASS MEMBERS.

**REQUEST FOR PRODUCTION NO. 41**

All COMMUNICATIONS RELATING TO YOU or a third party obtaining or attempting to obtain PROPOSED BELL CLASS MEMBERS' phone numbers through NUMBER TRAPPING.

**REQUEST FOR PRODUCTION NO. 42**

All DOCUMENTS and ESI RELATING TO YOU or a third party obtaining or attempting to obtain PROPOSED BELL CLASS MEMBERS' phone numbers through NUMBER TRAPPING.

**REQUEST FOR PRODUCTION NO. 43**

All DOCUMENTS and ESI containing the phone number "(305) 519-3000" or "3055193000".

**REQUEST FOR PRODUCTION NO. 44**

All COMMUNICATIONS containing the phone number "(305) 519-3000" or "3055193000".

**REQUEST FOR PRODUCTION NO. 45**

All COMMUNICATIONS containing the names "Carlos Cabrera" or "Carlos Cabrerra."

**REQUEST FOR PRODUCTION NO. 46**

All DOCUMENTS and ESI containing the names "Carlos Cabrera" or "Carlos Cabrerra."

**REQUEST FOR PRODUCTION NO. 47**

All COMMUNICATIONS containing the GEICO claim number 0356770440101028.

**REQUEST FOR PRODUCTION NO. 48**

All DOCUMENTS and ESI containing the GEICO claim number 0356770440101028.

**REQUEST FOR PRODUCTION NO. 49**

All COMMUNICATIONS containing BELL tracking number 20111958.

**REQUEST FOR PRODUCTION NO. 50**

All DOCUMENTS and ESI containing BELL tracking number 20111958.

**REQUEST FOR PRODUCTION NO. 51**

All DOCUMENTS and ESI sufficient to IDENTIFY the total top-line revenue YOU received as the result of making PHONE CALLS on behalf of GEICO.

**REQUEST FOR PRODUCTION NO. 52**

All COMMUNICATIONS sufficient to IDENTIFY the total top-line revenue YOU received as the result of making PHONE CALLS on behalf of GEICO.

**REQUEST FOR PRODUCTION NO. 53**

All DOCUMENTS and ESI RELATED TO YOU making ROBOCALLS to the PROPOSED BELL ROBOCALL CLASS.

**REQUEST FOR PRODUCTION NO. 54**

All COMMUNICATIONS RELATED TO YOU making ROBOCALLS to the PROPOSED BELL ROBOCALL CLASS.

**REQUEST FOR PRODUCTION NO. 55**

All DOCUMENTS and ESI RELATED TO YOU creating recordings and/or utilizing an artificial voice for ROBOCALLS.

**REQUEST FOR PRODUCTION NO. 56**

All COMMUNICATIONS RELATED TO YOU creating recordings and/or utilizing an artificial voice for ROBOCALLS.

*   *   *

       **CARLOS CABRERA**, individually and on behalf of all those similarly situated,

Date: January 4, 2012    By:  /s/  Christopher L. Dore
            One of Plaintiff's Attorneys

Rafey S. Balabanian (Admission *pro hac vice* pending)
Benjamin H. Richman (Admission *pro hac vice* pending)
Christopher L. Dore (Admission *pro hac vice* pending)
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
rbalabanian@edelson.com
brichman@edelson.com
cdore@edelson.com

Scott D. Owens
LAW OFFICE OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Tel: 954.589.0588
scott@scottdowens.com

Bret Leon Lusskin , Jr.
BRET LUSSKIN, P.A.
1001 N. Federal Hwy, Ste 106
Hallandale Beach, FL 33009
(954) 454-5841
blusskin@lusskinlaw.com

## CERTIFICATE OF SERVICE

I, Christopher L. Dore, an attorney, hereby certify that on January 4, 2013, I served the above and foregoing *Plaintiff's First Set of Requests for the Production of Documents to Bell LLC,* by causing a true and accurate copy of such paper to be transmitted to the persons shown below via electronic mail and further, by placing a true and accurate copy of such paper in a postage prepaid envelope addressed to the persons shown below and depositing such envelope in the U.S. Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654, on this the 4th day of January 2013.

John P. Marino
Fowler White Boggs
50 North Laura Street, Suite 2800
Jacksonville, Florida 32202
jmarino@fowlerwhite.com

David P. Hartnett
Hinshaw & Culbertson
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
dhartnett@hinshawlaw.com

By:  /s/  Christopher L. Dore

24