## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 12-cv-61390-WILLIAMS/SELTZER

CARLOS CABRERA, individually and on behalf of
a class of all others similarly situated,

     *Plaintiff*,

                         v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a Maryland corporation, and BELL,
LLC, a Florida corporation,

     *Defendants*.

_____/

## PLAINTIFF'S COMBINED MOTION AND
## MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

Pursuant to Federal Rule of Civil Procedure 23 and for the reasons described in the attached Memorandum of Law in Support of Class Certification, Plaintiff Carlos Cabrera hereby respectfully moves this Court for an Order (1) certifying a Class as defined below under Rules 23(a), (b)(2) and (b)(3), (2) appointing Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman, and Christopher L. Dore of Edelson LLC as Class Counsel, and (3) awarding such other and further relief as the Court deems reasonable and just. In support of the instant motion, Plaintiff states as follows:

                             Respectfully submitted,

                             **CARLOS CABRERA**, individually and on
                             behalf of all others similarly situated,

Dated: September 6, 2013                By: /s/ Scott D. Owens_____
                                One of Plaintiff's Attorneys

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 2

        A.   GEICO and Bell Partner to Recover Purported Subrogation Payments ............... 2

        B.   Bell Placed the Robocalls Using the LiveVox Cloud-Based Dialing System ........... 4

        C.   Facts Particular to Plaintiff Carlos Cabrera ....................................................... 4

III.    THE TCPA .............................................................................................................. 5

IV.     ARGUMENT ........................................................................................................... 6

        A.   The Requirements for Class Certification Under Rule 23 ..................................... 6

        B.    As an Initial Matter, the Proposed Class is Readily Ascertainable ...................... 7

        C.   The Proposed Class Satisfies the Requirements of Rule 23(a) .............................. 8

             i.    The Proposed Class Satisfies the Numerosity Requirement ................................ 8

             ii.   The Proposed Class Also Satisfies the Commonality Requirement ................... 9

                   a.   Whether Defendants placed robocalls is a common question ............ 10

                   b.   Whether GEICO is vicariously liable is a common question ................ 11

                   c.   Whether  the Class gave "prior express consent"
                        is a common question ................................................................. 12

                   d.   Whether the Class suffered the same injuries
                        is a common question ................................................................. 14

             iv.   Plaintiff's Claims are Typical of the Class's Claims .......................................... 14

             v.    Plaintiff and His Counsel Satisfy the Adequacy of
                   Representation Requirement .............................................................................. 15

        D.   The Proposed Class Readily Satisfies the Requirements of Rule 23(b) ................. 17

             i.    Rule 23(b)(2) is Satisfied ................................................................................. 17

             ii.   Rule 23(b)(3) is Satisfied ................................................................................. 17

          a.    <u>The Predominance Requirement is Satisfied</u>........................................ 17

          b.    <u>The Superiority Requirement is Satisfied</u> .............................................. 19

    **E.**    **The Court Should Appoint Plaintiff's Counsel as Class Counsel** .......................... 20

**V.**    **CONCLUSION** ......................................................................................................... 21

## TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................. 9

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) .............................................................. 5

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).................................................7, 9, 11, 14, 18

**United States Circuit Court of Appeals Cases:**

*Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183 (11th Cir. 2009)................................................6-7

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla. 2006) .................. 9

*Bush v. Calloway Consol. Grp. River City, Inc.*,
 No. 10-cv-841, 2012 WL 1016871 (M.D. Fla. Mar. 26, 2012) ................................................ 7

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003) ............................................... 9

*Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986) ............................................. 9

*Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330 (11th Cir. 2006) ........................... 6, 17

*Hines v. Widnall,* 334 F.3d 1253 (11th Cir. 2003) ............................................................. 14

*Kerr v. City of West Palm Beach,* 875 F.2d 1546 (11th Cir. 1989)........................................... 18

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987)........................................... 16

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)....................................................... 6, 17

*Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72 (3d Cir. 2011)................................ 14, 19

*Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036 (9th Cir. 2012)................................... 12

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008)....................................................... 10

*Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000)................................................... 15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
 601 F.3d 1159 (11th Cir. 2010) ............................................................................ 19

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)....................................5-6

*United Steel v. ConocoPhillips Co.*, 593 F.3d 802 (9th Cir. 2010) ............................................ 7

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ................................................... 19

**United States District Court Cases:**

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) ...................................... 10, 18

*Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012)............................... 10, 13

*Birchmeier, et al. v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-04069 (N.D. Ill.)................. 11

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012) ........................5-6

*Cole v. Asurion Corp.*, 267 F.R.D. 322 (C.D. Cal. 2010) .......................................................... 15

*Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689 (M.D. Fla. 1996) ........................... 17

*Fabricant v. Sears Roebuck*, 202 F.R.D. 306 (S.D. Fla. 2001) ................................................... 7

*Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000)........................................ 10

*Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)............................. 14

*In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012)................................. 7

*In re: Jiffy Lube Int'l, Inc. Text Message Spam Litig.*, 3:11-md-2261 (S.D. Cal. 2011)........................ 16

*In re Terazosin Hydrochloride*, 220 F.R.D. 672 (S.D. Fla. 2004).............................................. 9

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013)........................................... 10

*Lusskin v. Seminole Comedy, Inc.*,
   No. 12-cv-62173, 2013 WL 3147339, at *2 (S.D. Fla. June 19, 2013)..................................... 5

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013)..............12, 18-20

*Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601 (S.D. Fla. 2002) ............................................. 8

