UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  12-CV-61390-WILLIAMS

CARLOS CABRERA, individually and on
behalf of all others similarly situated,,

        Plaintiffs,

vs.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a MARYLAND CORPORATION,
and BELL, LLC, a Florida limited liability
company,

        Defendant.

_____/

## BELL, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

Defendant, BELL, LLC, by and through undersigned counsel, hereby files its Response in Opposition to Plaintiff's Motion for Class Certification [DE 66], as follows:

**I.**    **Introduction**

This litigation involves a class action complaint against Defendants Government Employees Insurance Company ("GEICO") and Bell, LLC ("Bell") for allegedly violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") by placing phone calls to the putative class members in regards to insurance subrogation claims using an automatic telephone dialing system.  [DE 1].  It is important to understand that there are multiple "Geico entities" that apparently had subrogation accounts that were referred to Bell through the "Geico Claims Center", and the Claims Center is understood to be a different entity than the Defendant GEICO. See Deposition of Joel Bouvier at pp. 24, 61, 149-50 (transcript filed under seal pursuant to Court's Order DE 72).  Plaintiff's characterization of "3,000 GEICO files" does not identify which ones, if any, pertain to Defendant Government Employees Insurance Company ("GEICO"), as opposed to other entities, and any representation to the contrary is a flat misrepresentation of the record.

Plaintiff has nevertheless altered the alleged class definition in the motion for class certification to something different that what is in the operative complaint and now seeks to certify a class that pertains only to Bell's actions related to Defendant Government Employees Insurance Company.  Plaintiff has gone from four definitions in the operative complaint to one in a class certification motion, which is also something altered and different from what Plaintiff pursued in discovery.  Plaintiff is no longer pursuing against Bell two nationwide classes of all calls Bell made to anyone regarding subrogated interests as alleged in paragraph 25 of the operative complaint [DE 1].  Rather, Plaintiff is now through its motion simply seeking to certify one combined class related to all calls "featuring an artificial or prerecorded voice" made by a non-party, Livevox, related to only Defendant GEICO's subrogated interests, where Defendant GEICO provided the contact information to Bell, and where no prior express consent was provided prior to each violative call that was allegedly made.  The attempts to amend the operative through a class certification motion is improper and if Plaintiff truly seeks to narrow the class, such should have been done through a motion to amend the Complaint, which was time barred as of April 2013.  Plaintiff's failure to amend the Complaint when pursuing different defined classes impacts Bell's interests, as well as any putative class member in the nation that has been jettisoned by Plaintiff and Plaintiff's counsel, because it has the ability to fundamentally impact the tolling principles applicable to claims against Bell as set forth by *American Pipe and Construc. Co. v. Utah*, 414 U.S. 536 (1974), *Crown, Cork and Seal Co. v. Parker*, 462 U.S. 345 (1983) and their progenies.  Plaintiff did not have the requisite evidence to support class certification when the original motion to certify two classes was filed on July 22, 2013 [DE 40], and Plaintiff lacks the requisite evidence to satisfy *his burden* for establishing the necessary elements for certification of the one class he pursues now through his "Combined Motion" [DE66].

In his current "Combined Motion", Plaintiff seeks to represent a class defined as:

> All persons in the United States to whom (1) a telephone phone call was placed through LiveVox that featured an artificial or prerecorded voice; (2) to a phone number provided to LiveVox by Bell LLC; (3) whose contact information was provided to Bell LLC by GEICO; and (4) who never provided Bell LLC, GEICO,

2

or any third party acting on their behalf, prior express consent to
place telephone calls to the phone number called. [1]

Plaintiff has failed to meet his high burden to have his purported class certified.  Rather, the record evidence shows there are undeniable concerns with the purported class which are difficult to overcome such as: (1) Plaintiff does not have standing to bring a claim under 47 U.S.C. § 227(b)(1)(B); (2) the operative complaint does not support the class sought in Plaintiff's motion; (3) the purported class is unascertainable since it is undisputable that Bell cannot determine, from a search of its records, which calls were made with or without consent nor which calls were made to a cellular or residential phone, and to whom they were made and received; (4) the legal and factual issues surrounding Plaintiff's TCPA claims are not common to those of the putative class members; (5) prior communications with the Defendants and unique circumstances are applicable to each purported class member and therefore the question of consent does not predominate; and (6) class treatment is not superior since the putative class members will likely have no recovery and the magnitude of the damages award may violate Defendants' due process rights.   Accordingly, Defendant denies that class treatment is appropriate for the aforementioned reasons, which are argued in further detail below.

## II.    Plaintiff Has Not Demonstrated Standing

It has long been held that "any analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987), cert. denied, 486 U.S. 1005 (1988).  "[T]he threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues." *Id.*; *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001), 244 F.3d at 810 (11th Cir. 2001)(reversing class certification to conduct an evidence inquiry to determine whether named representative had standing); *Carter v. West Publishing Co*., 225 F.3d 1258, 1262 (11th Cir. 2000).  The standing inquiry should occur before any other requirements of Rule 23 are considered.  *Murray*, 244 F.3d at 810; *Carter*, 225 F.3d at 1262.  "Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made."  *Angel Music, Inc. v. ABC Sports, Inc*.,

---

[1]  This proposed class is not one of the four classes asserted in the Complaint.  Of note, it is based on calls placed through LiveVox (a non-party), however the Complaint contains no allegations concerning alleged calls placed through LiveVox.  In fact, the Complaint makes no reference to LiveVox at all.

112 F.R.D. 70, 73 (S.D.N.Y. 1986).  "[A] Plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class." *Carter*, 225 F.3d at 1262 (internal quotation and citation omitted). At least one named class representative must have constitutional standing to raise each class subclaim. *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)(remanding for evidentiary hearing after improvident certification, stating "[t]his [standing] inquiry is necessarily fact-specific and requires factual proffers, through affidavits and other evidentiary documents, that have not been developed sufficiently as of now.").

Given that Plaintiff has alleged that the alleged violative calls were allegedly placed to his cellular phone number, he has no standing to assert or pursue claims under 47 U.S.C. § 227(b)(1)(B) related to calls made to *residential lines*.  Plaintiff attempts to bring purported class claims for alleged violations of both 227(b)(1)(A)(iii) and 227(b)(1)(B) of the TCPA.  Section 227(b)(1)(A)(iii) makes it unlawful to make calls to a cellular telephone services using any automatic telephone dialing system or an artificial or prerecorded voice without prior consent or other exempted reasons.  47 U.S.C. Section 227(b)(1)(A)(iii). However, Section 227(b)(1)(B) specifically addresses residential lines.  It makes it unlawful to "initiate any telephone call to ***any residential telephone line*** using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)". 47 U.S.C. Section 227(b)(1)(B) (emphasis added).  Here, Plaintiff does not plead  or argue that he had a residential telephone to which any call was made.  Moreover, he specifically confirmed that he did not.  *See* Cabrera Deposition at 32: 8-20[2].  Plaintiff also does not plead or argue that violative calls were made to any residential line for any class member that are not subject to the exemptions that the FCC has established pursuant to Congressional authority that would apply at the very least to calls to residential lines - such as calls made for commercial purposes that do not include or introduce an unsolicited advertisement or constitute a telephone solicitation.  *See, e.g.* 47 CFR 64.1200(a)(2)(iii); *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011); *Bentley v. Bank of Am., N.*A., 773 F. Supp. 2d 1367, 1374 (S.D. Fla. 2011).

---

[2] Defendant Bell will conventionally file with the Court a Motion to File Under Seal the deposition transcript of Carlos Cabrera.

