# Exhibit 2

## EXPERT REPORT OF KEN SPONSLER

I am the Vice President and General Manager of CompliancePoint, DM INC (CompliancePoint) with offices in Duluth, GA. CompliancePoint is a wholly owned subsidiary of PossibleNOW, INC. I was contacted for the purposes of discussions regarding engagement as an expert witness by Robert P. DeWitte of Kurtzman Carson Consultants LLC, as retained as consultant by David P. Hartnett of Hinshaw & Culbertson LLP, counsel for the Defendant in the case STEPHEN M. MANNO, on behalf of himself and all others similarly situated, Plaintiff, vs. HEALTHCARE REVENUE RECOVERY GROUP, LLC d/b/a ACCOUNT RESOLUTION SERVICES, and INPHYNET SOUTH BROWARD, INC, defendants, UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA Case No.: 11-61357-Civ-Scola/Rosenbaum

I have been engaged by Robert P. DeWitte to provide opinions regarding the availability of technology and data sources to reliably identify a subset list of mobile telephone numbers as well as the subscriber name(s) associated with those numbers, from a larger population of telephone numbers, at the point in time when the number(s) was dialed. For this case, I am charging a billable rate of $400 per hour for the time spent reviewing materials and drafting my expert reports.

**My opinions on specific issues follow below.**

Materials reviewed and relied upon: Sample format of telephone number data file, Order on Discovery, Order Granting in Part Plaintiff's Motion to Compel, Order on Motion to Strike, The Complaint, Second Amended Class Action Complaint,

A copy of my CV is attached hereto as Exhibit A. In addition to the experience identified on my CV, in the last four years, I have provided deposition testimony in the matters entitled *Navarro v. Sears Life Insurance Company*, Case No. 2:08-CV-00527-GEB-EFB, in the United States District Court for the Eastern District of California; and *Trilegiant Corporation v. Sitel Corporation*, Case No. 1:2009-cv-06492 in the Southern District of New York.

In addition to the publications identified in my CV, in the last ten years I published the article entitled "Data Privacy And Security Laws: Is Your Company at Risk?" in the November 2005 LOMA Resource Magazine.

**Methodology**

In drafting this report and rendering my opinions in this case, I considered the elements of the sample data file, my knowledge of available wireless data sources as well as my experience in compliance and telephone data audit matters. I have been informed by Mr. DeWitte that the actual file is likely to contain approximately 9600 records. Each record consists of a date field represented to indicate the date the telephone number was dialed, a ten digit telephone number field representing the telephone number that was dialed, a time field represented to indicate the time of dial as well as an "action" and Master No fields whose purpose is unknown to me. The sample file is represented below:

| Master No. | Home Phone | AC/RC Date | AC/RC Time | Action |
|---|---|---|---|---|
| AV1222 | (404) 222-1234 | 7/3/2007 | 8:32 | TR |

I stay current with industry developments—both in terms of technology and compliance— and this has also informed my opinions.

## OPINIONS

1. It is my opinion that this analysis requires two distinct steps. Step one is determining whether a telephone number was associated with a wireless device at the time of dial. Step two is determining who the wireless subscriber was at the time of dial.

2. **Discussion of Step One**: Determining whether a telephone number was associated with a mobile device is possible with a reasonable degree of confidence within the date ranges this case appears to be concerned with (June 15, 2007 through and including June 15, 2011). Our company has maintained a historical record of the commercially available databases necessary for the analysis which is the Wireless Block Identifier as well as the Wireless Ported Number list.

    a. **Wireless Block Identity:** The Wireless Block Identifier file identifies those Area codes and Exchanges or blocks of numbers assigned to wireless carriers active within the North American Numbering Plan in the U.S. and Canada. An updated file is made available twice monthly for download and covers over 560,000 blocks representing some 560 million plus phone numbers that are currently assigned or will be assigned to mobile phones. This list is updated once per month.

    b. **File Format:** Each record on the Wireless Block Identifier file contains 5 fields labeled:

        o NPS (area code)
        o NXX (exchange)
        o X (1st digit of the remaining number - the block of 1,000 numbers)
        o Category (wire = wireless, PCS = personal communication service, etc)
        o Future Use (reserved for future use).

