UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-cv-61390-WILLIAMS/SELTZER

CARLOS CABRERA, individually and on behalf of a
class of all others similarly situated,

    *Plaintiff*,

                    v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a Maryland corporation, and BELL,
LLC, a Florida corporation,

    *Defendants*.
_____/

**PLAINTIFF'S AMENDED REPLY AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................1

II. ARGUMENT ...................................................................................................................2

    A. **Plaintiff Cabrera Appropriately Modified the Proposed Class Definition** ...............2

    B. **Plaintiff Cabrera Has Standing to Bring the Claims at Issue** ......................................3

        1. **Cabrera has statutory standing** ................................................................3

        2. **Cabrera also has Article III standing** .....................................................4

    C. **The Class is Ascertainable and Otherwise Appropriate for Certification** ...................4

        1. **Defendants cannot demonstrate prior express consent** .................................4

        2. **Bell Can Determine if Individuals Called were Referred by GEICO** ............6

        3. **The Distinction Between Cellular and Residential Lines is Inconsequential** ...................................................................................................7

    D. **The Proposed Class Meets Rule 23's Requirements for Certification** .........................8

        1. **Rule 23's Numerosity Requirement is Satisfied** ...............................................8

        2. **Rule 23's Commonality Requirement is Satisfied.** ..............................................8

        3. **Rule 23's Predominance Requirement is Satisfied.** .............................................9

        4. **Rule 23's Superiority Requirement is Satisfied** .................................................9

    E. **GEICO May be held Vicariously Liable** ......................................................................10

III. CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**United States Circuit Court of Appeals Cases:**

*Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999)..................................................7

*Gager v. Dell Fin. Servs., LLC*, 2013 WL 4463305 (3d Cir. Aug. 22, 2013) .................................4

*Meyer v. Portfolio Recovery Assoc., LLC*, 2012 WL4840814 (9th Cir. Oct. 12, 2012)..........................5, 6

*Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) ..........................................................2

*Prieto v. Malgor*, 361 F.3d 1313 (11th Cir. 2004)......................................................................7

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)..............................................4

*Useden v. Acker,* 947 F.2d 1563 (11th Cir. 1991) ......................................................................8

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ................................................2, 3

**United States District Court Cases:**

*Agne v. Papa John's Intern, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ....................................6, 9

*Am. Copper & Brass, Inc. v. Lake City Indus. Products, Inc.,*
    2012 WL 3027953 (W.D. Mich. July 24, 2012)..............................................................10

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012)................................7

*Cellco P'ship v. Plaza Resorts Inc.*,  2013 WL 5436553 (S.D. Fla. Sept. 27, 2013)....................10

*Fini v. Dish Network L.L.C.*, 2013 WL 3815627 (M.D. Fla. Mar. 6, 2013)..................................8

*Hicks v. Client Servs., Inc.*, 2008 WL 5479111 (S.D. Fla., Dec. 11, 2008) ..................................8

*Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)............................4, 9

*Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013).........................................6, 10

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013)..................*passim*

*Martin v. Bureau of Collection Recovery*, 2011 WL 2311869 (N.D. Ill. June 13, 2011)................5

*Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457 (D. Md. 2012)..............................10

*Moore v. Fidelity Financial Services, Inc.*, 1998 WL 210941 (N.D. Ill. March 16, 1998) ............4

*Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. June 4, 2009)............6

*Phillips Randolph Enters., LLC v. Rice Fields,* 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)........10

*Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677 (S.D. Fla. 2008).........................................2

*Sadler v. Midland Credit Mgmt., Inc.,* 2009 WL 901479 (N.D. Ill. Mar. 31, 2009)......................3

*Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) .............................................. 10

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012) ...................... 9

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) .................................................. 6, 9

*Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013) .............................. 10

*Spillman v. Dominos Pizza*, *LLC*, 2011 WL 721498 (M.D. La. Feb. 22, 2011) ..................................... 3, 4, 9

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) ..................... 6

**State Court Cases:**

*Am. Home Serv., Inc. v. A Fast Sign Co., Inc.*, 287 Ga. App. 161, 651 S.E.2d 119 (2007) .......................... 9

