UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-61390-CIV-WILLIAMS/SELTZER

CARLOS CABRERA,

     Plaintiff,

vs.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a Maryland corporation, and
BELL, LLC,  a Florida limited liability company,

     Defendants.

_____/

## ORDER ON MOTION TO COMPEL

THIS CAUSE is before the Court on Plaintiff's Motion to Compel Defendant Bell,

LLC to Produce Further Discovery and to Continue Expert Disclosure Deadlines (DE 42)

and  was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and

the Magistrate Rules of the Local Rules of the United States District Court for the Southern

District of Florida.   The matter having been fully briefed and the Court being sufficiently

advised, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part

as set forth below.

## BACKGROUND

Plaintiff Carlos Cabrera (individually and on behalf of all others situated) has filed

a Class Action Complaint and Jury Demand (DE 1), alleging that Defendants Government

Employees Insurance Company ("GEICO") and Bell, LLC ("Bell") violated the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., by making unauthorized live

telephone calls and robocalls to Plaintiff and others.  More specifically, Plaintiff contends that after GEICO pays claims to its customers pursuant to automobile insurance policies, it attempts to recoup the amounts paid from other drivers involved in the accident in subrogation.  According to Plaintiff, when GEICO is unable to collect the funds, it contracts with collection agencies, including Defendant Bell, to contact the purported debtors in an attempt to recoup the funds.  Bell, in turn, allegedly makes repeated unauthorized, unsolicited live and pre-recorded telephone calls to the third-parties, informing them that they owe subrogation payments to GEICO.  Plaintiff alleges that the call recipients have not provided their telephone numbers to Defendants[1] and that they have never consented to being called by Defendants.  According to Plaintiff, Defendants have placed "tens of thousands" of such calls.

The named plaintiff (Cabrera) has alleged that he was involved in an automobile accident in May 2010.  Seven months later, he began receiving repeated telephone calls, from a live operator and by robocalls, to collect an alleged subrogation payment.  Over the following 18 months, he allegedly received at least 20 unauthorized calls[2] on his cellular telephone from Defendants.

Plaintiff seeks to maintain this action as a class action.  The Complaint defines four subclasses – a GEICO Cellular Telephone Class, a GEICO Robocall Class, a Bell Cellular

---

[1]  Plaintiff alleges that Defendants obtain the telephone numbers through various means, including from police reports from the auto accident underlying the insurance claims, from the call recipient's insurance carrier, or through a process known as "skip tracing."

[2]  In a subsequent filing, Plaintiff's counsel indicates that by June 2012 Plaintiff had received from Defendants unauthorized telephone calls "numbering in the hundreds." Richman Decl. ¶ 8 (DE 64-1).

Telephone Class, and a Bell Robocall Class.  See Complaint § 25 (DE 1) (describing each of these sub-classes).  Plaintiff has filed a Motion for Class Certification (DE  66), which Motion is pending.  In that motion, however, Plaintiff seeks to certify only one class, defined as follows:

> All persons in the United States to whom (1) a telephone call was placed through LiveVox that featured an artificial or prerecorded voice; (2) to a phone number provided to LiveVox by Bell LLC; (3) whose contact information was provided to Bell LLC by GEICO; and (4) who never provided Bell LLC, GEICO, or any third party acting on their behalf, prior express consent to place telephone calls to the phone number called.

Motion for Class Certification at 7 (DE 66).

Defendant GEICO has filed a Motion for Summary Judgment (DE 96), arguing, *inter alia*, that it did not make any telephone calls to Plaintiff using an automatic telephone dialing system or artificial or pre-recorded voice; rather, the calls were made by LiveVox, a separate entity that is not a party to this action.  According to GEICO, Defendant Bell retained LiveVox and GEICO had no direction or control over the manner in which Bell conducted its collection activities.  GEICO further argues that there exists no "on behalf of" or vicarious liability under the TCPA.   Defendant Bell has also filed a motion to dismiss and motion for summary judgment (DE 108) raising, *inter alia*, similar arguments. Those motions remain pending before the District Judge.

During the course of the litigation, Plaintiff served on Defendant Bell a First Set of Requests to Admit (DE 52-1), a First Set of Interrogatories (DE 53-1), and  a  First Set of Requests for the Production of Documents (DE 54-1), and Defendant Bell responded thereto (DE 52-2, 53-2, 54-2, respectively).  Plaintiff moves the Court to compel Defendant

Bell to Produce Further Discovery (DE 42).[3]   More specifically, Plaintiff moves to compel Defendant Bell to produce documents responsive to 48 Requests for Production (Request for Production Nos. 3-16, 19-27, and 29-56), to provide better answers to 8 Interrogatories (Interrogatory Nos. 4-9, 11, and 13), and to provide better responses to 36 Requests for Admissions (Request for Admissions Nos. 1-8, 11, 12, 14, 15, 18, 20, 23, 25, 26, 30, 36, 43, 44, 45, 49-52, 57-64, 68, and 69).   Defendant Bell has responded to the Motion (DE 58), and Plaintiff has replied thereto (DE 64).   The Motion is now ripe for decision.

<u>TIMELINESS OF MOTION</u>

        In opposition, Defendant Bell first argues that Plaintiff's Motion to Compel should be denied because it is untimely.  Local Rule 26.1(h)(1) provides that "[a]ll motions related to discovery . . . shall be filed within thirty (30) days of the occurrence of grounds for the motion.  Failure to file such a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought."  S.D. Fla. L. R. 26.1(h)(1).  "This Rule was designed to prompt early resolution of discovery disputes and 'to ensure that discovery motions are filed when ripe and not held until shortly before the close [of] discovery or the eve of trial.'"  <u>Poe v. Carnival Corp.</u>, No. 06-20139-Civ-JORDAN-TORRES, 2007 U.S. Dist. LEXIS 4627, at *5 (S.D. Fla. Jan 23, 2007) (Torres, M.J.) (quoting 1998 Comments, S.D. Fla. L.R. 26.1); <u>see also</u> <u>Muzaffar v. Ross Dress for Less, Inc.</u>, No. 12-61996-CIV-SCOLA, 2013 WL 5311233, at *1 (S.D. Fla. Sept. 23, 2013)

---

        [3]  Plaintiff has also moved the Court to continue the expert disclosure deadlines. The undersigned hereby DENIES without prejudice that portion of the Motion, as the District Judge set the expert disclosure deadlines. The parties' joint motion to continue all pretrial deadlines, including the expert disclosure deadlines, is currently pending before the District Judge.

(Snow, M.J) ("Local Rule 26.1(h)(1) reflects a policy of promoting the prompt resolution of discovery disputes by requiring the parties to timely bring to the court's attention matters that the parties cannot resolve among themselves.") (omitting internal quotation marks and citation); Manno v. Healthcare Revenue Recovery Group, LLC, No. 11-61357-CIV, 2012 WL 1409532, at *3 (S.D. Fla. Apr. 23, 2012) (Rosenbaum, M.J.) (Local Rule 26.1(h)(1) "sets forth a specific period within which discovery motions must be filed. Defining that period as 'thirty days' rather than . . . the less precise 'a reasonable time' reflects the judgment of the District that the filing period should not extend beyond thirty days. Thus, the Rule has the benefit of making clear precisely when discovery motions must be filed.").