*Mey v. Monitronics Intern., Inc.*, --- F. Supp. 2d ---,
   2013 WL 4105430 (N.D. W. Va. Aug. 14, 2013)......................................................................... 11

*Mudgett v. Navy Fed. Credit Union*,
   No. 11-cv-0039, 2012 WL 870758, at *1 (E.D. Wis. Mar. 13, 2012)................................... 3 n.2

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
    No. 08-cv C- 5959, 2010 WL 4931001 (N.D. Ill. Nov 29, 2010)................................................. 18

*Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677 (S.D. Fla. 2008).................................................... 15

*Rojas v. Career Educ. Corp.*, 10-cv-05260 (N.D. Ill. 2012)..................................................................... 16

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012).................................................. 13

*Thrasher-Lyon v. CCS Commercial, LLC*,
    No. 11-cv-04473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2011) .............................................12-13

*Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315 (S.D. Fla. 1996) ................................................................. 8

*Whitten v. ARS Nat. Servs., Inc.*, No. 00-cv-6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001).......... 17

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) .................................................................. 15

## Federal Rules and Statutory Provisions:

Fed. R. Civ. P. 23 ........................................................................................................................*passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227 .......................................................................*passim*

## Miscellaneous Authorities:

*In re Dish Network, LLC et al.*, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013) ................................................ 11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    23 F.C.C.R. 559 (Jan. 4, 2008) ....................................................................................................... 12

MAN. FOR COMPLEX LITIG. (4th ed. 2004) § 21.222 ................................................................................. 7

## I.    INTRODUCTION

This case challenges Defendant Bell LLC's ("Bell") making of thousands of robocalls to individuals whom Defendant Government Employees Insurance Co. ("GEICO") referred to it for the collection of purported subrogation payments, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). At this stage, the focus is on class certification, which is straightforward and turns only on Defendants' uniform conduct towards the proposed Class. That is, Bell made each of the calls at issue on behalf of GEICO using the same automated dialing system, employed the same prerecorded message during each call, neither Defendant obtained consent to make the calls, and as a result, the Class members were injured in exactly the same way and are entitled to the same statutory damages for each illegal call that was made. Accordingly, Plaintiff Carlos Cabrera— who himself received more than 120 of these robocalls—seeks certification of a class (the "Class") defined as follows:

> All persons in the United States to whom (1) a telephone phone call was placed through LiveVox that featured an artificial or prerecorded voice; (2) to a phone number provided to LiveVox by Bell LLC; (3) whose contact information was provided to Bell LLC by GEICO; and (4) who never provided Bell LLC, GEICO, or any third party acting on their behalf, prior express consent to place telephone calls to the phone number called.[1]

The proposed Class easily satisfies the requisites for certification. As an initial matter, to prevail on their claims, each Class member will have to answer the same questions: (1) whether they received prerecorded calls made by and on behalf of Defendants, (2) whether Defendants obtained their consent to make the calls, (3) whether they suffered an injury as a result, and (4) whether GEICO may be held vicariously liable for the calls. And, regardless of how they are answered, the questions will turn on

---

[1]    The Class definition has been modified from that pleaded in Plaintiff's complaint ("Complaint"). (*See* Plaintiff's Complaint ("Compl.") ¶ 25.) Although Bell has objected to any alteration of the Class definition without formal amendment of the pleadings, altering a class definition as a result of discovery is permissible under both Rule 23 and well established case law. *See* Fed. R. Civ. P. 23(c)(1)(C); *Prado-Steiman ex. Rel Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

generalized proofs applicable to the Class as a whole, not inquiries specific only to individual Class members. By way of example, Defendants' have already confirmed that they have no records of consent and that GEICO was well aware Bell was placing calls to each of its referrals, and expected it to do so. Moreover, Bell's internal records show that each of the calls were placed using the same third-party dialing system known as LiveVox. And, documents produced by LiveVox itself confirm that the same prerecorded message—approved by Bell—was played during each call.

Thus, looking forward, there is no question that this case will resolve for the entire Class (in a single stroke) whether Defendants violated the TCPA by placing the robocalls at issue. For these reasons and as explained further below, the Class should be certified under Rules 23(b)(2) and (b)(3).

## II.     FACTUAL BACKGROUND

### A.     GEICO and Bell Partner to Recover Purported Subrogation Payments.

As part of its everyday business operations, GEICO pays out on auto policies held by its customers when they, for example, are a party to a collision with another vehicle. (Compl. ¶ 1.) Rather than just eat the costs of those payments, however, GEICO often attempts to recoup funds from the other drivers involved. (*Id*.) In particular, GEICO claims that those individuals were at fault in the collision and owe it the payments it made to cover its own insureds (sometimes amounting to thousands of dollars) and that if they don't pay, they'll be the target of legal action. (*Id*. ¶¶ 1, 16.) Despite these efforts, GEICO doesn't always succeed in getting these individuals to pay up. (*See* Transcript of Deposition of Chris Bateman ("Bateman") at 17:15 – 18:4, 20:1-11, attached as Exhibit 1; *see also* Transcript of Deposition of Joel Bouvier ("Bouvier") at 38:3-12, attached as Exhibit 2.) In those instances, it contracts with third-party collection agencies like Bell to contact purported debtors and attempt to collect on GEICO's behalf. (Bateman, at 11:23-24, 12:10; Bouvier, at 37:15-39:2.)