4

"It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, 'each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Prado*, 221 F.3d at 1280, citing *Griffin*, 823 F.2d at 1483.  It is undisputed Plaintiff did not receive a call to a residential telephone line, and therefore he has no standing to bring a claim based on alleged violative calls to a residential telephone line under §227(b)(1)(B).  Additionally, those claims would not be actionable anyway, since at the very least, the alleged calls related to pursuit of subrogated interests would constitute exempted calls made for a commercial purpose that does not involve telemarketing or advertisement.  Based upon this reasoning, the motion should be denied outright because plaintiff has impermissibly sought to merge claims that he has no standing or right to pursue.

### III.    Plaintiff Has Failed To Establish The Right To Class Certification Under Rule 23(a) and Rule 23(b)(3)

In order to be granted class certification, ***it is plaintiff's burden*** to establish all of the four prerequisites found in Rule 23(a), (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011); *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Vega*, 64 F.3d at 1256.  The Rules Enabling Act, 28 U.S.C. §2072(b), expressly forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." *See also Dukes,* 131 S. Ct. at 2561.   "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Vega*, 564 F.3d at 1265 (citing *Valley Drug Co. v. Geneva Pharms, Inc*., 350 F.3d 1181, 1187 (11th Cir. 2003)).  In addition, it is Plaintiff's burden to establish that his proposed Rule 23(b)(3) class meets two additional requirements, known as "predominance" and "superiority":  "Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Vega*, 564 F.3d at 1265.  While a district court must not decide the merits of the case at the class certification stage, it "can and should consider the merits ... to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Vega*, 564 F.3d at 1266 (citing *Valley Drug*, 350 F.3d at 1188 n. 15 (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct.

2364, 2372, 72 L.Ed.2d 740 (1982)); *see Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n. 12, 98 S.Ct. 2454, 2458 & n. 12, 57 L.Ed.2d 351 (1978)). The Supreme Court in *Falcon* recognized that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 131 S.Ct. at 2551 (citing *Falcon*, 457 U.S. at 160).

A district court must conduct a "rigorous analysis" of the Rule 23 prerequisites before certifying a class.  *Dukes*, 131 S.Ct. at 2550; *Vega*, 564 F.3d at 1265 (citing *Castano v. Am. Tobacco Co*., 84 F.3d 734, 740 (5th Cir. 1996))(emphasis added).  The party seeking certification bears the burden of proving that the proposed class satisfies all relevant requirements.  *Id.* Defendants here have no initial burden.  In conducting this rigorous analysis, this Court cannot accept Plaintiff's conclusory allegations, and it cannot avoid the analysis mandated by Rule 23 by granting conditional certification.  *In re:  American Med. Sys., Inc*., 75 F.3d 1069, 1088 n.21 (6th Cir. 1996); *Castano*, 84 F.3d at 741 (5th Cir. 1996).  It is not enough that a plaintiff generally alleges that there are other persons similarly situated that would comprise a class of plaintiffs; he must prove that other claimants such as himself exist. *North American Biologicals Inc. v. Illinois Employers Ins. of Wausau*, 931 F.2d 839 (11th Cir. 1991).

Plaintiff attempts to support his position in large part by arguing that Defendants have to come forward with affirmative evidence of consent of various putative class members to avoid TCPA liability.  Plaintiff is wrong.  First, Defendant Bell in no way concedes it is Defendants burden to establish consent related to TCPA claims.  Rather, *Plaintiff bears the burden of establishing lack of consent* pertaining to each and every violative call at issue, and that means that consent did not exist at each time each alleged call was made to each alleged putative class member, and that those calls were not subject to any exemptions such as commercial purpose or established business relationship.  *See e.g., Bianchi v Bronson & Migliaccio, LLP*, Order on Parties Motions for Judgment as a Matter of Law [DE 59, p. 5, fn 2], Case No. 09-cv-61164-UU (S.D. Fla. May 27, 2010) (attached as Exhibit 1) ("[T]he Court finds that because the TCPA is silent on the issue of who carries the burden of establishing consent, it falls to Bianchi. *See Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1110 (11th Cir. 2008) (citing *Schaffer v. Weast*, 546 U.S. 49, 56 (2005) for the general rule that when a statute is silent as to who bears the burden of proof, the default is that the plaintiff carries the risk of proving his claims").  Accordingly, the FCC's interpretation is not entitled to

6

"*Chevron* deference", and neither Plaintiff nor the FCC can impermissibly shift the burden of proof and alter causes of action established by Congressional statute.  Secondly, even if Defendants bear the burden of proof at trial as to consent or other TCPA elements that Defendants contend the FCC has impermissibly attempted to alter the burden of proof, it is still *plaintiff's burden* to establish the requisite evidence of the various elements of Rule 23 to support class certification, and Plaintiff has not identified one other person that satisfies the criteria of class certification for the putative TCPA class claims Plaintiff is pursuing. Defendant's right to develop and assert individual defenses against putative class members is significant and substantive; it cannot be compromised by the class action device. *See Dukes,* 131 S. Ct. at 2561 ("[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims.") (internal citations omitted); *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1278-79 (S.D. Fla. 2012) ("The class's susceptibility to individualized affirmative defenses also mitigates against class treatment"); *Doll v. Chicago Title Ins. Co.,* 246 F.R.D. 683, 688 (D. Kan. 2007) (denying class certification where applicability of statute of limitations defense could only be determined by an examination of the circumstances involving that class member). The potential applicability of such defenses is consistently recognized as a factor pertinent to class certification. *See LaBauve v. Olin Corp.,* 231 F.R.D. 632, 675 (S.D. Ala. 2005) (collecting cases).  Furthermore, that substantive right to assert defenses related to consent and/or mitigation must be especially carefully guarded where, as here, each telephone call made stands, at least potentially, to "count" in the calculation of statutory damages to be assessed on a per violation basis. *See, e.g., Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 450 (5th Cir. 1988) (noting that the failure of the consumer to mitigate his FCRA damages has bearing on the calculation of damages).

Here, Plaintiff has failed to meet his burden of demonstrating the prerequisites found in Rule 23(a) and 23(b), as argued in detail below.  Class certification should be denied.

## A.    The Proposed Class Is Unsupported By Plaintiff's Complaint

Plaintiff has attempted to modify the class definition numerous times without amending the Complaint.  Instead, Plaintiff merely modified the class definitions in his motion for class certification.  Such modifications in the motion for class certification have no bearing Plaintiff's Motion for Class Certification which travels under the operative complaint. *See Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1263 (11th Cir. 2009).  Plaintiff cites *Prado-Steiman ex rel.*

*Prado v. Bush* for the proposition that he can alter his class definition.  Although the Eleventh Circuit in *Prado* noted that class certification determinations are so fluid and fact-sensitive that district courts should be given an opportunity to fine-tune their class certification order, the opinion does not stand for the proposition that class definition can be significantly altered without formal amendment of the pleadings.  221 F.3d 1266, 1273-74 (11th Cir. 2000).  Rather, the court in *Prado* recognizes that the court (not a party) can amend class certification orders at any time before final judgment.  *See* Fed. R.Civ.P. 23(c)(1)(C); *Prado* at 1273.