        The first three fields contain a total of 7 digits that identifies a block of 1,000 telephone numbers assigned to a wireless carrier. These 7 digits, representing the area code, exchange and 1st position of the telephone number, must be matched to the first 7 digits of the prospect's telephone number. A match indicates that the telephone number has been assigned to a wireless carrier.

    c. **Wireless Portability:** Wireless and Local Number Portability (LNP): Local Number Portability (LNP), also known as number portability and number porting, enables end users to keep their telephone number when switching from one

telecommunications service provider to another. Prior to the introduction of LNP, changing service providers meant having to get a new telephone number. Number porting changed that, making it possible for consumers to retain the same telephone number. Wireless LNP also allows consumers to move a phone number from a wireline phone to a wireless phone in some cases.

d. **Ported Number Identification Sources:** The commercially available ported number lists are updated on a daily basis. The FCC has provided for a 15 day grace period for numbers ported from a wireline to wireless before they are subject to the wireless calling prohibitions (using an Automated Telephone Dialing System). This allows time for callers to remove newly ported wireless numbers from their calling lists (if applicable).

3. **Step One Analysis:** The file in question (9600 records with call dates ranging from June 15, 2007 through and including June 15, 2011) would be uploaded to the research database. The research database is able to determine if a number was a wireless number at the time of dial. The data elements required for this analysis is the date of dial and the ten digit telephone number. The research database compares the telephone number and date of dial against the Wireless Block Identifier as well as the Ported Number Lists that were current at the time of dial. The output of this analysis would be a file with a wireless "WIR" flag appended to each number. Next, the numbers with a "WIR" flag are compared against the Ported Number List data to exclude numbers that were dialed within the 15 day grace period allowed by the FCC as described above.

4. **Discussion of Step Two:** Step two of the analysis is to determine the identity of the subscriber and users associated with the mobile telephone numbers identified as "WIR" in the step one analysis. However, there is no commercially available data source to mechanically facilitate such an analysis. Additionally, there are several factors that greatly diminish the likelihood of reliably identifying mobile telephone subscribers from a historical perspective. I offer some of these factors here:

   a. **Name Directories:** There is no publicly available list of mobile phone numbers (such as the Yellow Pages or the 411 directory assistance databases for landlines). Some mobile service providers participate in a Caller Name or CNAM database. This facilitates the transmission of caller ID information similar to landline telephone services. We estimate that the CNAM database contains information for approximately 60% of cell phone numbers in existence. This is due in part to carrier participation in the database—among the major carriers, while AT&T, Sprint, and T-Mobile are accounted for in this database, Verizon is not. Finally, CNAM is relevant only for *current subscribers*. There is no historical source for this information.

   b. **Pre-paid telephones**: Pre-paid telephone services introduce another difficulty in determining current as well as historical subscriber information. Buyers of pre-paid telephone services have not been required to provide name or any other

identifying information to purchase the services. This has made the services popular with criminal elements such as gang members, drug dealers and even terrorists. Several states have enacted laws to now require buyers of these telephones to provide their names but even that is problematic because there is a lack of verification procedures to ensure true names are given. In 2010, Senator Charles Schumer introduced S.3427 (Pre-Paid Mobile Device Identification Act). However, this bill still resides in the Committee on Commerce, Science, and Transportation.

   c. **Subscriber-vs-User:** Even if there were reliable sources to determine the identity of subscribers from a historical perspective, this information does not necessarily definitively identify authorized users who may have provided the number during the normal course of business. This is because of the popularity of family and friends sharing plans and situations where a single subscriber's name is associated to multiple numbers on the account for phones being used by family and others.

   d. **Mobile Virtual Networks (MVO):** Another layer of difficulty in determining historical user identities of mobile telephones is the increasingly common practice of "wholesaling". An example of this is the fact that Virgin Mobile actually provides all of its mobile subscriber services through Sprint. Sprint wholesales bandwidth to Virgin Mobile. Therefore Virgin Mobile subscribers are actually on the Sprint network, which further complicates the ability to reliably associate subscribers through providers.