**Rules and Statutory Provisions:**

Fed. R. Civ. P. 23 ........................................................................................................................... *passim*

Fed. R. Civ. P. 26 .............................................................................................................................. 7

Fed. R. Civ. P. 16 .............................................................................................................................. 8

Local Rule 7.1 ................................................................................................................................... 8

Telephone Consumer Protection Act, 47 U.S.C. § 227 ..................................................... *passim*

**Miscellaneous**

*In re Dish Network*, CG11-50, 28 F.C.C.R. 6574 (F.C.C. May 9, 2013) .................................................. 10

3

I.      **INTRODUCTION**

In opposition to Plaintiff Cabrera's motion for class certification (the "Motion"), Defendants GEICO and Bell raise two primary issues. First, they argue that because some proposed Class members may have received calls on their cell phones and others on their landlines, the Class is unascertainable as defined, individual inquiries into the type of phone used by each Class member will be necessary, and Cabrera lacks standing to represent those individuals who received calls on their landlines. Second, and again raising the specter of individual inquiries and a lack of ascertainability, Defendants argue that some Class members *may* have communicated with them at some point in time and *might* at those times have consented to receive the calls in question. Neither of those arguments poses barriers to certification.

With respect to the first issue, the distinction between automated calls made to cell phones and those made to landlines is irrelevant. The elements of the claims for each are ultimately the same, the evidence necessary to prove them is the same (i.e., evidence of Defendants' use of the LiveVox automated dialing platform and lack of records showing prior express consent), and the injuries suffered by Class members are the same (i.e., the annoyance that comes with receiving such calls and statutory damages). Hence, that Cabrera only received the calls on his cell phone doesn't make him unable to prove claims on behalf of Class members who received them on their landlines.

Secondly, that Defendants *may* have communicated with Class members at some point obviously bears nothing on the substance of those communications and certainly not on whether any of them actually gave their prior express consent to receive the robocalls at issue. Indeed, Defendants have failed to present *any* competent proof of such consent. And, in any event, it is well-settled that whether defendants can prove the defense of consent is a common issue to be resolved on a class-basis.

Defendants' other arguments don't fair any better. As in every class action, Cabrera was permitted to modify the proposed Class definition based upon information learned in discovery and the revised definition does not alter the claims against Defendants, nor render the original allegations of his Complaint superfluous. Likewise, GEICO's contention that it can't be held vicariously liable for Bell's conduct in placing the calls fails to recognize that the Federal Communications Commission ("FCC") and courts alike, have consistently held that the entities responsible for authorizing robocalls (like those at issue here) can be held liable under federal common law principles of agency. Regardless, whether GEICO can be held liable is quite obviously another question common to the Class as a whole. For all of these reasons and as explained further below, each of Defendants' arguments against class certification fail and the proposed Class should be certified.

## II. ARGUMENT

### A. Plaintiff Cabrera Appropriately Modified the Proposed Class Definition.

Defendants first accuse Cabrera of impermissibly altering the definition of the proposed Class. (Bell's Opp. at 1, 7; GEICO's Opp. at 7-8.) That's simply not the case. The Class definition now before the Court continues to include only those individuals who received unauthorized robocalls from Bell on behalf of GEICO. As it always has, Plaintiff's Complaint supports that definition by alleging that (i) GEICO engaged Bell to collect debts supposedly owed to it (*see, e.g.,* dkt. 1 ¶¶ 1-3, 15), (ii) GEICO provided Bell contact information for the Class members (and Bell collected some on its own) that it obtained via skip tracing and other means (*id.* ¶ 15), (iii) Bell utilized that information to place repeated calls to Class members featuring an artificial or prerecorded voice (*id.* ¶ 6), and (iv) Defendants did not obtain prior express consent from the Class to make the calls. (*Id.* ¶¶ 5, 15.)