"Although the 'occurrence of grounds for the motion' is usually the filing of responses and objections to a discovery request, the fact that [Local Rule 26.1.H.1] employs general language indicates that this is not always the case." Socas v. Northwestern Mut. Life Ins. Co., No. 07-20336-Civ, 2008 WL 619322, at *1 (S.D. Fla. Mar. 4, 2008) (Simonton, M.J.) (finding that the date movant examined opposing party's discovery responses, which occurred nine days after receiving them, and determined responses were incomplete was the "occurrence of grounds for the motion"). As one court in this District has explained:

> Depending on the particular discovery dispute, the "occurrence of grounds" for a motion to compel could be any of several acts besides service of discovery responses – e.g., a letter from counsel, an e-mail message, a phone call, or discussions during a deposition. Regardless of the specific triggering event, the key point is that once a party seeking discovery learns that the opposing party objects to providing the requested discovery the first party must seek relief from the court within thirty days or else be deemed to have waived such relief.

Manno, 2012 WL 1409532, at *2.

Here, Plaintiff served his discovery requests on Defendant Bell on January 4, 2013; Bell's responses thereto were due on or about February 4, 2013.  At Bell's request, Plaintiff agreed to extended Bell's time for responding to March 11, 2013; Plaintiff, however, did not receive any response from Bell by that date.  Plaintiff's counsel, Benjamin H. Richman, Esq., has submitted a declaration setting forth the events that ensued.  Richman Decl. (DE 42-1).

According to attorney Richman, on March 12, 2013, another of Plaintiff's attorneys, Christopher L. Dore, Esq., contacted (by telephone and emails) Defendant Bell's attorney, David Hartnett, Esq.  Attorney Dore was informed that Defendant Bell's responses had been mailed the previous week-end, but apparently not received by Plaintiff.  Defendant Bell's attorney then attempted to email the discovery responses, but mistakenly sent Plaintiff's discovery requests instead of Bell's responses thereto.  Plaintiff's attorney informed Defendant Bell's attorney of the mistake and requested that Bell's responses be sent; Bell's attorney did not respond.  Id. ¶¶ 5-6.  On March 15, 2013, Plaintiff's attorney (Richman) left a voicemail for Defendant Bell's attorney (Hartnett) and also spoke directly to another of Bell's attorneys, Barbara Fernandez, Esq., inquiring about the status of Bell's discovery responses; Richman was informed by Bell's attorney that she would look into the matter.  On March 18, 2013,  Defendant Bell's attorney (Hartnett) acknowledged the mistake in sending the discovery responses and explained that he had been ill, which had delayed the responses by one day.  Later that same day, Bell's attorney (Hartnett) forwarded Bell's discovery responses to Plaintiff's counsel by email.  Id.   ¶¶ 7-8.

On April 15, 2013, Defendant Bell produced 79 pages of documents, consisting of

6

a single insurance policy, a police report, and a recording of a telephone call.  The next day, Plaintiff's attorney requested that Bell's attorney (Hartnett) confirm that Bell had completed its document production; attorney Hartnett did not respond.  A couple of weeks later, on May 1, 2013, Defendant Bell's attorney (Hartnett) emailed Plaintiff's attorney regarding a proposed protective order for confidential information.  According to Plaintiff's attorney (Richman), albeit disputed by Defendant's counsel, he understood that additional documents responsive to Plaintiff's discovery requests would be forthcoming after entry of the protective order.  Despite the Court's entering the parties' proposed protective order on May 16, 2013, Defendant Bell did not produce any additional documents.  Id. ¶¶ 9-10.

On June 14, 2013, Plaintiff's attorney (Richman) served a "meet and confer" letter on Defendant's attorneys (Hartnett and Fernandez), outlining Plaintiff's perceived deficiencies in Defendant Bell's discovery responses and document production and requesting that the parties confer immediately as to these deficiencies.  And on June 17, 2013, Plaintiff's attorney (Richman), by email, again requested that the parties confer on the outstanding discovery issues.  Following several emails between the parties' respective attorneys, on June 18, 2013, Plaintiff's attorneys (Richman and Dore) and Defendant's attorneys (Hartnett and Fernandez) conferred telephonically.  During that conversation, Defendant's attorney (Hartnett) indicated that he had not yet discussed with his client the alleged deficiencies, but was not inclined to provide much of the requested discovery.  According to Plaintiff's attorney (Richman), however, Defendant's attorney (Hartnett) nevertheless stated that he "would look into" providing certain additional information.[4]  Id.

---

[4]  In his declaration, attorney Richman specifically identifies attorney Hartnett's representations as to this information.  Id. ¶ 13.

7

¶¶ 11-13.

Plaintiff contends that its motion to compel was timely filed because "each time the Parties engage[d] in additional discussions related to the outstanding requests and potential additional production, the time for Plaintiff to move to compel was reset and a new basis for a motion was born."  Reply at 3 (DE 64) (citing <u>Manno</u>, 2012 WL 1409532, at *1 n.1) ("the record reflects no intervening communications between the parties – for example, negotiations regarding further discovery responses by HRRG – that might have provided a separate 'occurrence of grounds' for Plaintiff's Motion to Compel and thereby extended the deadline for its filing").  According to Plaintiff, beginning on April 16, 2013, "the parties embarked on a series of meet and confers through telephone conferences, e-mails and other written correspondence regarding their respective views of the outstanding requests and Bell's objections thereto, as well as Bell's willingness to produce additional responsive information."  Reply at 2 (DE 64).  Between April 2013 and July 13, 2013, "the parties had no fewer that four conversations regarding the outstanding discovery . . ., [n]ot to mention the many e-mails and other written correspondence they exchanged regarding the same."  <u>Id.</u> at n.1.  Plaintiff represents that in all these discussions, Defendant Bell indicated that "it would review its internal investigation, objections and the documents it had produced to determine whether it was withholding any additional responsive information."  <u>Id.</u> at 2.  On July 25, 2013, Bell did, in fact, produce additional documents "related to the unauthorized telephone calls it made to Plaintiff, including (I) internal records of the calls, and (ii) referral sheets and communications it received from GEICO with respect to Cabrera."  <u>Id.</u> at 3.

Defendant Bell counters that "no actions were taken by Plaintiff to address any of Defendant's objections for more than two months until counsel for the parties first had a

8

telephone conference on the subject discovery issues in mid-June, which was couched in discussions to extend the pleading amendment cutoff and the class certification deadline." Corrected Response at 4 (DE 58).  According to Defendant, all its "counsel ever agreed to do was to revisit the issue of whether there would be a production of any file related to the subrogation file Bell handled related to the telephone number Plaintiff alleges was his"; he never agreed to produce class files. Id. at 5.