The relationship between GEICO and Bell goes like this: When GEICO decides to utilize Bell to collect a debt on its behalf, it sends Bell a claim file— (Bateman, at 36:11-24; Bouvier, at 20:5-15, 21:12-18; *see also*, Cabrera Referral, attached as Exhibit 3.) However, the contact information that GEICO provides to Bell doesn't come from and certainly isn't given by those individuals directly. Instead, GEICO collects it through various sources including: (Bateman, at 20:15-18, 24:7-16.) And, while GEICO goes to great lengths to obtain these individuals' contact information, (Bateman, at 22:20-24, 23:13-24, 66:12-18.)

All told, GEICO sent Bell some individual referrals between the last half of 2010 until October 2012. (Bouvier, at 58:15-59:1.) Each time Bell received one of those referrals, it used the contact information in the referral to (Bouvier, at 13:23-25, 93:14-16, 94:20–95:9.) Thereafter (and as explained in Section III.B, *infra*) Bell began repeatedly placing automated calls to the purported debtors—a practice which in the case of Plaintiff and many other Class members, resulted in the receipt of hundreds of unsolicited robocalls. (Bouvier, at 76:9-10; *see also*, Cabrera Call Records, attached as Exhibit 4.) In those instances where Bell is successful in collecting, GEICO pays it approximately (Bateman, at 53:6; Bouvier, at 33:16.)

---

[2]     "Skip tracing" refers to the process by which a debtor is located through referencing and analyzing all available public information. *See, e.g., Mudgett v. Navy Fed. Credit Union,* No. 11-cv-0039, 2012 WL 870758, at *1 (E.D. Wis. Mar. 13, 2012). Entities like GEICO and Bell often use online services to automate the process. (Bateman, at 24:12-13; Bouvier, at 95:4-9.)

**B.      Bell Placed the Robocalls Using the LiveVox Cloud-Based Dialing System.**

From November 2009 to October 2012, Bell relied on a third-party cloud-based automatic

dialing system known as LiveVox to make robocalls for purposes of collecting from these individuals.

(LiveVox Production, at 9, attached as Exhibit 5; Bouvier, at 112:4-5, 131:24-25.) Bell contracted with

LiveVox to utilize ████████████████████████████████████████████████████

████████████████ (*See* Ex. 5, at 10-11; Bouvier, at 117:11-12.) The process by which Bell made

calls to the Class members through the LiveVox system was the same every time. First, Bell ██████

███████████████████████████████████████████████████████████████████████

██████████████ (*Id.* at 117:20-23.) Whenever the system recognized a connection on the line—either

a live person or a voicemail box—it automatically played a prerecorded message approved by Bell.

(Ex. 5, at 13; Bouvier, at 118:8.) That message was always substantially similar to the following:

> "Hello[.] This is a message for {Consumer First / Last Name}[.] This is not a sales or
> marketing call [.] It is important to call us today toll free at {PHONE NUMBER}[.]
> Our business hours are Monday Thru Thursday between 9 AM and 8 PM and Friday
> between 9 AM and 3 PM[.] Thank you[.]"

(*see* Ex. 5, at 13; Bouvier, at 118:2.) Following the prerecorded message, the system ████████

███████████████████████████████████████████████████████████████████████

██████████████ (Bouvier, at 114:16-20; 116:14-16.) As Bell's records show, Bell

utilized LiveVox to place tens, if not hundreds, of calls to individuals. (*See id.*, at 114:8-9; Ex. 4.)

**C.      Facts Particular to Plaintiff Carlos Cabrera.**

In May 2010, Plaintiff's automobile was involved in a collision in Florida. (Declaration of

Carlos Cabrera ¶ 3, attached as Exhibit 6.) About seven months after the collision, Bell—at GEICO's

direction—repeatedly placed harassing calls to Plaintiff's cellular telephone in an effort to recover the

monies GEICO paid out to its insured as a result of the collision. (*Id.*) Over the next six months, Bell—

using the LiveVox system—placed more than 120 calls to Plaintiff alone, all of which featured the

same prerecorded message and failed to connect him to a live representative. (*See, e.g.*, Ex. 4; Cabrera Decl. ¶ 5.)

At no time did Plaintiff provide his cell phone number to either Defendant. (Cabrera Decl. ¶ 7.) Nor did Plaintiff otherwise consent to receive prerecorded calls from or on behalf of either Defendant, or any other third party, for that matter. (*Id.*) Rather, ██████████████████████████ ██████████████████ (Bateman, at 62:7-8; Police Report, attached as Exhibit 7) and ██ ██████ (Bateman, at 65:23-25), and then simply passed along that information to Bell for the specific purpose of subjecting Plaintiff to a nonstop deluge of automated calls. (*See* Ex. 3.)

## III.   THE TCPA

Congress' purpose in enacting the TCPA was to put a stop to the "intrusive nuisance calls" it deemed "invasive of privacy." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Relevant here, the TCPA expressly prohibits a party from placing unsolicited calls utilizing an artificial voice or prerecorded message to the cellular or residential phones of individuals. *See* 47 U.S.C. § 227(b)(1)(A-B); *see also Lusskin v. Seminole Comedy, Inc.*, No. 12-cv-62173, 2013 WL 3147339, at *2 (S.D. Fla. June 19, 2013) ("Congress found that banning automated calls 'except when the receiving party consents to receiving the call…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion….'"). Because the TCPA was created to prevent companies from invading an individuals' privacy, it does not require that a defendant intend to violate the statute. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1318 (S.D. Fla. 2012) (recognizing the TCPA as a strict liability statute). The TCPA provides for statutory damages of $500 per violation (or $1500 if willful) and injunctive relief necessary to ensure violations do not continue. *See* 47 U.S.C. § 227(b)(3)(A-C).