For instance, the plaintiff in *Vega* attempted to seek certification of a sub-class that was not initially pled in the complaint. *Vega*, 564 F.3d at 1263.  He also simultaneously moved for leave to amend the complaint to add a proposed subclass or alternative class  *Id*. The district court denied the motion for leave to amend, but did certify a modified class that appears to have incorporated some of the language and issues from the proposed sub-class.  *Id*. at 1263-64.  The Eleventh Circuit reversed the certification of the modified class and held that the requirements of Rule 23 were not satisfied based on the complaint, as pled.  *Id*. at 1267, 1268, 1271-1272. The court in *Vega* found that the operative pleading provided no basis for a class limitations plaintiff proposed in the motion for class certification. *Id*. at 1267.  It specifically stated that modifications of the proposed class definition "would be inconsistent with and unsupported by Vega's complaint." *Id*. at 1276.  Such is the case here.  Plaintiff Cabrera's attempt to modify or limit the definition of the classes is inconsistent with the allegations of the class complaint, and therefore, makes it practically impossible to ascertain who are the putative class members.  *See also Cwiak v. Flint Ink Corporation*, 186 F.R.D. 494, 497 (N.D. Ill. 1999)(holding that a plaintiff's "attempt to amend the complaint through the motion for class certification is inappropriate, and the class certification issue must be decided on the definition stated in the complaint.").  Therefore, Plaintiff's continual attempts to rectify the issues with the proposed class definitions are procedurally improper and must be ignored.

**B.**     **The Proposed Class Is Not Ascertainable**

Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1304 (11th Cir. 2012) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970).  Although not specifically mentioned in Rule 23(a), a plaintiff's class definition must set forth a class that is identifiable and

ascertainable. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc*., 209 F.R.D. 159, 163 (C.D.Cal.2002); *see also Brown v. NFL Players Ass'n*, 281 F.R.D. 437, 441 (C.D. Cal. 2012).

A class is sufficiently defined and ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member." *Hayes v. Wal-Mart Stores, Inc*., --- F.3d --- , 2013 WL 3957757, at *3 (3d Cir. 2013); *O'Connor v. Boeing N. Am., Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998); *see Buford v. H & R Block, Inc*., 168 F.R.D. 340, 347 (S.D. Ga. 1996)("[T]he 'description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class,' " quoting *Pottinger v. Miami*, 720 F.Supp. 955, 957 (S.D.Fla.1989)).

Rule 23 demands that the members of a class be ascertainable by reference to objective criteria and without the need for individualized fact inquiries. *See e.g. Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) (where defendant's own records did not reflect what tires were installed and would rely on potential class member's affidavits, class was unascertainable, because "[f]orcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications"); *O'Neill v. Home Depot USA*, 243 F.R.D. 469, 478 (S.D. Fla. 2007) (rejecting class certification where individual investigation or testimony will be necessary to identify class members). Here, it is clear that ascertainability of the putative class members is not attainable from Bell's records, since Bell does not, and cannot, identify which files it handles relate to Defendant Government Employees Insurance Company ("GEICO"), as opposed to others.

Moreover, "[w]here ... a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition." *Kenro, Inc. v. Fax Daily, Inc*., 962 F.Supp. 1162, 1169 (S.D.Ind.1997); *see also Armstrong v. Chicago Park Dist*., 117 F.R.D. 623, 626-27 (N.D.Ill.1987) (a class definition is "self defeating" if "the court is forced to consider the merits of the controversy and to deny [certification] because of an inability to define who belongs in [the class] before there has been a full trial"). The need for a definition that permits identification of members of the class is particularly important where plaintiffs seek certification under Rule 23(b)(3) because of the notice requirements that must be satisfied for such a class.  *See O'Connor*, 184 F.R.D. at 319 ("[D]ue to notice requirements, class definitions of actions maintained under Rule 23(b)(3)

command greater precision than those brought under Rule 23(b)(1) or (b) (2)").  *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621 (C.D. Cal. Jan. 7, 2008).

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Thomasson v. GC Services Ltd. P'ship*, 275 F.R.D. 309 (S.D.Cal.2011)(citing *Moreno*, 251 F.R.D. at 421 (rev'd on other grounds)).  That is, ascertainability is a question of whether the proposed class definition is definite enough for the court to determine whether someone is a member of the class.  *Zeisel v. Diamond Foods, Inc*., 2011 WL 2221113 (N.D. Cal. June 7, 2011).  The class definition should be "precise, objective and presently ascertainable."  *O'Connor*, 184 F.R.D. at 319. While the identity of the class members need not be known at the time of certification, the class definition must "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id*.  Even is this Court were to consider the Plaintiff's alleged modified class definition in the motion for class certification, such modified definition does not remedy the issue that the class is not a definable group and cannot be ascertained from Bell's records.

Bell cannot determine, from a search of its records, which calls were made with or without consent, nor can it determine which calls were made to a cellular or residential phone, or which Geico entity the file may relate to.  *See* Declaration of Bouvier [DE 55, ¶5-6, 10-12]; Deposition of Joel Bouvier at pp. 61, 149-50 (transcript filed under seal pursuant to Court's Order DE 72).  Additionally, GEICO's corporate representative testified:

> Q.  Okay. Where does GEICO obtain the telephone numbers that it has in its files for the individuals it's seeking to collect from?
>
> A.  There's no one particular place.  We can get it from police reports, we can get them from other insurance companies, sometimes we get them from the person that we're calling themselves.
>
> Q.  In the instance that you would have a number, contact them and they would give you a different number is the last example you were giving?
>
> A.  Not necessarily.
>
> Q.  Could you explain that further?

10

> A.  If we have an address, we send them a letter, they contact us, and then they have given us their phone number, so we contact them.

*See* Bateman Dep. at 20:12-21:4.

Without an individualized inquiry of each and every file, there is simply no way to evaluate and determine whether consent was provided directly or indirectly to Bell by the "called party" – which is a significant analysis that needs to be undertaken with each TCPA claim. Declaration of Bouvier [DE 55, ¶5-6, 10-12]; Deposition of Joel Bouvier at pp. 61, 149-50. Defendant Bell cannot determine who may comprise the proposed classes without an individualized inquiry of each file.  Declaration of Bouvier.  "A court should deny class certification where the class definitions are overly broad, amorphus, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l*, Inc., 218 F.R.D. 262, 269 (S.D.Fla.2003); *Kelecseny v. Chevron, U.S.A., Inc., 262 F.R.D. 660, 668 (S.D.Fla.2009)* (denying class certification where "[s]imply to determine whether certain individuals may be in the class, detailed individual inquiry is required"); *O'Neill v. The Home Depot, U.S.A., Inc*., 243 F.R.D. 469, 478 (S.D.Fla.2006) (denying motion for class certification where "individual investigations or testimony will ... be necessary" to ascertain the members of the class); *see also Kirts v. Green Bullion Fin. Servs., LLC*, 10-20312-CIV, 2010 WL 3184382 (S.D. Fla. Aug. 3, 2010).

For instance, the court in *Kirts* found that under plaintiff's proposed definition, the court would essentially have to make a determination that defendant was liable to an individual before it could conclude that the individual is a member of the class, which "would entirely defeat the purpose of conducting a class action."  *Id.* at *6.  The court in *Kirts* denied class certification finding that the proposed class definition was inadequate. *Id.*  Such is the case here.  Plaintiff's latest definition proposed in the motion includes persons who "never provided Bell, LLC, GEICO, or any third party acting on their behalf, prior express consent to place telephone calls to the phone number called."  [DE 66, p. 7].  Under Plaintiff's proposed definition, it would first have to be determined who provided consent to Bell or GEICO to be called on his or her cellular phone. Such is an impossible task without conducting an individualized inquiry of every class members' underlying account.  Declaration of Bouvier [DE 55]; Deposition of Joel Bouvier at pp. 61, 149-50.