5. **Step Two Analysis:** In my opinion, there is no commercially available mechanical means to reliably identify subscribers and more importantly, authorized users, of mobile telephones from a historical perspective. This is also not reliably possible even for current subscribers and users.

6. **Conclusions:** It is my opinion that the determination of whether a telephone number was assigned to a mobile subscriber can be reliably accomplished during the date ranges relevant to this case. Further, it is my opinion that there is no commercially available means to reliably identify subscribers and users associated to mobile telephone numbers at any point whether it is currently or historically.

*[signature]*

Ken Sponsler

# Exhibit A

# Curriculum Vitae

Kenneth R. Sponsler, CIPP/US, PMP
CompliancePoint
4400 River Green Parkway, Suite 100
Duluth, GA 30096
(770) 255-1020
www.compliancepoint.com
ksponsler@compliancepoint.com

**Current Employment:**
　　Vice President and General Manager of CompliancePoint, DM INC, Duluth, GA, a subsidiary of PossibleNOW. CompliancePoint is a global professional services firm specializing in consumer contact compliance consulting and audit services.

**Education:** 120 hours of undergraduate study; 4.0 GPA (no degree conferred)
　　University of Maryland; City College of Chicago; Troy State University

**Registrations, Licenses, Certifications:**
　　Certified Information Privacy Professional (CIPP/US) by International Association of Privacy Professionals (IAPP).
　　Certified American Teleservices Association Self-Regulatory Organization Auditor (ATASRO).
　　Certified Project Management Professional (PMP) by the Project Management Institute.

**Specialized Training:**
　　U.S. Army Command Sergeant Major Course; First in Class
　　Advanced Non-Commissioned Officers' Course; Distinguished Graduate

**Professional Experience:**
　　Twelve years of general consultation practice concerning U.S. federal and state telemarketing operational compliance with a variety of national and global companies.  Provides regulatory and operational compliance consulting services for telemarketing, e-mail, mail, fax, SMS/text communications and debt collection matters.  CompliancePoint specializes in seller and telemarketer compliance, call center operations, compliance assessments, audits, and forensic call and call abandonment data analysis, with a focus on operational assessments, risk identification, gap analysis, and implementation of compliance policies, procedures and strategies.  Mr. Sponsler's consulting practice includes seller/service provider relations, contracting, recordkeeping, training, monitoring and enforcement. He has also provided consulting services to government and military organizations implementing U.S. Army modularity design and organizational changes.  A retired U.S. Army Command Sergeant Major, he concluded his career as the Senior

Enlisted Leader of the 3rd Infantry Division, leading a 23,400 man elite combat team.

**Publications and Webinars (including CompliancePoint products):**
    *Strategies For Compliance With New TCPA Requirements*, March 2012
    *Employment Placement Verification*, February 2012
    *2011 Compliance Legislation Review & 2012 Forecast*, January 2012
    *Proven Audit & Business Process Techniques For Compliance*, June 2011
    *Risk In Admissions & Financial Aid Practices*, October 2010
    *Get it in Writing: Changes to the FCC Express Consent Rules*, April 2012
    *What Impacts Will The TCPA Changes Have On Your Business?* Feb 2012
    *Periodic Regulatory Information Charts*
    *Monthly Regulatory Information Charts*

**Awards/Honors:**
    Technovation Award, awarded by American Teleservices Association, 2010.
    Hewlett Packard Vendor of the Quarter Award (to CompliancePoint), 2007.
    18 separate personal awards by the U.S. Army, including the Legion of Merit.

**Memberships:**
*American Teleservices Association* (now PACE)
    Federal Legislative Committee Member
    State legislative Committee Member
    "Do Not Call" Implementation Committee Member
    Compliance Officer's Forum Member
*Professional Association of Customer Engagement, Southeast Chapter*
    Member, Board of Directors
*International Association of Privacy Professionals*
    Consumer Marketing Working Group
*Direct Marketing Association*
    Teleservices Committee Member

**Presentations and Colloquies:**
Frequent speaker at industry events, including PACE Annual Convention; Direct Marketing Association Teleservices Conference; College of Information Assurance Professional's Governance; Risk and Compliance Summit; Noble User's Conference, Quarterly Compliance Focused Webinar Presentations