As explained further *infra*, the only changes to the Class definition—identifying the software platform utilized to place the calls (LiveVox) and the removal of the distinction between cellular and landlines—don't change any of that. The first difference merely provides additional objective criteria by which Class membership may be determined, but it doesn't alter the claims asserted against Defendants in the least. The second alteration—the removal of the distinction between cellular and landlines—also doesn't change the claims against Defendants or the contours of the Class. Cabrera has always asserted claims on behalf of both cellular and landline users (*see* dkt. 1 ¶¶ 2, 5, 15), and given that there is no appreciable legal difference in the claims they may be appropriately combined in one Class.[1]

In any event, contrary to Defendants' assertions, the proponent of certification (or the court) has the ability to modify proposed class definitions at any point prior to certification— or even after (in the case of the courts modifying the definition). *See Pop's Pancakes, Inc. v. NUCO2, Inc.*, 251 F.R.D. 677, 680 n.1 (S.D. Fla. 2008). Indeed, "the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims." *Prado-Steiman ex. Rel Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000). Defendants' cited authorities on the issue don't reach a different conclusion. In particular, the decision in *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) does not, as they contend, stand for the proposition that amendments to class definitions outside of the pleadings are *per se* improper. Instead, the *Vega* court held that it was improper for a plaintiff to attempt to modify a class definition just months before trial and only after discovery had closed, all in an effort to seek certification stemming from factual matters that hadn't

---

[1] This lack of distinction is discussed further in section (II)(B)(1) *infra*.

2

even been identified in the pleadings, let alone considered in discovery. *Id*. at 1273, 1276. Unlike the plaintiff in *Vega*, however, Cabrera agreed to narrow the proposed Class definition months before certification deadlines (in late August) and the close of discovery (in October), and the new definition does not seek certification of any new or additional claims.

The differences between this case and *Vega* don't end there. In *Vega,* the proposed amendments also rested on a faulty interpretation of Florida contract law. *Id.* at 1273. Here, the legal bases of Cabrera's claims remain unchanged. In *Vega*, numerous affidavits were produced by the defendant from proposed class members that raised individual issues of breach, materiality and damages on the contract claims in question. *Id.* at 1274. Here, Defendants have presented no evidence to suggest that issues affecting only individual Class members exist—e.g., individual issues of consent. Moreover and unlike in *Vega*, the changes to the Class definition here are the direct result of information learned in discovery, which actually served to *narrow* the scope of the proposed Class, making ascertainability and manageability much easier. *See, e.g., Sadler v. Midland Credit Mgmt., Inc.,* 2009 WL 901479 (N.D. Ill. Mar. 31, 2009) Therefore, unlike in *Vega*, Cabrera's modifications to the Class definition are appropriate.

### B.   Plaintiff Cabrera Has Standing to Bring the Claims at Issue.

Next, Defendants incorrectly argue that because Cabrera received the robocalls on his cell phone, he lacks standing[2] to bring claims on behalf of individuals who received the same calls on their landlines.

#### 1.   Cabrera has statutory standing.

"Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013). Relevant here, the language of the TCPA's private right of action supports a broad approach to statutory standing. *See* 47 U.S.C. § 227(b)(3). The decision in *Spillman v. Dominos Pizza, LLC* is particularly on point. 2011 WL 721498 (M.D. La. Feb. 22, 2011). There, the plaintiff alleged that the defendants placed prerecorded calls to both cell phone and landline numbers without consent, but she only received calls on her cell phone. *Id.* at *3. In holding that she had standing to bring claims on behalf of both groups, the court reasoned that, "[t]he theory of liability [under the TCPA] is virtually the same…." *Id.*

Cabrera raises the very same theory of liability here. He alleges that Defendants engaged in the same pattern of conduct in making (or causing to be made) unsolicited phone calls to thousands of

---

[2]   While it appears that Defendants challenge Cabrera's statutory standing to bring claims under the TCPA, neither Defendant articulates whether they are also challenging his Article III standing. Regardless, Cabrera addresses both arguments here.

3

individuals on their cellular and landline telephones, resulting in common statutory damages that differ only with respect to the number of calls made to each Class member. As in *Spillman*, whether these calls were made to a cell phone or landline phone ultimately has no impact on, for instance, the elements of each Class members' claims,[3] their burdens of proof, or the injuries they suffered and the damages they are entitled to recover as a result. Thus, the Court should find that Cabrera has standing here.