Plaintiff was less than diligent in filing its motion to compel.  Plaintiff acknowledges that he received (by email) Defendant Bell's written discovery responses and objections on March 18, 2013; 30 days thereafter would have been April 17, 2013.  Yet, Plaintiff waited until April 16, 2013 – one day before the date for filing a motion to compel – before attempting unsuccessfully to contact Defendant's attorney to confirm that its document production was complete.   Even though Defendant's attorney did not respond to that (attempted) communication, Plaintiff did not file its motion.  From a May 1, 2013 email, Plaintiff's attorney believed that Defendant would produce additional documents after the parties agreed to a protective order as to confidential information.  Although Defendant still failed to produce any documents after the Court's May 16, 2013 entry of the protective order, Plaintiff's attorney waited nearly another month (until June 14, 2013) to serve on Defendant a "meet and confer" letter, outlining the perceived deficiencies in its discovery responses that it had received three months earlier.  After the parties' attorney's conferred on June 18, 2013, Plaintiff waited more than another month to file the instant motion to compel.

Yet, "even if the time to file a motion to compel discovery is untimely under the [Local Rule 26.1(h)(1)], a court may excuse the untimeliness upon a showing of

9

'reasonable cause.'" <u>Socas</u>, 2008 WL 619322, at *1.  The Court will give Plaintiff the benefit of the doubt and find that he believed from the communications between respective counsel that additional discovery would be forthcoming, given the absence of prejudice to  Defendant from the untimely filing and the preference for deciding motions on their merits.  <u>See Long v. Anderson Univ.</u>, 204 F.R.D. 129, 133 (S.D. Ind. 2001) (deciding motion to compel discovery on merits notwithstanding violations of local rules; "when a motion involves important issues which may affect the outcome of [a] case, like [a] motion to compel, the dispute is better decided on the merits than on procedural grounds.") (quoting <u>Fisher v. Nat'l R.R. Passenger Corp.</u>, 152 F.R.D. 145, 149 (S.D. Ind. 1993)). Accordingly, the Court concludes that Plaintiff has shown "reasonable cause" for the late filing of the instant motion to compel.  The Court, therefore, declines to deny the motion on timeliness grounds.

<u>DEFENDANT BELL'S OBJECTIONS TO THE DISCOVERY REQUESTS</u>

Defendant has asserted identical objections to many of the individual Requests for Production, Interrogatories, and Requests for Admissions.  The Court, therefore, will consider these objections together.

A.    <u>Work Product Privilege</u>.  Defendant Bell has objected to virtually all the discovery requests on what amounts to a blanket assertion of work product "immunity" or "privilege."  Claims of work product protection are governed by Federal Rule of Civil Procedure 26(b)(3), which provides in pertinent part:  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by another party or its representative (including the other party's attorney, consultant, surety,

indemnitor, insurer, or agent)."[5]   Fed. R. Civ. P. 26(b)(3)(A).   Work product protection "only pertain[s] to documents generated based on the anticipated probability that litigation will follow at the time the documents were drafted. Materials that were drafted in  the ordinary course of business are not protected." Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of Am., No. 06-21817-CIV-LENARD/TORRES, 2007 WL 1059561, at *2 (S.D. Fla. Apr. 4, 2007) (Torres, M.J.) (internal citation omitted).   "[I]n determining whether a document was made in anticipation of litigation, the primary focus is the reason or purpose for creating the document." Id. (quoting Guidry v. Jen Marine LLC, No. Civ. A. 03-0018, 2003 WL 2203877, at *2 (E.D. La. Aug. 22, 2003)).

"[T]he burden is always on the party withholding discovery to show the documents should be afforded immunity." Place St. Michel, 2007 WL 1059561, at *3. "[T]he mere conclusory assertion that material sought is covered by [the]. . . work product privilege is not sufficient to render such material undiscoverable. . . . Rather, the onus is one the party claiming immunity to provide competent evidence that the materials in question were created in anticipation of litigation." Id. (internal citation omitted) (citing Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 201 (M.D. Fla. 1990)) (finding insufficient plaintiff's argument that "very nature" of documents precluded discovery). "Because all insurance investigations are likely performed with an eye towards the prospect of future litigation, it is particularly important that the party opposing production of the documents, on whom the

---

[5]  Such documents and tangible things may be discovered if they come within the scope of Federal Rule 26(b)(1) and the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i) and (ii).  Plaintiff here has made no such showing.

burden of proof as to the privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." QBE Ins. Corp. v Interstate Fire & Safety Equip., Inc. No. 3:07cv1883 (SRU), 2011 WL 692982, at *3 (D. Conn. Feb. 18, 2011).  "Any doubts, ambiguities, uncertainties, or silences as to the scope of the work product Rule should be resolved in favor of the Rules' overall policy of liberal discovery." Pacific Gas and Elec. Co. v. U.S., 69 Fed. Cl. 784, 790 (Fed. Cl. 2006) (internal citations and quotation marks omitted).

According to Defendant Bell, "the matters pursued by [it] were third-party subrogation claims, seeking payment from Plaintiff and the purported unidentified class members as the tortfeasor or obligor."  Response at 15 (DE 58).  Bell's managing director, Joel Bouvier, states that his and "Bell's understanding . . . is that these matters were referred to Bell by the GEICO claims office . . . on 'secondary placement basis' for collection as a last resort before filing a subrogation action."   Bouvier Decl. ¶ 3 (DE 55-1).  Defendant, therefore, argues that "litigation surrounding Plaintiff and the purported unidentified class member's [sic] was imminent from the moment the matters were assigned to Bell."  Although not expressly stated, Defendant Bell appears to suggest that all documents generated by or on behalf of an insurance company relating to third-party claims are *per se* protected by the work product doctrine.   In support, Defendant relies on the rationale articulated by a district court in the Eastern District of Michigan:

> [W]hen a liability insurance insurer investigates a third party claim, the investigation is made in anticipation of claims, which, if denied, likely will lead to litigation.  For this reason, it is logical to conclude that, while files generated in relation to first party claims are made in the ordinary course of business and are discoverable, files generated during the investigation of third party claims are made in anticipation of litigation and are

12

not discoverable.

Taylor v. Temple & Cutler, 192 F.R.D. 552, 558 (E.D. Mich. 1999) (internal citation omitted) (quoting Weitzman v. Blazing Pedals, 151 F.R.D. 125, 125 (D. Colo. 1993)).