When confronted with a TCPA claim, defendants may assert the affirmative defense of "prior express consent." *Breslow*, 857 F. Supp. 2d at 1319. As an affirmative defense, however, both the FCC and the courts have recognized that the defendant bears the burden of demonstrating that it obtained permission to call the numbers in question, and such consent must be "clearly and unmistakably stated." *Id.*, *see also Satterfield*, 569 F.3d at 955.

## IV.    ARGUMENT

### A.    The Requirements for Class Certification Under Rule 23.

Before a class may be certified under Rule 23, the proponent of certification must demonstrate that each of the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires that the class be so numerous that joinder of all class members is impracticable (numerosity); that there are common questions of law and fact for all class members (commonality); that the proposed representative's claims are typical of the Class's (typicality); and that the named plaintiff and his or her counsel have and will continue to adequately represent the interests of the class (adequacy of representation). *See Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).

Here, Plaintiff seeks certification of the Class under Rules 23(b)(2) and (b)(3). To certify a class under Rule 23(b)(2), a plaintiff must show that the parties opposing certification have acted or failed to act on grounds generally applicable to the class "so that final injunctive relief or corresponding declaratory relief is appropriate...." Fed. R. Civ. P. 23(b)(2); *see also Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006). To certify a class under Rule 23(b)(3), the plaintiff must also demonstrate (i) that questions of law or fact common to class members predominate over any questions affecting only individuals, and (ii) that the class action mechanism is superior to other methods for the fair and efficient adjudication of the controversy. *Klay*, 382 F.3d at 1251.

Although in some cases it may be necessary for the court to "probe behind the pleadings" to determine if a plaintiff has met Rule 23's requirements, a court should only consider the merits of the plaintiff's claims insofar as they overlap with the certification requirements. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011); *see also United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (noting that although "certification inquiries such as commonality, typicality, and predominance might properly call for some substantive inquiry, the court may not go so far…as to judge the validity of these claims.") (internal quotations omitted). As such, a court should only consider "the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau*, 576 F.3d at 1190. Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties with a presumption in favor of certification. *Id*.

### B.     As an Initial Matter, the Proposed Class is Readily Ascertainable.

As an initial matter and though it is not explicitly provided for in Rule 23(a), courts require that a proposed class be ascertainable before it can be certified. *See Bush v. Calloway Consol. Grp. River City, Inc.*, No. 10-cv-841, 2012 WL 1016871, at *3 (M.D. Fla. Mar. 26, 2012). A class is ascertainable if it is "administratively feasible" to determine whether an individual is a class member. *Id.* at *4. Further, a class is sufficiently ascertainable if the members can be determined through consideration of objective criteria. *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308-09 (S.D. Fla. 2001). However, the goal of this inquiry is not to determine the actual identities of individual class members, but instead, to ensure that class members generally "receive the best notice practicable and have an opportunity to opt out." MAN. FOR COMPLEX LITIG. (4th ed. 2004) § 21.222 at 270. That said, classes are regularly deemed ascertainable when, as here, the class members can actually be identified from a defendant's own records. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012).

Here, class membership is straightforward and turns on simple and objective criteria: if Bell

made a telephone call to an individual's phone utilizing an artificial or prerecorded voice on behalf of GEICO and without the recipient's consent, he or she is a member of the Class. Thus, the Class definition is based upon Bell's standardized conduct, procedures, and information within its possession and control, and does not require individual or complex inquiries into the Class members themselves.

Moreover, Bell maintains records of each of the approximately ███ individuals GEICO referred to it, including their names, addresses, and phone numbers. (*See, e.g.,* Ex. 3; Bouvier, at 59:19-22.)[3] Bell also has records of each time it attempted to contact those individuals through the LiveVox system—including the number of calls placed and the number called.[4] (Bouvier, at 121:6-8; Ex. 4.) If that weren't enough to identify the proposed Class members (it is), the LiveVox system also created its own records of the phone numbers Bell dialed, when they were dialed, and how many times they were dialed. (Ex. 5, at 1-2, 14.) Thus, even if actual Class member identification were necessary for purposes of ascertainability (it's not), that would be easily accomplished here as well.

**C.  The Proposed Class Satisfies the Requirements of Rule 23(a).**

*i.   The Proposed Class Satisfies the Numerosity Requirement.*

The first express requirement of Rule 23(a) is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996) (holding that the size of the class is the most important factor in determining whether joinder is impracticable). In determining whether this requirement is satisfied, the Court need not determine the precise number of Class members, and may even rely on common sense assumptions to support a finding of numerosity. *See Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla.

---

[3]    Of course, GEICO has similar records. (*See* Bateman, at 51:2.)

[4]    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ Bouvier, at 125:19-22, 126:4-5; Bateman, at 42:4-6.) Given that, it wouldn't be difficult for Bell to provide that information to Plaintiff and the Court—though it has steadfastly refused to do so.