Case No.  12-CV-61390 WILLIAMS/SELTZER

Plaintiff's class definition would require Defendant Bell to review the individual files for what telephone number Bell had in its records, but also how the number was obtained and from whom.  Declaration of Bouvier [DE 55]. It also means that in order to identify persons who may fall within the class, there would have to be a review of files and communications by others outside the custody and control of Bell.  *Id.*   In this scenario, it means not only reviewing the insurance claim files and the original telephone numbers provided by obligors, such as Carlos Cabrera, but also reviewing each account record to determine whether there were any discussions with the persons called, and whether that called party agreed to provide the telephone number directly to Bell or GEICO or even someone else, whether the telephone number was a cellular or residential line at the time it was called, and the persons who is the subscriber for the telephone account called.  *See, e.g.* Declaration of Joel Bouvier [DE 55].  There are likely many putative class members who had communications with Bell, Defendant GEICO, or others - including the "first placement entity" that received the file for Defendant GEICO before Bell, as well as GEICO's insured whom GEICO stands in the shoes of - to resolve the potential subrogation claims, and likely agreed, and even possibly requested, to be contacted through their cellular or home telephone numbers called.  *Id*.  In fact, a small sample of the subrogation files referred to Bell by GEICO reveal that there are certainly circumstances in which the obligor had a communication with a representative of Bell and provided consent to be called at a telephone number.[3]   Moreover, it is undisputed that Bell makes an effort to attempt to confirm that the number being called is the telephone number the called party agrees to be contacted at, and such occurred since at least 2008.  *See* Bell's Answers to Interrogatory No. 12 [DE 53-2]; Deposition of Joel Bouvier at pp. 106-07, Ex 7 (Columbo List – Question No. 1 "Is this a good number to reach you regarding this matter?").  Accordingly, such constitutes consent where the person has provided the telephone number to be contacted at.  *See also, In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) (calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted "permission to be called at the number which they have given, absent instructions to the contrary.")

---

[3] Defendant Bell is filing a Motion to File Under Seal the sample of subrogation files referred to Bell by GEICO, as such contain personal and financial information and are also work product protected.

In his motion, Plaintiff argues that class membership is straightforward and that "if Bell made a telephone call to an individual's phone utilizing an artificial or prerecorded voice on behalf of GEICO and without the recipient's consent, he or she is a member of the Class." [DE 66, p. 13-14].  Plaintiff, however, is misrepresenting the record evidence on several issues.  First, the record evidence shows that Defendant Bell did not make the alleged violative calls, as the calls were attempted by LiveVox.  *See* Deposition of Joel Bouvier at p. 117 (transcript filed under seal pursuant to Court's Order DE 72).  It is undisputed that the alleged violative calls were attempted by LiveVox.  Second, the record evidence shows that Bell cannot determine which calls were made on accounts relating to the named Defendant GEICO, since Bell's corporate representative testified that Geico Claims Center assigns accounts for other GEICO-affiliated companies that are not the Defendant GEICO.  The corporate representative for Bell specifically testified as follows:

> Q. Do those letters indicate that GEICO is the entity that it's being collected for?
> A. Again, are you asking me about whether it's GEICO claim center or GEICO -- defendant GEICO, Government Employees Insurance Company?
> Q. I would -- I would be asking about both. I do not believe that they are different.
> A. We would identify that it was a GEICO claim, not that it was a GEICO – defendant GEICO, Government Employee Insurance Company claim.
> Q. What would be the difference?
> A. To my knowledge, there are four – four different -- four, maybe five different GEICO companies.

*See* Deposition of Joel Bouvier as corporate representative of Bell, Inc. p. 60, Line 23 to 61, Line 24 (transcript filed under seal pursuant to Court's Order DE 72).  Defendant Bell cannot determine which accounts were assigned by which GEICO entity without an individualized inquiry of each file and review of each referral sheet to attempt to identify the entity which assigned the account, and that still would likely not reveal whether a file related to Defendant GEICO's subrogated interest, as opposed to a different Geico insurer.  *See* Declaration of Joel Bouvier as corporate representative of Bell, Inc. [DE 55].

Another reason the purported class is not ascertainable is because there is no commercially available data source to mechanically facilitate and determine the subscribers to the cellular numbers allegedly called in violation of the TCPA. Plaintiff has asserted a class

claim, in part, under section § 227(b)(1)(A)(iii), which applies to violative calls made to cellular phones for which the "called party" is charged for the call.   The Seventh Circuit recently concluded that "called party" in § 227(b)(1) means the person subscribing to the called number at the time the call is made.  *See Soppet v Enhanced Recovery*, 679 F.3d 637 (7th Cir. 2012).   In *Soppet*, the defendant debt collector called a cellular telephone number that the debtor had provided to the creditor.  *Id*. at 639.   At the time of the calls, however, the debtor no longer subscribed to the cellular telephone number called by the debt collector.  *Id*.  The court in *Soppet* analyzed the term "called party" and its meaning, since the term is used several times throughout the Act, but not defined.   The court reached the conclusion that "called party" within the meaning of the TCPA provision making it unlawful to place automated calls to a cell phone without the called party's consent, meant the person subscribing to the called number at the time the call was made.  *Id*.

A district court in California reached the same conclusion, holding that the TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for violations of the TCPA. *Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011). Therefore, the person with standing to sue under the TCPA is the subscriber of the wireless service at the time the calls are made.  This is also consistent with the interpretations of the TCPA by the FCC, which consistently has interpreted the TCPA through the lens of whether a person is the subscriber for the number called.  *See, e.g. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8774, para. 45 (1992) (1992 TCPA Order); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12396, para. 11. (1995) (1995 TCPA Order on Recon); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 199*1, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14039, 36 (2003) (2003 TCPA Order); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, CG Docket No. 02-278, Declaratory Ruling*, 23 FCC Rcd 559, 564,  9 (Adopted Dec. 28, 2007, released Jan. 4, 2008) (2008 TCPA Order).

To date, Plaintiff has failed to produce any record evidence showing that the telephone numbers allegedly called were in fact cellular number and whether the putative class member is

the subscriber to the number called. Bell did not know that the telephone number called was a cellular number, as the numbers were provided to Bell in the home phone field. Bell further had no knowledge as to who was the subscriber of the cellular telephone. As previously stated, there is no commercially available data source to determine the identity of the cellular telephone subscribers at the time of the alleged calls. *See* Expert Report of Ken Sponsler in *Manno v Healthcare Revenue Recovery Group, et al*, (attached as Exhibit 2).[4] Therefore, there is simply no manner in which Plaintiff can show the putative class members were the subscribers of the telephone numbers called and prove that each have standing to sue for violations of the TCPA.

Further, throughout the class motion, Plaintiff interchanges the use of the term "calls," "robocalls," "prerecorded calls" and "messages" to describe the alleged violations of the TCPA. Such terms are not interchangeable. The term "robocall" generally refers to prerecorded telemarketing calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 25 F.C.C. Rcd. 1501, 1502 (2010). The calls attempted by LiveVox on behalf of Bell for purposes of contacting the obligor of a subrogation claim are not "robocalls." The record evidence is clear the alleged violative calls were not for telemarketing purposes. Moreover, Plaintiff makes no distinction between alleged calls to cellular phones and residential telephone lines, nor has he described the manner in which he will show whether a cellular or residential line was called. It is these distinctions that make the class unascertainable. Plaintiff has failed to provide an adequate definition of the purported class, which makes it impossible for this Court to determine whether a particular individual is a member. Class certification should be denied on that reason alone.

## IV. Plaintiff Has Failed To Provide Evidence Of Numerosity

Plaintiff has not met her burden in establishing numerosity of the class. Plaintiff's relies on Defendant's corporate representative deposition in an effort to satisfy numerosity. [DE 66 citing to Deposition of Bouvier at p. 58-59]. Plaintiff cites to Mr. Bouvier's deposition where he testified that Bell was referred approximately 3,000 claim files relating to Geico subrogation claims. Mr. Bouvier, however, also testified that Defendant could not identify which accounts related to the named Defendant, GEICO, even if Bell were to review each and every account.