### 2.   Cabrera also has Article III standing.

Cabrera also has Article III standing to pursue claims on behalf of landline users. "In the class action context, Article III requires that a named plaintiff 'establish a nexus between his individual claim and the claim of the putative class,' but…not require that the…injury be based on exactly the same fact pattern…." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (quoting *Moore v. Fidelity Fin. Serv., Inc.*, 1998 WL 210941, at *3 (N.D. Ill. March 16, 1998)). As a consumer protection statute, the TCPA confers on individuals "the right to be free from certain harassing and privacy-invading conduct," such that allegations that a defendant's conduct violates the act "is enough to confer upon him standing under Article III." *Manno,* 289 F.R.D. at 682; *Gager v. Dell Fin. Servs., LLC*, 2013 WL 4463305, at * 5 (3d Cir. Aug. 22, 2013); *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009). Thus, even though certain factual circumstances underlying class members' claims may differ, the focus in a TCPA class action remains on whether the named-plaintiff can establish the nexus between the defendants' conduct in making (or directing to be made) unauthorized phone calls and the injuries of the putative class (i.e., the statutory damages to which they're entitled as a result). *Id.*

Here, the plain allegations of Cabrera's Complaint do just that. He alleges that he and the Class were the recipients of unauthorized phone calls made by Bell on behalf of GEICO; the calls were made in violation of the TCPA because they featured an artificial or prerecorded voice and Defendants never obtained the Class's consent to make them; and, as a result, the Class is entitled to statutory damages. (*See* Dkt. 1 ¶¶ 19-24.) That the calls were made to cellular and landline phones does nothing to change that. *Manno,* 289 F.R.D. at 682. Thus, Cabrera has standing to represent the entire Class.

### C.   The Class is Ascertainable and Otherwise Appropriate for Certification.

### 1.   Defendants cannot demonstrate prior express consent.

---

[3]   Section (b)(1)(A)(iii) makes it unlawful "to make any call…using any automatic telephone dialing system or an artificial or prerecorded voice—(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." Section (b)(1)(B) is nearly identical and makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice…without the prior express consent of the called party…."

Next, Defendants argue that the Class is unascertainable because there is a *possibility* that they *may* have obtained consent from Class members, thus creating the need for individual inquiries into the existence (or lack thereof) of consent. The problem with that argument, however, is that Defendants don't actually offer evidence to support their contention, but instead, speculate that there may have been "circumstances in which [Class members] had a communication with a representative of Bell" and also that "Bell makes an effort to attempt to confirm that the number being called is the telephone number the called party agrees to be contacted at." (Bell's Opp. at 12.) Setting aside that the complete lack of evidentiary support alone is fatal to Defendants' position, that a Class member "might have communicated" with one of the Defendants speaks nothing to the substance of those communications and certainly not whether they specifically consented to receive robocalls. *See Martin v. Bureau of Collection Recovery*, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) (collecting authority holding that defendants, or their agents, must retain evidence of consent).

Likewise, Bell's offering of the so-called "Columbo List,"—a list of questions Bell's employees supposedly asked in order to obtain consent from call recipients—doesn't reveal whether prior express consent was ever actually obtained from any called party. As an initial matter, Bell offers no evidence to suggest that its employees actually asked the questions on the list[4] nor if they did, what the responses were.[5] That position is also directly contradicted by the testimony of Defendants' own representatives who, when asked if Bell obtained consent to dial any of the numbers it located via skip traces or from GEICO, testified unequivocally that "[n]o we do not[]" (Bouvier Dep. 96:4-12), and "[n]ot in every case, no," but were unable to identify a single instance where they did. (Bateman Dep. 22:17-23:18.)

*Meyer v. Portfolio Recovery Assoc.*, 707 F.3d 1036 (9th Cir.), is particularly instructive. There,

---

[4] In fact, Mr. Bouvier testified that Bell's monitoring of its employees' conduct during calls was not "a uniform-on-every-phone-call-type situation…." (Bouvier Dep. 109:9-10.)