One court in this District, however, has rejected the argument that third-party claims are presumed to be "litigation-generating."  Place St. Michel, 2007 WL 1059561, at *3. Although acknowledging the existence of some support for a broad application of the work product protection in the insurance context, the Place St. Michel Court characterized the approach to third-party claims (as advanced by Defendant here) as "unnecessarily simplistic and stretches the work product doctrine beyond what it was originally intended to be."  Id.  "Indeed, the reliance on a 'third party claim' presumption appears to be the minority view in the federal courts."  Id.  As noted in Place St. Michael, this wholesale approach has never been adopted by either the Eleventh Circuit or any court in this Circuit. Rather, "the majority view appears to be that a more fact-specific analysis is required."  Id. (citing S.D. Warren Co. v. Eastern Elec. Corp., 201 F.R.D. 280, 283 (D. Me. 2001)) (adopting majority rule that insurance companies are not accorded special treatment by the work product doctrine and a fact specific approach must be applied); see also CC-Aventura, Inc. v. Weitz Co., No. 06-21598, 2008 WL 3286954, at *1 (S.D. Fla. Aug. 7, 2008) (O'Sullivan, M.J.) ("Although the Eleventh Circuit has not adopted a particular approach to work product issues in the insurance context, it appears the majority of courts have applied a fact-specific analysis.").  Factors to be considered in a fact-specific analysis include "who prepared the documents, the nature of the documents, and the time the documents were prepared," as well as "the nature of the litigation, the relationship between the parties, and any other fact peculiar to a given case."  Id. at 4.  Additionally, "another

13

factor that may make a material difference is the involvement of counsel in the process, either on behalf of the claimant or the insurance company."  Id.

Here, Defendant Bell has not provided the Court with  information sufficient for it to make a fact-specific analysis.  Defendant's general manager provided a summary statement that Bell understood that GEICO had referred matters to it for collection as a "last resort " before filing a subrogation action.  This statement, however, falls far short of satisfying Bell's burden to establish that all of its documents relating to the referrals and collection activities are protected from disclosure by the work product doctrine.  Accordingly, the Court overrules Defendant's blanket assertion of work product protection.

    B.    <u>Class Based Discovery</u>

        1.    <u>Pre-certification discovery</u>

Defendant Bell objects to Plaintiff taking most class-based (merits) discovery before the District Court has certified a class.   It contends that "it is common for courts to allow classwide discovery on the certification issue and postpone classwide discovery on the merits until after ruling on the class certification motion."  Corrected Response at 12 (DE 58) (citing <u>Washington v. Brown & Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1571 (11th Cir. 1992); <u>see also</u> <u>Physicians Healthsource, Inc. v. Anda, Inc.</u>, No. 12-60798-CIV, 2012 WL 7856269 (S.D. Fla. Nov. 27, 2012) (Rosenbaum, D.J.); <u>Del Campo v. Kennedy</u>, 236 F.R.D. 454, 459 (N.D. Cal. 2006) ("Prior to certification of a class action, discovery is generally limited and in the discretion of the court.").  Although Defendant is correct that courts may elect to bifurcate class-certification discovery and merits discovery, courts may also decline to exercise that discretion.  <u>See, e.g.</u>, <u>Lakeland Reg'l Med. Ctr. v. Astellas US, LLC</u>, No. 8:10-cv-2008-T-33TGW, 2011 WL 486123, at *2 (M.D. Fla. 2011) ("The Court is

not persuaded that phased discovery will conserve the resources of the parties or the Court.  This is because the line between 'class issues' and 'merits issues' is practically difficult, if not impossible, to determine."); Hines v. Overstock, Com, Inc., No. 09-CV-991, 2010 WL 2775921, at *1 (E.D.N.Y. 2010) ("[C]ourts in this and other circuits have recognized that where discovery relating to class issues overlaps substantially merits discovery, bifurcation will result in duplication of efforts and needless line-drawing disputes.").  Here, the District Court has chosen not to bifurcate class-certification discovery and merits discovery; instead, it has set one deadline for completion of all discovery.  The undersigned, therefore, will not limit class-based discovery nor delay merits discovery until the District Court has ruled on Plaintiff's class certification motion.

2.  Ascertainability of Class

In response to virtually all Plaintiff's discovery requests seeking documents or information relating to the proposed class or Class Members, Defendant Bell objected that the requests are vague and ambiguous because it cannot determine the individuals who comprise the four subclasses identified in the Complaint – the GEICO Cellular Telephone Class, the GEICO Robocall Class, the Bell Cellular Telephone Class, and the Bell Robocall Class.  Defendant contends that these groups are unascertainable without individual inquiries.[6]  As noted above, however, Plaintiff has narrowed the class that it now seeks to

---

[6]  In response to Plaintiff's discovery requests, Defendant Bell objected to certain definitions Plaintiff included therewith. In its response to the instant motion to compel, Bell requests that the court consider these objections because "they lead to the inescapable conclusion that Plaintiff has sought discovery of unascertainable and ill-defined groups." Corrected Response at 6 (DE 58).  The Court has considered Defendant's objections and finds them to be without merit.

certify.[7]   Whether that class is sufficiently identified so that the class members are ascertainable is ultimately a question for the district court when it considers whether to certify a class.  See Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) ("Before a district court may grant a motion for class certification, a plaintiff must establish that the proposed class is adequately defined and clearly ascertainable.") (internal quotation marks and citation omitted).  At the discovery stage, however, the undersigned finds that the modified class Plaintiff now seeks to certify is sufficiently identifiable to permit Defendant Bell to respond to Plaintiff's discovery requests.  An individual is a member of the proposed class if that individual received a telephone call placed through LiveVox with an artificial or prerecorded voice, where GEICO had provided Bell with the contact information and Bell, in turn, had provided LiveVox with the individual's telephone number, but only to the extent that the individual had not provided GEICO, Bell, or any third-party prior express consent to place the telephone call.

C.   Trade Secrets

Defendant Bell has objected to certain discovery requests on the ground that they seek proprietary information or trade secrets.  This District has applied the following

---

[7]  Defendant Bell argues that Plaintiff is bound by the proposed classes identified in the Complaint and that Plaintiff may not revise such classes without a formal amendment of the Complaint, citing Vega v. T-Mobile USA, Inc., 564 F.3d 1256 (11th Cir. 2009).  The Vega Court, however, did not establish a *per se* rule against a plaintiff modifying a class from that initially identified when it moves for certification.  Indeed, the Eleventh Circuit has recognized that "the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims."  Prado-Steinman ex rel Prado v. Bush, 221 F.3d 1266, 1273 (11th Cir. 2000); see also Pop's Pancakes, Inc. v. NUCO2, Inc., 251 F.R.D. 677, 680 n.1 (S.D. Fla. 2008) (Middlebrooks, D.J.) (court analyzed Rule 23 pre-requisites as to the classes proposed in motion for class certification, which differed from the class defined in complaint).

balancing test in determining whether information as to trade secrets is exempt from disclosure:

> Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery. In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets or confidential information is relevant and necessary to the action. The district court then must balance the need for protection of the [confidential information] against the claim of injury resulting from disclosure. Discovery may be denied if proof of relevancy or need is not established, but if relevancy and need are shown, the trade secret should be disclosed. Determination of whether the need outweighs the harm of disclosure falls within the sound discretion of the trial court.

Empire of Carolina, Inc. v. Mackle, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (Marcus, J.).