2002). Generally, the numerosity requirement is satisfied when the class comprises 40 or more members. *Id., see also Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

The proposed Class, without a doubt, satisfies this threshold. Between the middle of 2010 and October 2012, GEICO referred approximately ███ claim files to Bell. (Bouvier, at 58:15-59:1.) During that time, Bell utilized LiveVox's unattended dialing system to place robocalls to those referrals. *(See id.* at 117:11-12; Ex. 5, at 9.) Though Bell has refused to state the exact number of GEICO files for which it used LiveVox's technology, that can be readily determined through both its and LiveVox's records. (*See* Bouvier, at 149:7-12 (when asked if Bell could produce a list of all GEICO files it referred to LiveVox, Joel Bouvier testified, ██████████████).) As those records show, Bell contacted ███████ of Class members on behalf of and at the direction of GEICO, and the numerosity requirement is therefore satisfied. *See Cox*, 784 F.2d at 1553.

ii.     *The Proposed Class Also Satisfies the Commonality Requirement.*

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is a relatively low hurdle to overcome. *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 691 (S.D. Fla. 2006) (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)). It simply requires the named plaintiff to demonstrate that the class members "have suffered the same injury[,]" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)), and is satisfied when the "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004). In other words, commonality requires that the claims of the class members "depend upon a common contention…of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). Ultimately, a single issue common to the members of the class is enough—"[n]ot all factual or legal questions raised in the litigation need be common." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 700 (M.D. Fla. 2000); *see also Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004).

The proposed Class meets this requirement as well. First, Plaintiff's and the Class's claims rely on a single contention: Defendants violated the TCPA by using an automated dialing system to place calls to them that utilized an artificial or prerecorded voice. From this single contention flow multiple common legal and factual questions applicable to the Class, including (i) whether they received prerecorded calls made by Defendants, (ii) whether GEICO is vicariously liable for calls made on its behalf by Bell, (iii) whether the recipients of the calls provided prior express consent, and (iv) whether they suffered the same injury and are entitled to the same relief. These questions are exactly the sorts of common issues that have typically been found to apply to classes as a whole in TCPA claims and upon which class certification may be based. *See, e.g. Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 294 (N.D. Cal. 2013); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012).

> a.    Whether Defendants placed robocalls is a common question.

The primary common issue is whether Defendants caused robocalls to be made to Plaintiff's and the Class members' telephones that utilized an artificial or prerecorded voice. The answer is undoubtedly "yes." It is undisputed that Bell used the same automated LiveVox system to call each Class member. Indeed, by contract, LiveVox provided Bell access to its "Web-based…outbound contact software…, hardware,…[and] user interfaces…." (*See* Ex. 5, at 3.) Bell's own call logs—and those of LiveVox—confirm as much. (*See* Bouvier, at 121:15-18 ███████████████)

███████████████████████ *see also* Ex. 4.) And, both Bell and LiveVox confirmed that the same prerecorded messages directing call recipients to contact Bell were used (regardless of whether they answered) during each call. (*See* Ex. 5, at 13; Bouvier, at 118:2, 8, 18-20.)

Thus, because each Class member was confronted with the same prerecorded message that was delivered through the same automated dialing system, the Court's determination of whether prerecorded calls were placed to the Class will be resolved "in one stroke." *Dukes*, 131 S. Ct. at 2551. Rule 23's commonality requirement is satisfied on this basis alone.

b.      Whether GEICO is vicariously liable is a common question.

For Bell, liability will turn on the elements of a TCPA claim—i.e., whether it made calls using an artificial or prerecorded voice without the recipients' consent. 47 U.S.C. § 227(b)(1)(A-B). As to = As to GEICO, however, its liability will turn on the nature of its relationship with Bell and whether it can be held vicariously liable for Bell's conduct under federal common law. *See In re Dish Network, LLC et al.*, 28 F.C.C.R. 6574, 6584 ¶ 28 (F.C.C. May 9, 2013) (finding that common law agency principles apply to a determination of whether vicarious liability attaches under the TCPA); *see also Mey v. Monitronics Intern., Inc.*, --- F. Supp. 2d ---, 2013 WL 4105430, at *4 (N.D. W. Va. Aug. 14, 2013) (holding that vicarious liability under the TCPA is based on "federal common law principles of agency"); *Birchmeier, et al. v. Caribbean Cruise Line, Inc., et al.*, No. 12-cv-04069, Dkt. 75, at 2 (N.D. Ill.) ("reject[ing] defendants' contention that liability attaches under the TCPA only to the party that actually placed the call" as "[a] Congressional enactment that permitted this would be absurd indeed.") That finding will stem from contracts between Defendants and other evidence that has no bearing on their relationship with any Class member[5]—meaning the ultimate answer to

---

[5]     By way of example, Mr. Bateman confirmed that ████████████████████████████
████████████████████████████████████████████████████████████████████ (*See* Bateman, at

GEICO's liability will be identical for Plaintiff and each Class member. In short, whether GEICO should be held vicariously liable for the challenged conduct is an issue—regardless of the outcome—common to the Class.

        c.      <u>Whether the Class gave "prior express consent" is a common question</u>.

Next, whether Defendants obtained prior express consent to robocall Plaintiff and the Class is also a common question. As discussed in Section III, *supra*, defendants in a TCPA action may raise prior express consent as a defense, but they ultimately bear the burden of proving that such consent exists. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 685-86 (S.D. Fla. 2013). In the subrogation context at issue here, that's a particularly high bar. That is, the call recipient must "expressly consent[] to be robo-called about [the] debt…." *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-cv-04473, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2011). As in this case, that simply can't happen if the calls are about a debt the recipient does "not yet know [an insurance company] believed she owed." *Id.*; *see also Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1040 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2361 (2013) (citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (Jan. 4, 2008)) ("prior express consent is consent to call…in connection with a particular debt that is given before the call").