---

[4] Mr. Sponsler's expert opinion was not argued in connection with Manno's motion for class certification. Notably, however, the plaintiff's expert in the same action also agreed with the conclusion that there is no nationally recognized database that can identify who the subscribers or authorized users are for cellular telephone numbers.

*See* Bouvier's Declaration;  Deposition of Bouvier at p. 149-50.  Plaintiff claims that numerosity can be readily determined through both Bell and LiveVox's records.  However, such records have not been identified, and Plaintiff has not identified even one additional person that was called related to Defendant GEICO's subrogated interest, much less that such was a violative call using a prerecorded message or artificial voice without consent or that was not otherwise exempted under the TCPA.  Therefore, numerosity has not been shown.

Plaintiff requests certification of the TCPA class consisting of anyone who received a call featuring an artificial or prerecorded voice placed through LiveVox at a telephone number provided to Bell by Defendant, regardless of whether the person who listened to the message was the intended obligor or the intended called party, or whether the attempted message was even received at all.  Such is insufficient.  For instance, in *Thorne*, the court denied certification because Plaintiff did not affirmatively meet her burden of numerosity since she failed to prove that there were in fact sufficient numerous parties.  *Thorne*, Case No. 10-20257 (DE 133).  The court in *Thorne* held that the flaw with the proposed class, which related to a message allegedly violative of the FDCPA class, was that "If a person were to listen to the recording and hang up without pressing a button, there is simply no way to know whether the recipient was a consumer or a third-party." *Id*.  Here, similar to *Thorne*, Plaintiff "presents only speculation as to the size of the proposed class based upon the number of persons he believes received a phone call and sheer guesses as to the proportion of those calls that were received by consumers." *Id*.

The Eleventh Circuit confirmed in *Vega* that a court cannot find numerosity based on assumptions and inferences, and held that a class plaintiff still bears the burden of making some showing, "affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement."  *See Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1266 (11th Cir. 2009).  The fact that Bell was referred thousands of accounts provides no indication of how many calls were attempted in relation to Defendant GEICO accounts, much less the identity of those individuals.  Plaintiff attempts to argue that numerosity exists simply because he is able to demonstrate a large number of calls made by Bell; however, it is clear that Plaintiff has failed to provide any evidentiary basis upon which this Court can find that the numerosity requirement has been met as to messages or calls made to or received by persons with standing to sue. Yet, Plaintiff has offered no evidence of the actual number of Defendant

GEICO claims that had calls placed through LiveVox, and therefore, Plaintiff has not satisfied the numerosity requirement.

**B.    Plaintiff Cannot Satisfy the Commonality Requirement**

Plaintiff has failed in his burden to establish commonality.  Plaintiff asserts that the common issue to all members is "whether Defendants caused robocalls to be made to Plaintiff's and the Class members' telephones that utilized an artificial or prerecorded voice."  Such a general statement, without anything else, is not proper.  Plaintiff's burden under Rule 23 requires far more.  Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *Dukes*, 131 S.Ct. at 2551 (citing *Falcon*, 457 U.S. at 157).  "This does not mean merely that they have all suffered a violation of the same provision of law.  *Dukes*, 131 S.Ct. at 2551.  Most significantly, "a class action must involve issues that are susceptible to class-wide proof," which plaintiff cannot do here.  *See Murray*, 244 F.3d at 811.  "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, supra at 2551 (quoting *Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009) at 132).

"For a class to be appropriate, the common contention "must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, supra at 2545.  "Without some glue holding together the alleged reasons for those decisions, it will be impossible to say that examination of all the class members' claims will produce a common answer" to the crucial questions here, which are: (1) who is the intended recipient of the call; (2) who received a prerecorded message; (3) who was called on a cellular telephone; (4) who was called on a residential telephone; (5) what calls were made to the wireless subscriber; (6) what accounts related to amounts owed to Defendant GEICO – i.e. does it pertain to a Defendant GEICO file or some other's subrogated interest; (7) who provided the number called; (8) was it disclosed as a cellular number; (9) was consent provided to be called, and when and with whom – Bell, GEICO, or third party caller; (10) what actual damages are being sought, and by whom, for each and every alleged violative call, and (11) what facts for each call made to

each putative class member justify awarding willful or knowing damages under the TCPA. There is simply not enough "glue" to hold the alleged class claims together.  *Id.*

The court in *Dukes* cited *Falcon*, 457 U.S. 147, to describe the proper approach to commonality.  *Id.* at 2545.  "The conceptual gap between an individual's discrimination claim and "the existence of a class of persons who have suffered the same injury, must be bridged by "[s]ignificant proof that an employer operated under a general policy of discrimination." *Id.* at 2545 (citing *Falcon*, 457 U.S. at 159, n. 15).

The legal and factual issues surrounding Plaintiff's TCPA claims are atypical of those of the putative class members.  Applying the standard in *Dukes*, here, in order to "bridge the gap" between Plaintiff Cabrera's claim and those of the class members, there must be significant proof that Bell called each and every class putative members' telephones using an automatic telephone dialing system or prerecorded voice without their consent for a purpose not exempted under the TCPA.  But, the record evidence shows that Bell did not make calls to Plaintiff Cabrera or others using an automated telephone dialing system or an artificial or prerecorded voice.  *See* Declaration of Joel Bouvier [DE 55-1, p. 2].  Bell cannot tell from its records whether a telephone number in any specific file is a cellular phone number or a residential telephone number in any uniform or consistent manner.  *Id.*   Moreover, it is probable that there are instances in which the putative class members communicated with Bell, GEICO or other persons or entities to resolve the potential subrogation claims and agreed or requested to be contacted at their cellular or residential number.  Notably, the calls alleged to be at issue were not even made by Bell, but rather Livevox.  There is no evidence of what means and methods Livevox used to limit calls to telephone numbers usually understood to be home phone numbers by Bell, or what control Bell exercised over Livevox's methods.  Thus, any claim that Plaintiff did not provide consent to be called on his cellular number at the very least demonstrates a lack of commonality, typicality, and ascertainability, and certainly means that an individualized inquiry as to each putative class' understanding would be necessary, such that predominance would be lacking.

Plaintiff attempts to circumvent the individualized inquiry of consent by incorrectly asserting that there are no circumstances in which Bell obtained contact information directly from the individual.  That is wrong, and misrepresents the efforts and procedure Bell had for attempting to confirm the number a called party agreed to be called at.  Rather, the record evidence shows that in some instances contact information is, in fact, provided directly by the

individuals.  As Plaintiff claims, GEICO's corporate representative did testify that it obtains an obligor's telephone number from police reports and insurance companies, but what Plaintiff fails to reveal is that the corporate representative further testified that there are instances where the obligor contacts GEICO and provides his or her telephone number.   In fact, Plaintiff mischaracterizes the record evidence by stating that contact information does not come from the individuals directly.   Instead, GEICO's corporate representative testified "There's no one particular place.  We can get it from police reports, we can get them from other insurance companies, sometimes we get them from the person that we're calling themselves. . . .  If we have an address, we send them a letter, they contact us, and then they have given us their phone number, so we contact them."   *See* Bateman Dep. at 20:12-21:4.