[5] In its Opposition, Bell claimed to be filing a sample of subrogation files that supposedly demonstrate Class members consented to receive the calls in question. (Bell Opp. at 12, n.3.) Nevertheless, Bell didn't actually file the sample files, nor were they provided to Cabrera or his counsel until more than two weeks after the opposition was filed and after Plaintiff's original reply had been submitted to the Court. Given the untimeliness of those filings and the prejudice to Plaintiff having been unable to adequately consider them (save for the two days between their late filing and the submission of this amended reply, and only then, in redacted form), they must be stricken from the record and should not be considered by the Court. *See See Useden v. Acker*, 947 F.2d 1563, 1571-72 (11th Cir. 1991); Fed. R. Civ. P. 16(b)(4); Local Rule 7.1(c). But even if they are considered, the records don't support Defendants' position on this point. For example, in each of the fourteen files there are between nine and eighty-eight redacted note entries before the instance in which Bell purports to have obtained consent—the inference being that numerous unauthorized calls were placed prior to that "consent" being obtained. Moreover, the "consent" Bell claims was received does not demonstrate consent at all. Instead, the notes simply indicate the number called is a number the call recipient may be reached at, but not that they have specifically given their prior express consent to receive robocalls.

5

the defendant argued that prior express consent was an individualized issue because class members "might have agreed to be contacted at any telephone number…." *Id.* at *1042. The Court rejected that argument and upheld class certification because the defendant couldn't point to a "single instance" where that may have occurred. *Id.* The same is true here—Defendants theories about "circumstances," "communications" and "efforts" to obtain consent are purely speculative and insufficient to defeat class certification. *See Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("speculation that customers may have given their express consent…is not sufficient."); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) (same).[6]

Finally, it also bears noting that by arguing that they cannot determine which calls were made with or without consent, Defendants directly contradict their assertions that individualized inquiries into whether call recipients provided consent are necessary. Simply put, if there's no way to make such a determination, then there are no individual inquiries to be made either. Regardless, whether Defendants can demonstrate consent is a common question capable of resolution on a class basis. *See, e.g., Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970, at *8 (S.D. Fla. June 4, 2009); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013).

### 2. Bell Can Determine if Individuals Called were Referred by GEICO.

Bell next argues that the Class isn't ascertainable because it can't determine whether Defendant GEICO or some other unidentified GEICO entity referred the individuals it called.[7] Here, Bell mischaracterizes the testimony of its own representative, Mr. Bouvier (*see* Bell Opp. at 13), who did not testify that Bell is incapable of identifying where any particular referral came from, but instead, merely acknowledged the existence of several GEICO entities. (Bouvier Dep. 61:1-17.) And, although both Defendants discuss the existence of multiple entities bearing the GEICO name, neither has produced evidence that an entity other than Defendant GEICO made referrals to Bell.

Further undercutting Defendants' position, the record is clear that Bell actually maintains files on each purported debtor that include (i) from which of its business partners they were referred, (ii) the date

---

[6] Taking Defendants' arguments to their logical conclusion would also mean that TCPA claims could never proceed on a class basis because the courts could never be sure whether anyone had consented. Obviously, that's not the state of the law. *See Silbaugh v. Viking Magazine Serv.*, 278 F.R.D. 389, 394 (N.D. Ohio 2012); *see also Am. Home Serv., Inc. v. A Fast Sign Co., Inc.*, 287 Ga. App. 161, 163, 651 S.E.2d 119, 121 (2007).

[7] Notably, GEICO doesn't make the same argument. (*See* Bateman Dep. at 36:11-37:12, 42:2-18.)

6

each and every call was made, and (iii) by what means those calls were made.[8] (Dkt. 64-1 ¶ 6.) Bell also conveniently ignores that it maintains an online database that specifically identifies each of the GEICO referrals it received, which GEICO (to this day) remotely accesses to review the status of collections—including the number of calls and how they were placed. (Bateman Dep. at 36:11-37:12, 42:2-18.)