In objecting to disclosure of such information, Defendant merely states that "Defendant's processes are proprietary processes that have independent commercial value and are not generally known. They are trade secrets." The Court does not find these summary statements sufficient to establish that the information sought is confidential or to demonstrate that its disclosure would be harmful. Moreover, upon the parties' motion, the Court has entered an order to protect disclosure of trade secrets and other confidential information. See Agreed Motion for Entry of Stipulation and Protective Order (DE 33). Accordingly, Defendant Bell's objection on this basis is overruled.

D.    Confidentiality

In additional to objecting to the disclosure of trade secrets, Defendant Bell has objected to certain discovery requests on the ground that they require disclosure of

17

confidential information regarding persons other than Plaintiff.  As noted above, the Court has entered a Protective Order that would protect disclosure of such confidential information.  Accordingly, Defendant Bell's objection on this basis is also overruled.

SPECIFIC DISCOVERY REQUESTS

Plaintiff propounded his discovery requests before he narrowed the proposed class definition in his motion for certification.  Certain of his requests, therefore, seek documents and information relating to the four subclasses as defined in the Complaint.  Where a Request for Production seeks documents relating to a particular subclass, the Court has substituted the term the "proposed Class" or the "proposed Class Members," as defined in Plaintiff's motion for class certification.  For example, Request for Production No. 3, as propounded, seeks "ALL DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO GEICO providing YOU with the PROPOSED GEICO CLASS MEMBERS' telephone numbers."   Request No. 3 shall now read:  "ALL DOCUMENTS and ESI exchanged between YOU and GEICO RELATING TO GEICO providing YOU with the PROPOSED CLASS MEMBERS' (defined in Plaintiff's motion for class certification) telephone numbers."   Accordingly, where the Court requires Defendant Bell to produce documents, communications, or ESI and where the Court requires Bell to answer interrogatories, Bell should construe the Court's ruling to require production of documents, communications, or ESI and interrogatory answers relating to the proposed class or class members defined in Plaintiff's motion for class certification.[8]

---

[8] Before considering the specific discovery requests, the Court notes that Defendant Bell has stated that the files it "receives from GEICO claims office may relate to at least four 'GEICO' entities, three of which are not the named Defendant."  Bouvier Decl. ¶ 11 (DE 55-1).  Bell contends that "when [it] receives a file from the GICO claims office, [it]

A.     Requests for Production.

1.     Request Nos. 5,[9] 33, and 34 seek production of documents, communications and ESI pertaining to proposed Class Members giving prior express consent for Bell or for GEICO to make telephone calls to them.  By definition, individuals that have consented to such calls are excluded from the proposed class.  Indeed, making a telephone call with the prior express consent of the individual called is not prohibited by the TCPA.  See 42 U.S.C. § 227(b)(1).  Moreover, Defendant Bell has asserted "prior express consent" as an affirmative defense.  See Answer and Affirmative Defenses ¶ 60 (DE 14). The Court, therefore, finds that the documents and information sought by the Requests are relevant to the claims and defenses herein and, therefore, should be produced.   Accordingly, the Motion with respect to Request Nos. 5, 33, and 34 is GRANTED.   Within fourteen (14) days of the date of this Order, Defendant Bell shall produce all documents in its possession, custody, and/or control that are responsive to these requests.  If Defendant does not have documents responsive to any of these Requests, it shall amend its responses to so indicate.

2.     Request Nos. 9, 10, 32, 39, 40, 41, and 42 seek production of documents, communications, and ESI relating to how Defendants GEICO and Bell searched for,

---

does not know which of the GEICO entities are the insurer." Id. ¶ 11.  When responding to the discovery requests, however, if Bell is unable to ascertain whether it has responsive documents or information pertaining to Defendant "Government Employees Insurance Company," it shall provide the documents and information as to all GEICO entities.

[9]  Request Nos. 5, 6, 7, and 8, as propounded, seek the same documents for each of the 4 subclasses identified in the Complaint.  As the Court has limited discovery requests to the one proposed class identified in its motion for class certification, Requests 6, 7, and 8 are DENIED as moot.

located, or acquired the proposed Class Members' telephone numbers.  To be a member of one of the four subclasses described in the Complaint, an individual, *inter alia*, must have not provided Defendants, or any third party acting on their behalf, with the telephone number called by Defendants.  Arguably, documents showing how Defendants obtained the telephone numbers of a proposed class member would be relevant or would lead to the discovery of admissible evidence as to whether a proposed class member had not provided Defendants with his telephone number.  But, as noted above, Plaintiff now seeks to certify only one class, defined as follows:

> All persons in the United States to whom (1) a telephone call was placed through LiveVox that featured an artificial or prerecorded voice [;] (2) to a phone number provided to LiveVox by Bell LLC; (3) whose contact information was provided to Bell LLC by GEICO; and (4) who never provided Bell LLC, GEICO, or any third party acting on their behalf, prior consent to place telephone calls to the phone number called.

Motion to Certify Class at 1 (DE 66).  To be a member of the now proposed class, by definition, Defendant Bell must have obtained the proposed class member's telephone number from GEICO.  Membership is no longer dependent on how GEICO obtained such telephone number.  The undersigned, therefore, concludes that the information sought by these Requests is not relevant or likely to lead to admissible evidence with respect to the current proposed class.  Accordingly, the Motion with respect to Request Nos. 9, 10, 32, 39, 40, 41, and 42 is DENIED.

3.    Request Nos. 11, 12, 13, and 14 seek documents, communications, and ESI exchanged between Bell and any third party (excluding GEICO) that provided Bell with the proposed Class Member's telephone numbers.  The class Plaintiff now seeks to certify includes only the contact information provided to Bell by GEICO.  Information with respect

to any third party providing Bell telephone numbers, therefore, is no longer relevant or likely to lead to admissible evidence.  Accordingly, the Motion with respect to Request Nos. 11, 12, 13, and 14 is DENIED.

By contrast, Request Nos. 3 and 4 seek documents, communications, and ESI between Bell and GEICO pertaining to GEICO providing Bell with proposed Class Members' telephone numbers.  These Requests, therefore, are relevant.  Accordingly, the Motion with respect to Request Nos. 3 and 4 is GRANTED.   Within fourteen (14) days of the date of this Order, Defendant Bell shall produce all documents in its possession, custody, and/or control that are responsive to these requests.  If Defendant does not have documents responsive to any of these Requests, it shall amend its responses to so indicate.

4.      Request No. 15 seeks production of all documents relating to Bell making subrogation related telephone calls to proposed Class Members.   Request Nos. 53 and 54 seek production of all documents, communications, and ESI relating to Bell making robocalls to the proposed Class Members.   The Court finds that these Requests are overbroad on their face.  Accordingly, the Motion with respect to Request Nos. 15, 53, and 54 is DENIED.

5.      Request No. 16 seeks production of all policies, procedure, and manuals relating to Bell making subrogation telephone calls.  The Court finds that this Request is overbroad now that Plaintiff has narrowed the proposed class.  The Court, therefore, will require Defendant Bell to produce only policies, procedure, and manuals relating to Bell making subrogation telephone calls using an artificial or prerecorded voice.  Accordingly, within fourteen (14) days of the date of this Order, Defendant Bell shall produce all

21

documents in its possession, custody, or control responsive to Request No. 16 as limited by the Court. If Defendant does not have documents responsive to this Request, it shall amend its response to so indicate.