The *Thrasher-Lyon* matter is directly on point with respect to this issue. There, the plaintiff provided her phone number to the police after being involved in a collision and later confirmed to the insurance company involved that it was her only phone number. 2012 WL 3835089, at *1. When accused of violating the TCPA by repeatedly calling her number without consent, the collection agency tasked with collecting subrogation payments on behalf of the insurance company argued that the supplying of the number to the police, accompanied by confirmation that it was the plaintiff's only

77:2-3

████████████████████ GEICO also benefitted from those calls. (*See id.* at 53:6.)

number, was sufficient consent to robocall her. *Id.* The court disagreed, reasoning that consent under the TCPA is *express consent to be robocalled specifically*, not just to be called in general. *Id.* at *6.

Here, however, the Court need not get to the question of whether consent to be *robocalled* was obtained, because Defendants have yet to produce a shred of evidence that they obtained consent of any kind to call the proposed members of the Class. For its part, GEICO readily admits that ███████████ ████████████████████████████████████████████████████████████████████████ ████████████ (Bateman, at 22:24, 23:18.) Likewise, Bell admits that it███████████████████████ ████████████████ (Bouvier, at 102:8.)[6] Those admissions aren't surprising given that both GEICO and Bell have confirmed they ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ and therefore, never even tried to obtain consent before they began placing calls.[7] (*See, e.g.,* Bateman, at 20:15-18; 24:16; Bouvier, at 13:23-25; 94:22-23; Ex. 7.)

Ultimately, this absolute dearth of evidence supporting a finding of any type of consent— coupled with the existence of records indicating that no such consent was ever obtained—puts to rest any argument that individualized inquiries into consent will be necessary. Time and again, courts considering certification of TCPA claims have held that, "having produced no evidence that any individual consented to receive the [calls in question]…[a] defendant is unable to realistically argue that individual issues regarding consent outweigh…commonality." *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012); *see also Papa John's Intern., Inc.*, 286 F.R.D. at 567 (mere "speculation that [proposed class members] may have given their express consent to receive [calls] is

---

[6]    Bell produced a one-page document that it claims is designed to elicit consent from debtors. (*See* Colombo Questions, attached as Exhibit 8.) This can't help Bell's position, as it doesn't reference a Class member's consent to be robocalled and again, Bell has no records of consent anyway.

[7]    Even if Bell did later obtain consent to make robocalls after Class members responded to a prerecorded message—there's no evidence to suggest that it did—Defendants would still have violated the TCPA with respect to each of the robocalls placed before consent was provided.

not sufficient to defeat class certification."); *Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 94 (3d Cir. 2011) ("possibility that some of the individuals…may…have consented…is an insufficient basis for denying certification."); *see also Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (collecting authorities agreeing that when thousands of calls are made through an "organized program" and defendants are engaged in a "standardized course of conduct," commonality is satisfied). As such, whether Defendants can show that the Class gave prior express consent is also a common question.

> d.     Whether the Class suffered the same injuries is a common question.

Finally, whether Plaintiff and the Class members suffered identical injuries and are entitled to damages and injunctive relief as a result, is also a common question capable of determination on a class-wide basis. *See Dukes*, 131 S. Ct. at 2551. Because the TCPA provides for statutory injunctive relief and monetary damages of $500 per violation, with the possibility of trebling those damages if a defendant's conduct is proven willful, calculating damages for each Class member isn't a difficult task and requires nothing more than multiplying $500 (or $1500) by the number of calls placed to each of them. *See* 47 U.S.C. § 227(b)(3)(A-C). Thus, it is enough that Plaintiff and the Class received the same calls using the same prerecorded messages, and they need not show that they suffered actual damages as a result of receiving the calls in question in order to recover. *Silbaugh*, 278 F.R.D. at 393.  This too is a common question for the Class.

> iv.     *Plaintiff's Claims are Typical of the Class's Claims.*

Rule 23(a) also requires a plaintiff's claims to be typical of the class's. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003). The purpose is to ensure that a named plaintiff's incentives "align with those of absent class members

so as to assure that [they] will be fairly represented." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Typicality is satisfied where, in proving her own case, "the representative plaintiff [also] establishes the elements needed to prove the class[']…." *Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 683 (S.D. Fla. 2008). Typicality is also closely related to commonality and satisfied if a plaintiff's claims arise from the same conduct as those of the class, *Cole v. Asurion Corp.*, 267 F.R.D. 322, 326 (C.D. Cal. 2010), and contemplates that scenarios may vary from individual to individual, and the requirement "can be satisfied despite different factual circumstances…." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 486 (N.D. Cal. 2011).

Here, the "nexus" between Plaintiff's and the Class's claims is more than significant—they're practically identical. First, GEICO admits that the circumstances surrounding Plaintiff's and the Class's claims are essentially the same. (Bateman, at 69:19-20.) That is, just like with Plaintiff, when GEICO obtained contact information for a supposed debtor, its practice was to provide it to Bell on a referral sheet, with the understanding that Bell would attempt to collect payment(s) from them. (*See* Bateman, at 71:14-19, 77:2-3; Ex. 3.) Once Bell received the referral (just like with Cabrera), it would input the contact information into the LiveVox system and begin placing robocalls. (Bouvier, at 117:20-23, 118:2; Ex. 4; Ex. 5, at 13.) And, in addition to the factual circumstances shared by their claims, Cabrera and the Class will all be required to prove that the same elements of their claims: (1) Defendants placed robocalls to their phones, (2) without their consent. *See* 47 U.S.C. § 227(b)(1)(A-B). Because Plaintiff's claim is based on the same conduct, alleges violation of the same statute, resulted in the same injury, and will be proven under the same legal theory, his claim is undoubtedly typical.