Plaintiff relies on *Thrasher-Lyon v. CCS Commercial, LLC* arguing that it is directly on point with respect to the issue of whether "prior express consent" is a common question. *See Thrasher-Lyon v. CCS Commercial, LLC,* No. 11-04473, 2012 WL 3835089, at *1 (N.D. Ill. Sept. 4, 2012) reconsideration denied, motion to certify appeal granted, No. 11-04473, 2012 WL 5389722, at *1 (N.D. Ill. Nov. 2, 2012).   However, Plaintiff's reliance on *Thrasher-Lyon* is misplaced.  First, the opinion issued in *Thrasher-Lyon* was not on class certification. *Id*.  Rather, it addressed partial summary judgment on the consent issue concerning the named plaintiff's individual claim. *Id* at *4.   Moreover, based upon individual facts specific to the named plaintiff, the court in *Thrasher-Lyon* concluded that the interactions between the parties were not "sufficient to reasonably evidence express consent to be robo-called about a subrogation claim." *Id*.   In that regard, the opinion in *Thrasher-Lyon* is relevant to the issues here since the same detailed review and individualized analysis of the interactions between the putative class members and Bell and/or GEICO would be necessary.

Plaintiff neglects to cite the subsequent history and inform this Court that the court in *Thrasher-Lyon* recognized that "its interpretation of 'prior express consent' presents 'substantial ground for difference of opinion.'" *See* No. 11-04473, 2012 WL 5389722, at *1 (N.D. Ill. Nov. 2, 2012).   In fact, the district court certified its summary judgment ruling on the class representative's individual claim to the Seventh Circuit Court for review by interlocutory appeal before even addressing class certification.  *See Thrasher-Lyon*, 2012 WL 5389722, at *1.  The Seventh Circuit never reached this issue, as the case settled and was dismissed.  *See Thrasher-Lyon*, No. 1:11-CV-04473 (7th Cir. June 18, 2013).   It is evident that the issue of consent can

19

vary from circumstance to circumstance and is not a common question that can be proven on a class basis.

Another indicator as to why Plaintiff cannot satisfy the commonality requirement is the measure of damages.  Plaintiff claims that the putative class members damages are a common question capable of determination on a class-wide basis because it requires nothing more than multiplying $500 (or $1,500) by the number of calls.  *See* [DE 66, p. 20].  Plaintiff's damages model is wholly flawed.  First, as previously argued, Bell would have to review the records for each and every account in question to determine whether the account was assigned by the named Defendant GEICO.  Bell's corporate representative testified, however, that review of each and every one of Bell's record may not reveal whether the account was assigned by GEICO or one of the other Geico-related companies that assign files.  Presuming the GEICO accounts can be identified, it would then have to be determined whether the telephone number called on the account was a cellular or residential line and whether the subscriber of the telephone number was indeed the intended "called party," in order to show that the putative class member indeed has a viable TCPA claim.  *See Soppet.*  Once those accounts are identified, and presuming that can be done, a review of the call logs for each and every identified account would have to be reviewed in order to determine how many alleged violative calls were placed per account.  It is evident that there is simply no way to determine the amount of alleged violative calls per putative class member without an individualized inquiry of each and every account involved.  Additionally, Plaintiff testified that he is also seeking actual damages in the form of emotional distress for himself and the putative Class. *See* Plaintiff's Deposition at p. 142, Lines 6-16.  Measuring emotional distress damages certainly cannot be determined on a class-wide basis since such would require an individualized inquiry as to every members' interaction with Bell, GEICO and any other third party that communicated with the called party.

As to damages for willfulness, which Plaintiff and the Class seek here, such is measured according to the circumstances involved in each account, such as how Bell obtained the telephone number called, whether Bell had knowledge the number called by LiveVox was a cellular number, and whether the putative class member requested that his or her number no longer be called.  *See Harris v. World Financial Network National Bank*, 2012 WL 1110003 (E.D.Mich. April 3, 2012)(court found calls made to a non-debtor's cellular when debt collector thought it was trying to contact the debtor is not a willful violation; plaintiff must show debt

collector knew that plaintiff did not consent to the phone calls).  Again, all these circumstances prove that the issue of damages can in no way be determined on a class-wide basis, and demonstrate not only a lack of commonality, but also a lack of ascertainability, typicality and predominance.

**C.     Plaintiff's Claim Is Not Typical To That Of The Class Members**

As previously argued, Plaintiff has alleged that the alleged violative calls were placed only to his cellular phone number, but nevertheless, has asserted class claims under 47 U.S.C. § 227(b)(1)(B) which relates to calls made to residential lines.  The fact that Plaintiff's class claims are based on alleged calls to residential lines while Plaintiff admitted he did not receive calls to a residential line, further shows that Plaintiff has failed to satisfy the typicality requirement, which defeats class certification.  *See Thorne v. Accounts Receivable Management, Inc*., 282 F.R.D. 684, 694-695 (S.D. Fla. 2012) (typicality requirement is not satisfied where the Plaintiff did not have a cognizable claim under section of the Fair Debt Collections Practices Act included in the proposed class claims).

"It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, 'each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *Prado*, 221 F.3d at 1280 (citing *Griffin*, 823 F.2d at 1483).  Here, Plaintiff cannot assert a claim under section 227(b)(1)(B) since he admittedly did not have a residential line at the time of the alleged calls and did not receive calls from Bell on a residential line.  Accordingly, it is evident that the putative class members' claims under 227(b)(1)(B) are not typical to the claims asserted by Plaintiff Cabrera.

**D.     Legal and Factual Issues Do Not Predominate**

Throughout his motion, Plaintiff argues that he presents a single theory of liability, which is whether numerous robocalls were placed to the putative class members without there consent.  Plaintiff's "single theory of liability," however, is flawed.  Plaintiff is asserting purported class claims for alleged violations of both §§227(b)(1)(A)(iii) and 227(b)(1)(B) of the TCPA.  Section 227(b)(1)(B) only relates to calls to a residential line, yet Plaintiff admittedly did not receive calls to a residential line.  Moreover, Plaintiff argues that the issue of prior express consent predominates among the class members, but the record evidence proves otherwise.  The claims

for actual damages and "knowing and willful" damages also mean that individualized inquiries and mini-trials will be necessary for each putative class member related to each individualized alleged violative call.

As previously argued, Plaintiff relies on *Thrasher-Lyon v. CCS Commercial, LLC* to argue that "prior express consent" is a common question that predominates among the class. *See Thrasher-Lyon*, 2012 WL 3835089, at *1.  Again, Plaintiff's reliance on *Thrasher-Lyon* is undoubtedly misplaced.  The *Thrasher-Lyon* opinion relied upon by Plaintiff was not related to class certification. *Id*.  Further, the court recognized that "its interpretation of 'prior express consent' presents 'substantial ground for difference of opinion.'" See No. 11-04473, 2012 WL 5389722, at *1 (N.D. Ill. Nov. 2, 2012).  In fact, the district court certified its summary judgment ruling on the class representative's individual claim to the Seventh Circuit Court for review by interlocutory appeal before even addressing class certification.  *See Thrasher-Lyon*, 2012 WL 5389722, at *1.  The Seventh Circuit never reached this issue, as the case settled and was dismissed.  *See Thrasher-Lyon*, No. 1:11-CV-04473 (7th Cir. June 18, 2013).  Here, the same detailed review and individualized analysis of the interactions between the putative class members and Bell and/or GEICO would be necessary to determine consent.   It is evident from the evidence here that the issue of consent will vary from circumstance to circumstance and is not a common question that can be proven on a class basis.  Moreover, the record evidence shows that the majority if not all of the files related to this litigation were "second placement," accounts which means the insurance carrier first referred the subrogation file to an agency for recover and when the first placement agency was not successful then the carrier referred the file to a second agency for recovery. *See* Deposition of Bouvier at p. 37-39.  BELL was considered GEICO's "premier second placement company." *Id*. at p. 39, Lines 6-10.  Accordingly, since the subrogation files in question were "second placement" accounts, there were prior communications with the putative class members prior to BELL attempting to contact them.  This certainly shows that there could be instances in which an obligor had conversations with the "first placement" agency and provide consent to be called at the phone number called.