### 3. The Distinction Between Cellular and Residential Lines is Inconsequential.

Defendants' final argument against ascertainability—that it's supposedly impossible to determine whether the numbers called belong to cellular or landlines—fails too. Indeed, even if Cabrera were charged with differentiating between the two (he isn't), Defendants ignore available technology that can do just that. (*See* Bell's Opp. at 15.) For example, an expert could be retained to perform a so-called "cell phone scrub," which would distinguish between cellphone and landline telephone numbers (a method successfully employed by Defendants' referenced expert).[9] *See Manno*, 289 F.R.D. at 684. Additionally, online verification sites like Searchbug.com are capable of verifying whether a number is assigned to a cellular or landline account. And, reverse phone number lookup services—e.g., LexisNexis, the Caller Name Database, whitepages.com, searchbug.com—are regularly utilized to identify potential class members for the dissemination of notice and are capable of identifying the subscriber and type of account.

Bell's claim that it "did not know" whether the numbers it called were cellular or landlines is also irrelevant. The TCPA does not include a mental state requirement; the question is simply whether the dialing party made an unsolicited phone call to a cellular or residential phone line. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012). And finally, Defendants' argument that the Class cannot be ascertained because it is impossible to determine whether the "called party"—the person who picked up the phone—was the same person in whose name the number is registered is also

---

[8] In fact, Bell is required to do this in order to get paid. GEICO only pays Bell for those subrogation efforts on which it successfully collects (at a rate of 30-33% of the amount collected). (Bouvier Dep. 32:4- 33:16; Bateman Dep. 52:23-53:6). Thus, in order for Bell to receive payment, it would necessarily have to know the origin of the referral.

[9] Bell's submission of the "expert report" of Ken Sponsler on this point is procedurally improper and substantively unavailing. First, the report wasn't prepared for this case and doesn't speak to the records and technology here. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (expert evidence "must have a valid scientific connection to the disputed facts in the case."). The report is also procedurally defective inasmuch as it wasn't provided to Plaintiff in discovery, Sponsler wasn't identified as a retained expert, and Plaintiff wasn't given an opportunity to test his report. *See* Rule 26(a)(2)(B); *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004). As to substance, Defendants misconstrue and ignore Sponsler's demonstration that it is possible to easily distinguish between cellular and landline numbers (Dkt 76-2, 5), and further ignore his statement that there are methods, albeit not a 100% certainty, to determine subscriber identities through the Caller Name Database. (*Id.* at 4.) Moreover, Sponsler himself does not even address the fact that cellular phone carriers maintain current and historical records that may be subpoenaed for the purpose of determining class membership.

unavailing. The courts have consistently rejected that such a distinction need be drawn to state a claim, ascertain or certify a class under the TCPA. *See Fini v. Dish Network L.L.C.,* 2013 WL 3815627, *6 (M.D. Fla. Mar. 6, 2013); *Manno*, 289 F.R.D. at 682; *Page*, 917 F. Supp. 2d at 1217-18 (N.D. Ala. 2012).

### D. The Proposed Class Meets Rule 23's Requirements for Certification.

The bulk of Defendants' arguments related to Rule 23's requirements tend to mimic their arguments against ascertainability. For many of the same reasons, they lack merit.

#### 1. Rule 23(a)'s Numerosity Requirement is Satisfied.

First, Defendants argue that Rule 23(a)(1)'s numerosity requirement cannot be satisfied because they can't identify what calls were made on behalf of GEICO, or who the "called party" was (i.e., the telephone subscriber). Those arguments fair no better here for several reasons. Chief among them, the record clearly demonstrates that GEICO made over 3000 referrals to Bell.[10] (Bouvier Dep. at 58:15-59:1.) The record also shows that as the referrals were made, Bell utilized the LiveVox unattended dialing system to place robocalls to them. (*See id.* at 117:11-12; dkt. 66, ex. 5.) And, while Defendants argue that Mr. Bouvier's testimony suggests it's unclear how many calls and to how many Class members calls were made, it's nevertheless clear that a substantial amount of calls were made to a large number of proposed Class members using the LiveVox system—certainly more than 40 individuals total. (*See id.* at 119:20-121:18; *id.* at 121:3-18; Ex. 6 (annotations in sample call records reveal when and how often calls were placed)); *see also Hicks v. Client Servs., Inc.*, 2008 WL 5479111, at *4 (S.D. Fla., Dec. 11, 2008).