6.      Request Nos. 19, 20, 21, 43, 44, 45, 46, 47, 48, 49, and 50 seek production of documents, communications, and ESI relating to Plaintiff Carlos Cabrera. In the parties' Joint Status Report, Bell represents that it has produced "all non-privileged responsive documents related to requests pertaining to communications with or about Carlos Cabrera, including the account file pertaining to Carlos Cabrera . . . and therefore, the requests that simply related to Plaintiff Cabrera have been resolved." Joint Status Report Regarding the Parties' Meet and Confer on Plaintiff's Motion to Compel at 5 (DE 101). Accordingly, the Motion with respect to Request Nos. 19, 20, 21, 43, 44, 45, 46, 47, 48, 49, and 50 is DENIED as moot. If Defendant Bell has withheld from production documents on the basis of any privilege other than work product, it shall provide a privilege log in accordance with Local Rule 26.1(g)(3)(B) and (C).

7.      Request Nos. 23, 29, and 37 seek production of documents, communications, and/or ESI relating to complaints about the telephone calls made by Bell. The Court finds that these documents are relevant or are likely to lead to the discovery of admissible evidence. Accordingly, the Motion with respect to Request Nos. 23, 29, and 37 is GRANTED. Within fourteen (14) days of the date of this Order, Defendant Bell shall produce all documents in its possession, custody, and/or control that are responsive to these requests. If Defendant does not have documents responsive to any of these Requests, it shall amend its responses to so indicate.

8.      Request Nos. 24, 31, and 38 seek production of documents and

communications relating to the telephone dialing equipment used to make the calls to the proposed Class Members, including, *inter alia*, those relating to the make and model of the equipment, as well as such technical information as to how telephone numbers were inputted, processed, and stored in the equipment, and the ability of the equipment to dial multiple telephone numbers simultaneously and to store or produce telephone numbers using a random or sequential number generator.  The Court fails to see the relevance of the information sought.  Moreover, Defendant Bell has indicated in its response that it does not have documents responsive to these Requests.  See Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production. . . .").  Accordingly, the Motion with respect to Request Nos. 24, 31, and 38 is DENIED.

9.     Request No. 25 seeks production of all documents and ESI that identify the total number of telephone calls made to the proposed Class Members.[10]   In response to this Request, Defendant Bell stated that "no responsive documents are believed to exist."  Plaintiff questions Bell's assertion.  Plaintiff first argues that Bell "undoubtedly receives compensation for the subrogation calls it places to the Proposed Class Members."  Motion at 23 (DE 42).  Plaintiff, however, fails to explain how the compensation Bell may have received relates to the information sought.  Additionally, Plaintiff argues that Bell "must also

---

[10]   Request Nos. 25, 26, 27, and 28, as propounded, seek the same documents for each of the 4 subclasses identified in the Complaint.  As the Court has limited discovery requests to the one proposed class identified in its motion for class certification, Requests 26, 27, and 28 are DENIED as moot.

23

have phone records it can provide that will show the number of telephone calls made." Id. But Plaintiff's Request seeks only documents and ESI that identify the total number of telephone calls made; it does not seek documents and ESI from which such information may be ascertained.   Accordingly, the Motion with respect to Request No. 25 is DENIED.

10.    Request Nos. 51 and 52 seek production of documents, communications, and ESI "sufficient to identify the total top-line revenue Bell received as the result of making phone calls on behalf of GEICO."   Although Plaintiff has not proffered the purpose for seeking such information, presumably it would purportedly pertain to the issue of damages. Under the TCPA, a private plaintiff may recover (in addition to injunctive relief) his "actual monetary loss" from each violation of the statute or "$500 in damages for each such violation, whichever is greater."[11] 42 U.S.C. § 227(b)(3)(B).   The Complaint alleges that Plaintiff and the proposed class members have suffered actual harm because they "must frequently pay for the calls they receive or incur a usage allocation deduction from their calling plans."   Complaint ¶ 3 (DE 1).   The Complaint also alleges that Plaintiff and the proposed class members are entitled to statutory damages – "a minimum of $500 in damages for each violation of the TCPA."   If Plaintiff and the proposed class members elect actual damages, the amount to be awarded (should Defendants be found liable) would be  based on the actual harm suffered.   And if Plaintiff and the proposed class members elect statutory damages, the award would be based on the number of telephone calls made to them without their prior express consent.   The Court, therefore, cannot find that the "total top-line revenue" Bell received is relevant or likely to lead to admissible

---

[11]  If the court finds that a defendant willfully and knowingly violated the TCPA, it may treble the damages awarded.  42 U.S.C. § 227(b)(3)(C).

evidence.  According the Motion with respect to Request Nos. 51 and 52 is DENIED.

   B.   Interrogatories.[12]

   1.   Interrogatory No. 4 asks Defendant Bell to identify all proposed Class Members by name and for each such person, to identify his or her phone number, the source from which it obtained his or her number, the date you obtained his or her phone number, and the date(s), you made phone calls to each such person or that phone calls were made to such person on your behalf.   The Motion with respect to Interrogatory No. 4 is GRANTED in part and DENIED in part.  Bell shall be required to identify by name the proposed Class Members and for each such Class Member give the telephone number(s) called[13] and the dates it made such calls.  However, by definition, an individual is a member of the proposed class only if GEICO provided Bell with contact information; Bell, therefore, shall not be required to identify the source from which it obtained the telephone numbers.  Additionally, the Court finds that the dates Bell acquired the telephone numbers is not relevant, and therefore Bell will not be required to provide this information.  Within fourteen (14) days of the date of this Order, Bell shall answer Interrogatory No. 4 as limited by the Court.

   2.   Interrogatory No. 5 asks Bell to describe all facts surrounding its verification

---

   [12]   In addition to various objections (that the Court has overruled), for each interrogatory at issue, Defendant states that "calls were not made as alleged to be related to the defined terms and putative class[ ]."  The Court does not know what Defendant means by this objection, and Defendant does not explain further.  The Court, therefore, has not considered this objection in ruling on the interrogatories.

   [13] Interrogatory No. 11 also asks Bell to identify the telephone numbers used to call proposed Class Members.  As the same information is requested by Interrogatory No. 4, Interrogatory No. 11 is DENIED as moot.

that the proposed Class Members consented to have their telephone numbers transferred to Bell and to have the telephone phone calls made to them.   This information is relevant to Bell's affirmative defense of "prior express consent."   Accordingly, the Motion with respect to Interrogatory No. 5 is GRANTED.  Within fourteen (14) days of the date of this Order, Bell shall fully and completely answer Interrogatory No. 5.