> v.    *Plaintiff and His Counsel Satisfy the Adequacy of Representation Requirement.*

Finally, Rule 23(a) requires that the named plaintiff and his or her counsel have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Fulfilling

this requirement means that: (1) the named-plaintiff has no interests antagonistic to the class, and (2) class counsel is competent. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiff has the same interests as the Class members—all have received unauthorized and harassing robocalls by or on behalf of Defendants and would like to obtain relief under the TCPA. Further, Cabrera has actively participated in this litigation, responding to multiple sets of discovery and assisting counsel in their prosecution of the case, and is set to sit for deposition in less than a week. (*See* Cabrera Decl. ¶¶ 9-10.) Further, Plaintiff did not bring this case to enrich himself, and he has demonstrated as much by acting as a zealous advocate for the Class, putting their interests ahead of his own. (*See id.* ¶ 8 ("I brought this class action…to put an end to Defendants' improper calling practices….").) Plaintiff has no interests antagonistic to the Class.

Similarly, proposed Class Counsel at Edelson LLC have regularly engaged in complex litigation and have extensive experience in class action lawsuits. (*See* Edelson LLC Firm Resume, attached as Exhibit 9-A to the Declaration of Benjamin H. Richman.) In particular, the Edelson firm has been at the forefront of litigation related to TCPA violations and has obtained several influential opinions concerning the TCPA. (*See id.*) For example, it was co-lead counsel in the seminal case of *Satterfield v. Simon & Schuster, Inc.*, in which the court extended the TCPA to text messaging. 569 F.3d at 949. It also acted as lead counsel in *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010), where the court upheld the constitutionality of the TCPA, and in *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), where the court held the TCPA's "prior express consent" requirement was not unconstitutionally vague. Moreover, the firm's attorneys have been appointed class counsel in some of the largest TCPA class action cases and settlements in history. *See, e.g., Rojas v. Career Educ. Corp.*, 10-cv-05260 (N.D. Ill. 2012) ($20 million settlement); *In re: Jiffy Lube Int'l, Inc. Text Message Spam Litig.*, 3:11-md-2261 (S.D. Cal. 2011) ($35 million settlement). For

16

these reasons, proposed Class Counsel have also—and will continue to be—adequate representatives of the Class. *See Whitten v. ARS Nat. Servs., Inc.*, 00-cv-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) ("[t]he fact that attorneys have been found adequate in other cases is persuasive….").

**D.      The Proposed Class Readily Satisfies the Requirements of Rule 23(b).**

The proposed Class also satisfies the requisites to certification under Rules 23(b)(2) and (b)(3).

i.      *Rule 23(b)(2) is Satisfied.*

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the class "so that final injunctive relief or corresponding declaratory relief is appropriate...." *Heffner*, 443 F.3d at 1344. This requirement is essentially encompassed in the commonality requirement. *Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996). Thus, where commonality exists, Rule 23(b)(2)'s requirements should be found satisfied. *Id.*

As described in Section IV.C.iii, *supra*, Defendants acted on grounds applicable to the Class as a whole by obtaining their phone numbers through various third-party means, inputting that information into LiveVox, and then causing robocalls to be made to them using the same prerecorded messages without first obtaining their consent. As a result of that conduct, Defendants uniformly violated the TCPA, entitling each member of the Class to the injunctive relief necessary to ensure that such unauthorized phone calls do not continue, a result which satisfies Rule 23(b)(2).

ii.      *Rule 23(b)(3) is Satisfied.*

Plaintiff also seeks certification under Rule 23(b)(3), which requires that (1) common questions of law and fact predominate, and (2) the class action mechanism is superior. Both are satisfied here.

a.      The Predominance Requirement is Satisfied.

For predominance, it's only necessary that "*some* questions are common and that they predominate over individual questions," not that *all* questions are common. *Klay*, 382 F.3d at 1254

17

(emphasis added). This inquiry "focuse[s] on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700; *see also Dukes*, 131 S. Ct. at 2551-57. Common questions predominate over individual ones when they are "subject to generalized proof, and thus applicable to the class as a whole…." *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1558 (11th Cir. 1989) (internal citations omitted).

With respect to the claim here, common legal and factual issues have often been found to predominate where the class's claims arise under the TCPA and focused on the defendants' calling practices. *See Paldo Sign & Display Co. v. Topsail Sportswear, Inc*., 08-cv C- 5959, 2010 WL 4931001, at *3 (N.D. Ill. Nov 29, 2010). Indeed "[whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the…cause of action." *Manno*, 289 F.R.D. at 674 (citation omitted). Here, those elements include Defendants' making of roboalls that (i) utilized a prerecorded voice, and (ii) were made without consent. *See* 47 U.S.C. § 227(b)(1)(A-B))(iii).

Plaintiff presents a single theory of liability: Defendants placed numerous robocalls to the Class members without their consent. In order to prevail, both Plaintiff and the Class must establish that (i) their contact information, which they never provided to GEICO, was referred to Bell, (ii) that Bell uploaded that information to the LiveVox system, and (iii) used LiveVox to make robocalls to them that feature a prerecorded voice. As described above, Plaintiff and the Class will look to the same evidence—namely, GEICO's referral sheet information, Bell's internal claim files and logs of the calls made, and LiveVox's records of the same. As such, there is no doubt that their claims will be "subject to generalized proof, and [] applicable to the class as a whole." *Kerr*, 875 F.2d at 1558.