Moreover, to support his argument that common liability issues predominate, Plaintiff relies upon telemarketing cases involving text messages and facsimiles that were transmitted en masse, so there was no evidence of prior communications between the parties. *See* [DE 66 pg. 13].  Plaintiff cites to *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 390-391 and 393

(N.D. Ohio 2012) for the proposition that Defendants cannot argue individual consent issues exist when there is no evidence of prior express consent.  The court in *Silbaugh*, however, held that consent is a common issue where a magazine subscription service used an automatic telephone dialing system to send thousands of marketing text messages to unknown parties on cellular phone numbers that were obtained through a list broker.  The facts in *Silbaugh* are certainly distinguishable here since this action does not involve en masse marketing through unsolicited faxes or text messages.  Here, the record evidence shows prior communications and unique circumstances are applicable to each purported class member.  Plaintiff further cites to telemarketing cases involving text messages and facsimiles which are undoubtedly inapplicable here.  *See Agne v. Papa John's Intern., Inc.,* 286 F.R.D. 559, 561 and 567-568 (W.D. Wash. 2012)(noting that "speculation that customers may have given their express consent … is not sufficient to defeat class certification" where franchisees had sent thousands of unsolicited text messages marketing their pizza products);  *Landsman & Funk PC v. Skinder-Strauss Assoc.*, 640 F.3d 72, 94 (3d Cir. 2011)(discussing whether consent to receive marketing facsimile transmissions is an individualized question sufficient to defeat class certification and comparing competing class certification decisions on that issue);  *Hinman v. M and M Rental Ctr., Inc*., 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008)(stating that although other courts have determined that consent is an individualized inquiry, the issue may be considered a common question in the specific circumstances of a defendant engaging in a standardized course of conduct where marketing facsimiles were "transmitted en masse based on the 'leads' list compiled several years earlier.").  So as not to be repetitive, Defendant references the court to its arguments as to why the claims are not ascertainable, and commonality and typicality is lacking.  The same arguments should lead this Court to conclude that predominance is also lacking because of the individualized inquiries and mini trials that will be necessary to address the claims of each putative class member related to each individual alleged violative call.

**E.     Class Treatment Is Not The Superior Method For Adjudication Of The Alleged TCPA Claims**

As previously mentioned, it is Plaintiff's burden to establish that his proposed Rule 23(b)(3) class meets two additional requirements, known as "predominance" and "superiority."  Here, Plaintiff has failed to satisfy the superiority requirement for two reasons.  First, the potential liability to the Defendant would be so enormous and completely out of proportion to

23

any harm suffered by Plaintiff that the individual suit, rather than a single class action, is the superior method of adjudication.  *London*, 340 F.3d at 1255 n.5; *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004).  Secondly, the superiority requirement is not met where individual mini-trials must be held on damages. *See Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977).

A number of courts have declined to certify class actions where the plaintiffs have sought enormous statutory damage awards on behalf of the class.  These courts have generally reasoned that class actions involving statutory damages can result in liability that is completely unrelated to the amount of harm inflicted.  For instance, the court in *London* found that the proposed class representative failed to meet the requirements for adequate representation due to a present conflict of interest between the class representative and class counsel.  Additionally, the court noted at p. 1255, n.5:

> However, we also note our doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement.  Unlike the contracts in [*Raton v.*] *Raulerson* [, 146 So. 576 (Fla. 1933)] and *Vista Designs* [*Inc. v. Melvin K. Silverman, P.C.*, 774 So.2d 884 (Fla. 2001)], the alleged illegality of the contracts at issue here occurred through the Appellants' failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations. In addition, the plaintiffs suffered no economic harm.
>
> Under such circumstances, even though economic harm is not an element of the Florida common law claim for restitution, it may be required for superiority under the Federal Rules of Civil Procedure.  This is especially likely when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.  *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974)(noting that class treatment lacks superiority when damages 'shock the conscience); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973)(holding district court did not abuse discretion when it denied class certification for TILA violations case where class members were not harmed and aggregate of statutory damages would be extremely large);  *In re Trans Unions Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002)(finding class action lacked superiority in part because of due process concerns where statutory damages would be 'grossly disproportionate' to any actual damages suffered by plaintiffs); *Ratner v. Chemical Bank New York Trust Co*., 54 F.R.D. 412, 416 (S.D.N.Y. 1972)(finding class certification lacked superiority where violation was technical and aggregation of statutory damages under TILA would be financially devastating for defendants).  But see, *Fabricant v. Sears Roebuck*,  202 F.R.D. 310, 318 (certifying class on facts almost identical to the present suit).

24

Subsequently, in *Klay*, 382 F.3d at 1271, the Court addressed the desirability of class actions in a RICO context and stated 'the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff,' we are likely to find that individual suits, rather than a single class action, are the superior method of adjudication.

Notably, the *London* guidance by the Eleventh Circuit was followed in *Leysoto v. Mama Mia I*, Inc., 255 F.R.D. 693 (S.D. Fla. 2009) when the court denied a motion for class certification under the Fair and Accurate Credit Transactions Act ("FACTA").  The court there stated "the threat of annihilation associated with certification does not serve the purpose of the legislation, and moreover, is simply unnecessary to effectively enforce the Act and compensate victims of identity theft."  *Id*. at 696-99.

Similarly in *Ehren v. Moon, Inc*., 2010 WL 5014712 (S.D. Fla. Dec. 3, 2010), another FACTA class action case, the court denied class certification citing *Klay* and *London*, and stated:

> In this case, I find that certifying a class action is not superior to other available methods for fairly and efficiently adjudicating this controversy.  If class action treatment were applied here, where the complaint contains no indication of any actual damages, the aggregated relief could be oppressive in consequence and difficult to justify.  Certifying a class action in this matter is not superior to other methods of litigation because a class action in this context could raise serious constitutional problems implicating the Defendant's Due Process rights.

*Id*. (*see also American Home Services, Inc. v. A Fast Sign Co., Inc*., 310 Ga.App. 315, 713 S.E.2d 396 (Ga.App. 2011)(reversal of trial court's imposition of $459 million in a TCPA class action against the sender of unsolicited faxes stating only plaintiffs who "receive[ ] an 'unsolicited' fax" may recover in a private TCPA action).

Further, a class action may be appropriate in circumstances where individual plaintiffs have small actual damage claims which alone are too small to warrant litigation.  However, the prevailing plaintiff in a TCPA action can recover $500 per violation, and up to $1,500 if the violation is willful or knowing, an amount considerably in excess of any real damages.  47 U.S.C. §227(b)(3)(B).  By doing so, Congress presented "an aggrieved party with an incentive to act in his or her own interest without the necessity of class action relief."  *Local Banking*, 23 A.3d 469, 476.  Because the prevailing party can recover $500 per violative call, and up to $1,500 if it is a willful or knowing violation, plaintiffs in most individual TCPA claims can recover substantial damages.  *E.g. Fillichio v. M.R.S. Associates, Inc*., Case No. 09-61629-CIV-JORDAN (S.D.Fla. Oct. 19, 2010)(DE 63)(court awarded individual plaintiff $78,500 for TCPA

claim).  However, in *Fillichio*, Plaintiff also was required to go through a trial where the court assessed arguments of mitigation of damages related to the damages sought in excess of the $500 initial statutory aware per TCPA violation.  The same will be necessary here.