Similarly, although Defendants have been unwilling to say on the record the precise number of individuals they called, Bell's contention that class certification poses a serious threat of "annihilative damages" is another strong indication that the Class size goes well beyond the Eleventh Circuit's 21-person threshold. (Bell Opp. at 26.) In light of those arguments and Mr. Bouvier's admission that Bell is capable of identifying how many of the 3,000 files at issue came from Defendant GEICO, and how many calls were made on each file, (Bouvier Dep. at 149:24-10:12, 149:6-22), Defendants' unwillingness to say with any certainty the number of Class members at issue says a lot.

#### 2. Rule 23's Commonality Requirement is Satisfied.

Defendants parrot nearly the same arguments against commonality. In TCPA cases, commonality is satisfied where all class members received the same calls, made by (or on behalf of) the same

---

[10] Rule 23's numerosity requirement is a "generally low hurdle" and exact numbers are unnecessary at this stage—"[t]he general rule of thumb in the Eleventh Circuit is that less than twenty-one is inadequate, [and] more than forty adequate…." *Manno*, 289 F.R.D. at 684 (S.D. Fla. 2013).

8

defendants, using the same technology. *Agne*, 286 F.R.D. at 567. That's exactly what happened here. Each Class member received a call featuring the same prerecorded message (*see* dkt 66, ex. 5, at 13), made by and on behalf of Defendants, using the same technology (the LiveVox unattended dialing platform), (Bouvier Dep. at 119:10-18), and suffered the same injury (invasion of privacy and statutory damages). Defendants' arguments don't change that. As discussed more fully above, given that Defendants violated the TCPA when they placed (or caused to be placed) prerecorded calls to the Class, the standardized conduct is common. *See Spillman,* 2011 WL 721498, at *3. Defendants have also failed to present proof of proposed Class members giving express consent to receive calls; in any event, whether they can prove that defense is a common issue. *Agne,* 286 F.R.D. at 567. *Manno*, 289 F.R.D. at 686.

### 3. Rule 23's Predominance Requirement is Satisfied.

Rule 23(b)(3)'s predominance requirement is also satisfied. Relevant here, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins…with the elements of the underlying cause of action[,]" and thus, TCPA claims are particularly well-suited for certification. *See Manno*, 289 F.R.D. at 689. That's because the underlying elements of each Class members' TCPA claims against Defendants are the same—they must all show that (1) Defendants called their phones; (2) without prior express consent; (3) using an artificial or prerecorded voice. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B). The claims are also subject to the same generalized proof. *See Silbaugh,* 278 F.R.D. at 393 (predominance met where plaintiff alleged text message campaign was "conducted in the same manner with respect to all of the class members"); *see also Hinman*, 545 F. Supp. 2d at 807.

Defendants counter with the same argument that individual consent issues will predominate. Again, setting aside Defendants' speculative assertions and lack of evidence, courts have consistently found that even in cases where some evidence of consent has been proffered, the overall issues to be considered on a TCPA claim predominate. For example, in *Agne v. Papa John's Intern., Inc.*, the court held that the predominance requirement was met because, as in this case, the defendant was ultimately "in the best position to come forward with evidence of individual consent and will not be precluded from presenting admissible evidence of individual consent if and when individual class members are permitted to present claims…." *Agne*, 286 F.R.D. at 570; *see also Siding & Insulation Co. v. Beachwood Hair Clinic, Inc*., 279 F.R.D. 442, 446 (N.D. Ohio 2012).