3.      Interrogatory No. 6 asks Defendant Bell to describe its business relationship with GEICO as it relates to the acquisition of the proposed Class Members' telephone numbers and as it relates to Bell making the telephone calls at the direction of GEICO; it also asks Bell to identify all contracts, written agreements, or any other understandings between Bell and GEICO and to describe all instructions and directives GEICO provided to Bell with respect to the telephone calls.  After asserting various objection (which the Court overrules), Bell responded that it has not located any formal contract.  It further responded that it receives referral sheets from GEICO and "assists in pursuit of subrogated interests."  In support of his motion to compel, Plaintiff argues that Bell fails to describe any instructions or directives that GEICO provided relating to the telephone subrogation calls and that it fails to describe any *informal* contracts, agreements, or understandings Bell has entered into relating to the telephone calls at issue.  Plaintiff contends that it is unlikely that GEICO did not provide any guidance to Bell or that Bell and GEICO did not have any business relationship beyond the referral sheets.  The Court agrees that Bell has failed to provide a full and complete answer to this Interrogatory.  Accordingly, the Motion with respect to Interrogatory No. 6 is GRANTED.  Within fourteen (14) days of the date of this Order, Bell shall fully and completely answer Interrogatory No. 6

4.      Interrogatory No. 7 asks Defendant Bell to identify all GEICO employees or

26

agents or any other third-party who has knowledge related to the collection and transfer by GEICO to Bell of the proposed Class Members' telephone numbers.  And for each such employee or agent identified, the Interrogatory requests Bell to describe the role(s) in the collections and/or transfer of the proposed Class Members' telephone number to Bell. After asserting objections (which the Court overrules), Bell responded that "Heather Bunch communicated with [it] regarding a file related to a person named Carlos Cabrera." Defendant has answered this Interrogatory only as it relates to Plaintiff; it has failed to provide any of the information requested as to the proposed Class Members.  Accordingly, the Motion with respect to Interrogatory No. 7 is GRANTED.  Within fourteen (14) days of the date of this Order, Bell shall fully and completely answer Interrogatory No. 7.

5.      Interrogatory No. 8 asks Defendant Bell to describe all telephone dialing equipment used to make telephone calls to the proposed Class Members, including the "telephone dialing equipment utilized to record, create, and play the pre-recorded robocalls and/or artificial voice based on robocalls, the software and hardware utilized, the coded commands utilized to make the robocalls, and any automated processes that make the robocalls without human intervention."  Similarly, Interrogatory No. 9 asks Bell for technical information about such telephone dialing equipment.  Although Defendants (or LiveVox) may have used telephone dialing equipment to make robocalls to the Proposed Class Members, the Court does not find that technical information as to how that equipment operates is relevant or likely to lead to the discovery of admissible evidence.   Accordingly, the Motion with respect to Interrogatory Nos. 8 and 9 is DENIED.

6.      Interrogatory No. 13 asks Defendant Bell to state the total number of phone calls made to proposed Class Members.  In response to this Interrogatory, Bell merely

raises the same objections the Court has already overruled.  And it does not address the Interrogatory in its Corrected Response to the motion to compel.  Accordingly, the Motion with respect to Interrogatory No. 13 is GRANTED.  Within fourteen (14) days of the date of this Order, Bell shall answer Interrogatory No. 13.

      C.    <u>Requests for Admissions</u>

Federal Rule 36 governs requests for admissions; the Rule's purposes are "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial."  <u>Perez v. Miami-Dade County</u>, 297 F.3d 1255, 1268 (11th Cir. 2002) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2252 (2d ed. 1994)); <u>see also</u> <u>Thalheim v. Eberheim</u>, 124 F.R.D. 34, 35 (D. Conn. 1988) ("An important purpose of the rule is to reduce the cost of litigation by narrowing the scope of disputed issues, facilitating the succinct presentation of cases to the trier of fact, and eliminating the necessity of proving undisputed facts.") (internal citations omitted).  Rule 36(a) permits a party to serve on another party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1).  Rule 36(a) also affords the responding party limited options for answering a request for admission:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information

> as a reason for failing to admit or deny only if the party states
> that it has made reasonable inquiry and that the information it
> knows or can readily obtain is insufficient to enable it to admit
> or deny.

Fed. R. Civ. P. 36(a)(4).  A responding party may also object to a request for admission, but not "solely on the ground that the request presents a genuine issue for trial."  Fed. R. Civ. P. 36(a)(5).  A matter admitted under Rule 36 is deemed "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Additionally, Rule 36 expressly permits the requesting party to move a court to determine the sufficiency of an answer or objection to a request for admission.  Fed. R. Civ. P. 36(a)(6).  If the court finds that an answer does not comply with the Rule, it "may order either that the matter is admitted or that an amended answer be served."  Id.  Where the court finds that an objection is not justified, it "must order that an answer be served." Id.

1.    Requests for Admission Relating to Plaintiff Cabrera

Requests Nos. 1, 4, 7, 11-12, 14, 25-26, 30, and 36 seek admissions related to the individual plaintiff, Cabrera.

Request No. 1 seeks an admission that Bell made telephone calls to Plaintiff Cabrera.  After asserting various objections (which the Court overrules), Bell responded: "Denied as phrased.  Additionally, Defendant has made a reasonable inquiry and is without knowledge as to, and therefore cannot admit or deny at this time, whether Plaintiff is the person he alleges to be, and whether the telephone number it is alleged to have called belonged to Plaintiff."  It is unclear whether the second sentence of this response is an

explanation as to why Bell denied Request No. 1 "as phrased" or whether it is a separate objection to the Request.[14]  Additionally, the Court is uncertain precisely what Bell means by that sentence.  In his reply memorandum (DE 64 at 10), Plaintiff interprets the sentence to mean that Bell contends that "it cannot admit that it made phone calls to Plaintiff because he has not yet been deposed or provided an affidavit swearing the telephone number called is his."  If at the time Bell made this response (early in the discovery period), Bell, in fact, did not know whether the telephone calls it made were to Plaintiff (as opposed to whether it made calls to a specified telephone number), the Court notes that Federal Rule of Civil Procedure 26(e)(1)(A) expressly requires that a party supplement its response to a request for admission if it subsequently learns that the response is "inaccurate or incomplete."

In support of his motion to compel, Plaintiff contends that "[d]espite Plaintiff's production of the phone recording with Plaintiff Cabrera in which the Bell representative admits that Bell called Plaintiff, Bell denies making phone calls to Plaintiff."[15]  Plaintiff argues that "[w]ithout question Defendant is being untruthful" and that the Court, therefore, "should compel an accurate response."

Request No. 4 seeks an admission that GEICO instructed Bell to make telephone calls to Plaintiff.  Request No. 7 seeks an admission that Bell made telephone calls to

---

[14]  Defendant Bell has responded similarly to each of the requests for admissions at issue relating solely to Plaintiff Carbrera.

[15]  Plaintiff's counsel attests that "Bell's own documents show that it received a call from Plaintiff in June 2012 (which it recorded) using the cellular telephone at issue, at which time Carbrera confirmed his identity and requested that the unauthoriced calls – numbering in the hundreds at that point – be stopped."  Richman Decl. ¶ 8 (DE 64-1).