Again, as explained in Section IV.C.iii.c, *supra*, should Defendants pursue consent as a defense, they will fall short. *Manno,* 289 F.R.D. at 685-86. In any event, consent would still be a common and predominant issue for the Class as well. *Id.* at 686, 690 (citing *Cf. Landsman*, 640 F.3d

at74) (holding "the consent question could be understood as a common [one]" and "[o]n this defense, all class members will prevail or lose together….").

b.    The Superiority Requirement is Satisfied.

Finally, Rule 23(b)(3) requires that a class action be the superior method for the fair and efficient adjudication of the controversy. The focus of this requirement is on "the relative advantages of a class action suit over…other forms of litigation…." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1183–84 (11th Cir. 2010) (citation omitted). "[T]he more common issues [that] predominate over individual issues, the more desirable a class action…will be…." *Id.* at 1184. In this inquiry, courts typically consider several factors, including: "the class members' interests in individually controlling the prosecution…of separate actions"; "the extent and nature of any litigation concerning the controversy already begun"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278 n. 19 (11th Cir. 2009).

As courts in this District have recognized, although "the TCPA [has] built-in incentives for aggrieved plaintiffs to litigate individually—such as the opportunity to collect statutory damages…—it does not follow that such claims are inappropriate for class treatment." *Manno,* 289 F.R.D. at 690 (citing *Landsman,* 640 F.3d at 94–95). "While nuisance calls from debt collectors may not be 'the most egregious of wrongs policed by Congress,' [the courts should not] assume 'that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated—to sue in the absence of the class action vehicle.'" *Id.*

In that light, there's no question a class action is the superior method here. Plaintiff's and the Class's claims involve identical alleged violations of the TCPA and are subject to generalized proof. Moreover, absent a class action, most members would find the cost of litigating their claims—which

19

are statutorily limited to a maximum of $500 (or $1,500) per call—to be prohibitive. That is, given this small amount of damages relative to the resources necessary to litigate these claims,[8] it is unlikely a significant number of Class members would be able to obtain redress for Defendants' misconduct, or that Defendants would be deterred from proceeding with that same conduct. Not to mention that prosecution of thousands of identical claims would be judicially efficient. Finally, "there are no prickly individualized questions with the potential to derail this class action." *Manno*, 289 F.R.D. at 690.

### E. The Court Should Appoint Plaintiff's Counsel as Class Counsel.

Finally, Rule 23 provides that once a class is certified, the Court must appoint class counsel who will "fairly and adequately represent the interests of the class…." Fed. R. Civ. P. 23(g)(1)(B). In doing so, the Court should consider proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions and the types of claims asserted in the case, (3) knowledge of the law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv). Plaintiff's counsel are undoubtedly qualified and should be appointed Class Counsel.

Proposed Class Counsel have diligently investigated and prosecuted this case. They've devoted substantial time, energy, and resources to developing the theory of Plaintiff's claim, obtaining discovery to narrow the proposed Class definition, and progressing the litigation. (*See* Declaration of Benjamin H. Richman ¶ 3, attached as Exhibit 9.) As described in Section IV.C.iv, *supra*, Plaintiff's counsel also have extensive experience prosecuting TCPA claims and have been appointed class counsel in numerous TCPA actions. (*See* Ex. 9-A.) They have also committed and will continue to commit the resources necessary to adequately represent the Class. (Richman Decl. ¶ 3.) As such, Plaintiff's counsel, Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman, and Christopher L. Dore of Edelson LLC, should be appointed Class Counsel pursuant to Rule 23(g).

---

[8]     For example, this case has required Plaintiff to litigate for a year now, serve and respond to several sets of discovery, take and sit for depositions, and engage in discovery motion practice.

## V.     CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied and therefore Plaintiff Carlos Cabrera, on behalf of himself and the proposed Class, respectfully requests that the Court enter an Order (1) certifying the proposed Class pursuant to Rules 23(a), (b)(2) and (b)(3), (2) appointing Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman, and Christopher L. Dore of Edelson LLC as Class Counsel, and (3) awarding such other and further relief as the Court deems reasonable and just.[9]

Respectfully submitted,

**CARLOS CABRERA**, individually and on behalf of all others similarly situated,

Dated: September 6, 2013

By: /s/ Scott D. Owens
       One of Plaintiff's Attorneys

Jay Edelson
Rafey S. Balabanian
Christopher L. Dore
Benjamin H. Richman
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
cdore@edelson.com
brichman@edelson.com

Scott D. Owens (Fla. Bar No. 0597651)
LAW OFFICE OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Boulevard
Hallandale, Florida 33009
Scott@ScottDOwens.com

---

[9]     Upon certification of the Class, Plaintiff will present a notice plan to the Court and provide an explanation about how direct notice that satisfies Due Process can be accomplished.

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
1001 N. Federal Hwy, Ste. 106
Hallandale Beach, FL 33009
Tel:  954-454-5841
Fax: 954-454-5844

## <u>CERTIFICATE OF SERVICE</u>

I, Scott D. Owens, an attorney, hereby certify that on September 6, 2013, I served the above and foregoing ***Plaintiff's Motion and Memorandum of Law in Support of Class Certification***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 6th day of September 2013.

/s/ Scott D. Owens