Here, even when only assessing $500 per call statutory damages, Defendant Bell faces enormous liability based upon the statutory damages available to the putative class members under the TCPA, particularly since the Act has no cap on damages sought in a class action.  GEICO's corporate representative testified that Geico Claims Center referred more than one thousand subrogation files to Bell since 2010 in Florida, but could not say if it was more than 4,000.  *See* Deposition of Bateman at p. 49 (transcript filed under seal pursuant to Court's Order DE 72).  Defendant Bell is unable to identify which files related to Defendant GEICO, which of those recipients may have been consumers called on a cell phone number, or which accounts relate to accounts where consent without conducting an individualized inquiry.  Nevertheless, if there were simply one violation per account, then every putative class member is entitled to recover a minimum of $500 in statutory damages, which multiplied by the estimated 1,000 to 4,000 subrogation files would total $500,000 to $2,000,000.  If the accounts have more than one violative call, that amount increases.  Defendant's corporate representative testified that Bell's total profit for 2012 was a loss of approximately $158,000, and Bell's net worth is indicated to be less than $100,000.  *See* Deposition of Bouvier at p. 154, Lines 4-7, and Balance Sheet identified as Ex. 10 to Bouvier Deposition.   Not only are the potential damages for the putative class wholly out of proportion to the alleged harm done to any of the members, but such an award would annihilate Defendant as a business.  Certifying the putative class here is not superior to individual claims because, as described above, the damages exposure of this proposed TCPA class would violate Defendant's Due Process rights.  *Ehren*, 2010 WL 5014712.  This Court should deny certification of the putative TCPA class due to the annihilating damages and its disproportion to the amount of harm inflicted.

Moreover, Plaintiff has not carried his burden and established the availability of any positive net worth for the class to recover a percentage of.  The maximum potential award of statutory damages if a class action is maintained is "clearly relevant" to consideration of Rule 23(b)(3)(A).  *Bryant v. Bonded Accounts Service/Check Recovery, Inc*., 208 F.R.D. 251, 261 (D.Minn. Oct. 30, 2000); *see also  Sonmore v. Checkrite Recovery Services, Inc*., 206 F.R.D. 257, 265 (D.Minn. Aug. 6, 2001).  Although a *de minimis* recovery is not an automatic bar to

class certification, many courts have concluded that it constitutes a ground for denial of class certification.  *See e.g. Leyse v. Corporate Collection Servs., Inc*., No. 03 Civ. 8491(DAB), 2006 WL 2708451, at *9 n.5 (S.D.N.Y. Sept. 18, 2006)(noting that even if numerosity had been met, defendant with low net worth would provide only 51 cents per class member for class action of 11,000); *Jones v. CBE Group, Inc*., 215 F.R.D. 558, 569-570 (D.Minn.2002)(holding that class recovery would be *de minimis* based on defendant's net worth); *Granish v. Check Enforcement Unit, Inc*., 209 F.R.D. 392, 393-94 (W.D.Mich.2002)(holding that *de minimis* recovery of 6 cents per class member in view of defendant's net worth warranted decertification of class); *Lyles v. Rosenfeld Attorney Network*, No. 199CV322-D-A, 2000 WL 798824, at *6 (N.D.Miss. May 17, 2000)(holding that maximum recovery of $18.68 per class member as opposed to $1,298.78 possible recovery if brought as individual suit, made class recovery *de minimis* and therefore not superior method). As previously stated, Bell's corporate representative testified that Bell's total profit for 2012 was a loss of approximately $158,000 and the net worth is less than $100,000. *See* Deposition of Bouvier at p. 154, Lines 4-7, Ex 10 Balance Sheet (transcript filed under seal pursuant to Court's Order DE 72).  The undisputed record evidence proves that brining these claims as a class is certainly not the superior method since the class members will likely have no recovery as opposed to the possible recover of $500 per call on an individual basis.

**IV.      This Court cannot certify a class under Rule 23(b)(2)**

Finally, in addition to a class under Rule 23(b)(3), Plaintiff attempts to assert a class under Rule 23(b)(2) based upon the fact that Plaintiff seeks equitable relief under the TCPA. Rule 23(b)(2) class cannot be certified where monetary relief predominates. *Dukes*, 131 S.Ct. at 2557 (Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages); *Murray v. Auslander,* 244 F.3d 807, 812 (11th Cir.2001).  Plaintiff ignores this requirement.   "'[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief.'" *Id*. (emphasis in original) (quoting *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 415 (5th Cir. 1998)).  "Incidental" means damages that flow to the class as a whole. *Id*.  "Liability for incidental damages should not ... entail complex individualized determinations." *Id*.; *Robertson v. National Basketball Ass'n*, 389 F. Supp. 867, 900 (S.D.N.Y. 1975) (denying certification under (b)(2) where players sought treble damages for Sherman Act violations).  In *Murray*, the court reversed a (b)(2) certification where class members were not entitled to damages even if

liability was established and assessing damages required inquiry into individual class member's circumstances.  *Id.*   The court in *Robertson* explained, "[c]lass actions are generally not maintainable under this provision when money damages comprise a significant, if not enormous, portion of the total relief requested." *Id.*  (and cases cited therein) (rejecting the argument that the monetary damages were ancillary to the injunctive relief); *see also Rota v. Brotherhood of Rail, Airline & Steamship Clerks*, 64 F.R.D. 699, (N.D. Ill. 1974) (recognizing that "(b)(2) was not intended to apply where the appropriate final relief relates exclusively or predominantly to money damages").

In general, for certification under Rule 23(b)(2) "to be appropriate, injunctive or declaratory relief must be the predominant remedy requested for class members." *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117(D. Kan. 1995) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §4.12 (3d ed. 1992))(emphasis added).  Such is not the case here.  As previously stated, the money damages sought by the putative class has the potential of totaling millions of dollars, which makes it the most significant portion of the total relief requested.  Accordingly, it is improper to certify the class under Rule 23(b)(2).

/s/ *David P. Hartnett*
David P. Hartnett
Florida Bar No. 946631
dhartnett@hinshawlaw.com
Barbara Fernandez
Florida Bar No. 493767
bfernandez@hinshawlaw.com
Hinshaw & Culbertson LLP
2525 Ponce de Leon Boulevard
4th Floor
Coral Gables, Florida 33134
Tel. No. 305-358-7747
Fax No.  305-577-1063
Attorneys for Bell, LLC

Case No.  12-CV-61390 WILLIAMS/SELTZER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 7, 2013, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day, in the manner specified below, on all counsel of record identified on the attached Service List.

| | |
|---|---|
| John P. Marino, Esq.<br>Edward Cottrell, Esq.<br>Lindsey R. Trowell, Esq.<br>Smith, Gambrell, Russell, LLP<br>50 N. Laura Street - Suite 2600<br>Jacksonville, FL   32202<br>jmarino@sgrlaw.com<br>ecottrell@sgrlaw.com<br>ltrowell@sgrlaw.com<br>COUNSEL FOR DEFENDANT, GEICO | Scott D. Owens, Esquire<br>Law Offices of Scott D. Owens, Esq.<br>664 East Hallandale Beach Blvd.<br>Hallandale, FL<br>Phone:  (954) 589-0588<br>E-Mail:  scott@scottdowens.com<br>COUNSEL FOR PLAINTIFF |
| Rafey S. Balabanian, Esq.<br>Benjamin Richman, Esq.<br>Christopher L. Dore, Esq.<br>Edelson McGuire LLC<br>350 North LaSalle Street - Suite 1300<br>Chicago, IL  60654<br>Phone:  312-589-6370<br>rbalabanian@edelson.com<br>brichman@edelson.com<br>cdore@edelson.com<br>COUNSEL FOR PLAINTIFF | Brett L. Lusskin, Esquire<br>blusskin@lusskinlaw.com<br>1001 N. Federal Highway<br>Suite 106<br>Hallandale, FL  33009<br>Phone: (954) 454-5841<br>Fax: (954) 454-5844<br>COUNSEL FOR PLAINTIFF |

*/s/ David P. Hartnett*
David P. Hartnett

14875703v1  0938497