### 4. Rule 23's Superiority Requirement is Satisfied.

Finally, Defendants argue that this class action is not the superior method to resolve the Class's claims because their potential liability under the TCPA, and the amount of the potential statutory damage

award relative to the harm suffered, violates their due process rights. These arguments miss their mark. Just like the defendants in *Manno*—who raised the same concerns regarding their potential liability— "Defendants have not identified a single case under the TCPA where a federal court denied certification because the prospect of an unconstitutional damage award loomed large." 289 F.R.D. at 691. Simply because Defendants may face potentially more liability in a class action, "it does not follow that any damages awarded would be disproportionate." *Id.*; *see also Phillips Randolph Enters., LLC v. Rice Fields*, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("[T]he Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable.").[11]

### E. GEICO May be Held Vicariously Liable.

GEICO's remaining argument—that it cannot be liable for the calls at issue under a theory of vicarious liability—ignores both controlling agency regulations and relevant case authorities. On May 9, 2013, the FCC, which is charged with enacting the TCPA's implementing regulations, issued a declaratory ruling regarding the standards of liability applicable to 47 U.S.C. § 227(b). *See In re Dish Network*, CG11-50, 28 F.C.C.R. 6574, ¶ 27 (F.C.C. May 9, 2013). Specifically, the FCC ruled that a party may be held liable under the TCPA under a "broad range" of agency principles. *See id.*; *see also Lee*, 2013 WL 3828814, at *1. Further, a showing of traditional agency principles (e.g., the principal's right to control the agent) was too narrow in the TCPA context. *See, e.g., Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 4734004 (N.D. Ill. Sept. 3, 2013) (citing 28 F.C.C.R. at 6587.) The FCC explained that the best approach is to attach liability to any party who uses an agent to place offending calls, thus giving "appropriate incentives to ensure that telemarketers comply with our rules." 28 F.C.C.R. at 6588. Several courts have applied these principles and found vicarious liability for calls made by co-defendants. *Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430 (N.D. Ill. Sept. 23, 2013); *Lee*, 289 F.R.D. at 294; *Cellco P'ship v. Plaza Resorts Inc.*, 2013 WL 5436553, at *6 (S.D. Fla. Sept. 27, 2013).

Regardless, whether GEICO can be held liable under a theory of vicarious liability will not turn on individualized issues (as Defendants suggest), but will be resolved with respect to the Class as a whole. *See Lee*, 289 F.R.D. at 294; *see also Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 2012 WL 3027953, at *3 (W.D. Mich. July 24, 2012) (finding that "common legal questions regarding Defendants' liability under the TCPA" establishes commonality).

---

[11] Additionally, Bell's argument that the Class would receive nothing even if successful at trial because a judgment would render it insolvent, ignores the fact that both Defendants will be held jointly and severally liable. *Maryland v. Universal Elections, Inc.*, 862 F. Supp. 2d 457, 463 (D. Md. 2012) aff'd, 2013 WL 3871006 (4th Cir. July 29, 2013).

## V. CONCLUSION

For the foregoing reasons, Plaintiff Carlos Cabrera respectfully requests that this Court enter an Order (i) certifying the proposed Class under Rules 23(a), (b)(2) and (b)(3), (ii) appointing him as Class Representative, (iii) appoint his counsel as Class Counsel, and (iv) providing such other and further relief as the Court deems reasonable and just.

                                      Respectfully submitted,

                                      **CARLOS CABRERA**, individually and on behalf of all others similarly situated,

Dated: October 25, 2013                      By: /s/ Scott D. Owens
                                                       One of Plaintiff's Attorneys

Jay Edelson
Rafey S. Balabanian
Christopher L. Dore
Benjamin H. Richman
EDELSON LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
cdore@edelson.com
brichman@edelson.com

Scott D. Owens (Fla. Bar No. 0597651)
LAW OFFICE OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Boulevard
Hallandale, Florida 33009
Scott@ScottDOwens.com

Bret Leon Lusskin , Jr.
BRET LUSSKIN, P.A.
1001 N. Federal Hwy, Ste. 106
Hallandale Beach, FL 33009
Tel:  954-454-5841
Fax: 954-454-5844

## **CERTIFICATE OF SERVICE**

     I, Scott D. Owens, an attorney, hereby certify that on October 25, 2013, I served the above and foregoing ***Plaintiff's Combined Reply and Memorandum of Law in Support of Class Certification***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 25th day of October 2013.

                                                 /s/ Scott D. Owens