Plaintiff on behalf of GEICO.  And Request No. 14 seeks an admission that Bell made robocalls to Plaintiff on behalf of GEICO.  After asserting various objections (which the Court overrules), Bell responded: "Subject to and without waiver of these objections and upon a reasonable inquiry, Defendant denies the request as phrased" (Nos. 4 and 7) or "Subject to and without waiver of these objections and upon a reasonable inquiry, the request is Denied" (No. 14).  In support of his motion to compel, Plaintiff contends that Bell's denials to these Requests are "wholly inaccurate at best" because Bell admits in Interrogatory No. 6 that it makes calls based on referral sheets provided by GEICO and because Bell produced a police report it received with Cabrera's telephone number.  Plaintiff argues, therefore, that the Court should compel Bell to "accurately respond."

Request No. 11 and No. 12 seek admissions that Plaintiff did not give prior express consent for Bell or for GEICO, respectively, to make telephone calls to him on his cellular telephone.  After asserting various objections (which the Court overrules) Bell denied the Requests "as phrased."  Bell additionally stated that it had made "a reasonable inquiry and is without knowledge as to, and therefore cannot admit or deny at this time, whether Plaintiff is the person he alleges to be, and whether the telephone number it is alleged to call belonged to Plaintiff."   In support of his motion to compel, after noting that Bell has asserted an affirmative defense of "prior express consent," Plaintiff contends that "[i]f Bell actually obtained consent, it should have documentation and should be required to produce it."[16]

---

[16]  Because this is a request for admission, not a request for production, the Court assumes that Plaintiff actually meant that Bell should be required to admit Request Nos. 11 and 12, unless it has documentation showing such prior express consent.

Request No. 25 and No. 26 seek admissions that Plaintiff did not provide Bell or GEICO, respectively, with his telephone number.  After asserting objections (which the Court overrules), Bell responded to each: "Subject to and without waiver of the foregoing objections, the request is Denied."  In support of his motion to compel, Plaintiff contends that "[d]espite Bell's production of the police report from which it obtained Plaintiff's telephone number, Bell denies that Plaintiff provided it himself based on its inability to discern whether Plaintiff is who he claims to be."  Plaintiff argues that "[i]f Plaintiff Cabrera did in fact provide Bell [or GEICO] his telephone number, Bell should have documentation of that disclosure" and, therefore, the Court should compel Bell to "respond truthfully" to these Requests.

Request No. 30 and No. 36 seek admissions that Bell and GEICO, respectively, acquired Plaintiff's telephone number from a police report.  After asserting objections (which the Court overrules), Bell responded to each of these Requests: "Subject to and without waiver of the foregoing objections, the request is Denied."  In support of his motion to compel, Plaintiff argues that "[u]nless Bell obtained Plaintiff's phone number from somewhere other than the police report it produced to Plaintiff" or "[u]nless GEICO provided some other source of acquisition of Cabrera's phone number in its referral to Bell," Bell should have admitted these Requests, and therefore, the Court should compel Bell to "respond truthfully" to them.

Plaintiff, in essence, is requesting that the Court ascertain the veracity of each of Defendant's answers to the Requests for Admission.  In determining the sufficiency of a answer to a request for admission, however, the court's role is to "ensure the formalities of [Rule 36(a)] are observed.  As long as a responding party's answer is adequate to

satisfy the technical requirements of Rule 36, the court is not empowered to compel [the responding party] to change an answer to conform to the 'truth' or to any particular theory or other evidence. . . ."  Collins v. JC Penney Life Ins. Co., No. 02cv0674-L(LAB), 2003 U.S. Dist. LEXIS 8455, at *32 (S.D. Cal. May 5, 2003).   As one court recently explained: "The Federal Rules provide two avenues for challenging a party's answers to a request for admission.  Rule 36(a), which addresses the *form* of the answer, and Rule 37(c)(2),[17] which addresses the answer's factual *accuracy*."  Point Blank Solutions, Inc. v. Toyobo America, Inc., No. 09-61166-CIV, 2011 WL 742657, *at 2 (S.D. Fla. Feb. 24, 2011) (Goodman, M.J.) (emphasis in original).  The Point Blank Court ruled that Rule 36(a)(6) "clearly speaks to the *form* of the answer or objection, not to its *substance*"; the Rule "does not authorize a Court to inquire into the substantive accuracy of the denial" before trial or before summary judgment has been granted to either party.  See also Dowdy v. Coleman Co., Inc., No. 1:11-cv-00045-DAK-EJF, 2012 WL 5450039 (D. Utah Nov. 7, 2012) ("Rule 36(a) does not authorize a Court to prospectively render determinations concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence.  If  Defendant Bell's responses to these Requests for Admission prove to be false, then Defendant has a remedy under Rule 37(c)(2).  Accordingly, the Motion with respect to Request for Admission Nos. 1, 4, 7, 11-12, 14, 25-26, 30, and 36 is

---

[17]  Rule 37(c)(2) provides that "if a party fails to admit a request under Rule 36, and if the requesting party later proves a document to be genuine or the matter true," a court must award the requesting party "its reasonable expenses, including attorney's fees, incurred in making that proof," unless certain enumerated conditions exist.  Fed. R. Civ. P. 37(c)(2).

DENIED.  However,  if Defendant Bell determines that it is required under Federal Rule of Civil Procedure 26(e)(1)(A) to supplement its answers to any of these Requests, it shall do so within ten (10) days of the date of this Order.

     2.    <u>Requests for Admission Relating to Proposed Class Members</u>

Requests Nos. 2-3, 5-6, 8, 15, 18, 20, 23, 43-45, 49-52, 57-64, and 68-69 seek admissions relating to the 4  proposed subclasses defined in the Complaint.  After carefully reviewing each of these Requests for Admissions, the Court concludes that, unlike the Requests for Production, they do not lend themselves to revision to comport with the current proposed class.  Moreover, after asserting various objections (which the Court has overruled above), Defendant Bell has "subject to and without waiver" of the objections either denied the Requests for Admissions (Nos. 2, 15, 18, 20, 23, 43-45, 49-52, 57-64, and 68-69), denied them "as phrased" (Nos. 5-6, and 8) or stated that "upon a reasonable inquiry, Defendant is without knowledge and therefore cannot admit or deny this request" (No. 3).    These responses comport with the (technical) requirements of Rule 36(a)(4).  Defendant Bell, therefore, provided procedurally sufficient answers to the Requests at issue (as they relate to the 4 subclasses).    Accordingly, the Motion with respect to Requests for Admission Nos. 2-3, 5-6, 8, 15, 18, 20, 23, 43-45, 49-52, 57-64, and 68-69 is DENIED.

DONE AND ORDERED in Fort Lauderdale, Florida, this 3rd day of July 2014.

BARRY S. SELTZER
CHIEF UNITED STATES MAGISTRATE JUDGE

34

Copies to:

All counsel of record