UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-cv-61390-WILLIAMS/SELTZER

CARLOS CABRERA, individually and on behalf of
a class of all others similarly situated,

 *Plaintiff*,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a Maryland corporation, and BELL,
LLC, a Florida corporation,

 *Defendants*.

_____/

**PLAINTIFF'S RESPONSE TO BELL'S OBJECTIONS AND MOTION TO
SET ASIDE PORTIONS OF MAGISTRATE JUDGE SELTZER'S COMPELLING ORDER**

 Plaintiff Carlos Cabrera ("Cabrera") propounded his original written discovery requests on Defendant Bell, LLC ("Bell") in January 2013. Throughout the year and a half of litigation since, Bell has made every effort to avoid its obligations to respond to that discovery. Despite those efforts, Magistrate Judge Seltzer ultimately ordered Bell to produce numerous additional documents and other information. (*See* Dkt. 125 [the "Compelling Order"].) True to form, Bell now seeks to avoid its discovery obligations yet again by asking this Court to overturn a majority of the Compelling Order. That request should be denied in its entirety.

 First, Bell argues that Magistrate Judge Seltzer's Compelling Order was clearly erroneous and contrary to law because it improperly accepted Plaintiff's modified class definition—as set forth in his pending motion for class certification. That argument misses its mark. Class definitions may be, and are regularly, modified (even multiple times) before final judgment based upon information learned in discovery and otherwise throughout the litigation. Indeed, the courts are required to modify class definitions (proposed or certified) as necessary, which is exactly what happened here.

From there, Bell argues that the Compelling Order's acceptance of the modified class definition is also clearly erroneous and contrary to law because the inclusion of LiveVox (which Bell claims is a wholly separate entity that acted independently to make the calls at issue) in the definition improperly transforms Plaintiff's theory of liability from direct to vicarious. That's also not true. Plaintiff's theory of this case has always been that Bell is directly liable for making unauthorized calls to the class using an automatic telephone dialing system ("ATDS"), which just turned out to be the cloud-based dialing system known as LiveVox. *See, e.g., Echevvaria v. Diversified Consultants, Inc.*, No. 13-cv-4980, 2014 WL 929275, at *6 (S.D.N.Y. Feb. 28, 2014) (finding entity who used LiveVox to make the calls directly liable for its use of the ATDS). But even if Bell's use of LiveVox did change Plaintiff's theory (it doesn't), Bell could and should be held vicariously liable under the principles of formal agency, apparent authority, and ratification for its control over and involvement in making the calls through LiveVox.

Beyond that, Bell argues that the Compelling Order should be set aside based on the now well-worn contention that it can't distinguish between the claim files referred to it from Defendant GEICO as opposed to some other, unidentified GEICO entity. That position fails (as it always has) for two reasons. First, the GEICO Claims Center that referred all of the claim files in question to Bell is owned and operated by Defendant GEICO. Thus, regardless of whether the files originated with some other GEICO division, they ultimately all arrived at Bell's doorstep through the same entity—i.e., party-defendant GEICO. And, in any event, there's no need to set aside the Compelling Order because Bell has already produced a majority of the approximately 3,500 files referred by GEICO through the Claims Center anyway.

Finally, Bell argues that the Compelling Order should be set aside to the extent that it requires Bell to produce evidence of consent to place calls to putative class members. As the

argument goes, Bell simply doesn't have any records of consent and therefore, shouldn't be required to produce what it doesn't have. But the fact that Bell doesn't have any records of consent to produce isn't a justification for setting aside the Compelling Order. It just means that Bell has failed to meet its evidentiary burden with respect to its affirmative defense of consent.

For these reasons, and as explained further below, the Court should overrule all of Bell's objections to Magistrate Judge Seltzer's Compelling Order.[1]

## ARGUMENT

**I.      Legal Standard.**

Under Federal Rule of Civil Procedure 72(a), magistrate judges have the power to issue orders on "pretrial matter[s] not dispositive of a party's claim or defense." *See* Fed. R. Civ. P. 72(a). A party may object to a magistrate judge's order under Rule 72(a), but "[t]o prevail, [it] must show that the conclusions in the [o]rder are clearly erroneous or contrary to the law." *See Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. U.S.*, No. 10-cv-153, 2013 WL 1966967, at *1 (M.D. Fla. May 13, 2013) (citations omitted).

A finding of fact is clearly erroneous when the court "is left with the definite and firm conviction that a mistake has been committed." *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002) (citing *University of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535 (11th Cir. 1985)). If, however, "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Kearney Partners*, 2013 WL 1966967, at *1 (citing *Caban-Wheeler v. Elsea*, 71 F.3d 837, 843 (11th Cir. 1996)). A

---

[1] Bell also strangely includes approximately five pages of definitions and objections from Plaintiff's discovery requests to throw out the argument that the motion to compel should have been denied in its entirety because the definitions, generally, were overbroad and the class definitions, specifically, were unascertainable. Not surprisingly, it provides no authority to support its position and this portion of its argument should be ignored.

3

finding is contrary to the law, on the other hand, only "if it misapplies the relevant statutes, case law, or rules of procedure." *See Kearney Partners*, 2013 WL 1966967, at *1 (citation omitted).

**II.     Magistrate Judge Seltzer's Compelling Order is Not Clearly Erroneous or Contrary to Law to the Extent it Relies Upon the Class Definition Outlined in Plaintiff's Motion for Class Certification.**

    A.    <u>Class definitions may (and should) be modified throughout a case in light of information learned in discovery and otherwise</u>.

Bell's primary objection to the Compelling Order is that Magistrate Judge Seltzer supposedly erred by accepting Plaintiff's modified class definition—outlined in his motion for class certification—as controlling.[2] (Def. Mot. at 5.) Bell is mistaken. Class definitions are regularly modified based upon information learned through discovery and otherwise. *See Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) (recognizing that judges are tasked with "defin[ing], redefin[ing], sub-class[ing], and decertify[ing] as appropriate in response to the progression of the case from assertion to facts."). In fact, class definitions often change multiple times throughout litigation to better define the parameters of the class, *see Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 (11th Cir. 2004), and can be modified up until a final judgment is entered on the claims, *see* Fed. R. Civ. P. 23(c)(1)(C), meaning that a modification prior to class certification (as in this case) is entirely appropriate. *See, e.g., Pop's Pancakes, Inc. v. NUCO2, Inc.*, 251 F.R.D. 677, 680 n.1 (S.D. Fla. 2008) (considering the plaintiff's revised class definition in motion for class certification); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013); *Manno v. Healthcare Revenue Recovery Grp.*, 289 F.R.D. 674, 695 (S.D. Fla. 2013). Indeed, such modifications are expected because "the

---

[2]     Bell also argues that that a change in the class definition "fundamentally impact[s] the tolling principles applicable to claims against [it]." (Def. Mot. at 6-7.) It does not, however, explain what that means or how such an "impact" renders the Compelling Order clearly erroneous or contrary to law.

4

scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000).

Beyond its mistaken belief that class definitions may not be modified whatsoever, Bell also contends that the modified class definition[3] impermissibly expands the scope of the class and Plaintiff's alleged claims against. That isn't true either. In reality, the modification actually narrows the number of individuals in the Class,[4] and Plaintiff's theory of liability with respect to Bell hasn't changed at all (as explained further in Section II.B, *infra*). Moreover, the modified definition was proposed in Plaintiff's motion for class certification only after discovery into class issues was taken and information from Bell, GEICO and third-party LiveVox suggested that a modification was necessary. *See Prado-Steiman*, 221 F.3d at 1273. Accordingly, Magistrate Seltzer's reliance on Plaintiff's modified class definition was far from clearly erroneous or contrary to the law.

---

[3] The modified class definition includes: "All persons in the United States to whom (1) a telephone phone call was placed through LiveVox that featured an artificial or prerecorded voice; (2) to a phone number provided to LiveVox by Bell LLC; (3) whose contact information was provided to Bell LLC by GEICO; and (4) who never provided Bell LLC, GEICO, or any third party acting on their behalf, prior express consent to place telephone calls to the phone number called." (*See* Dkt. 66 at 1.)

[4] Bell also reiterates its argument that the modified class definition is improper because it allows Plaintiff to seek relief on behalf of individuals who received calls on both their landlines and cell phones, when he only received calls on his cell phone. (Def. Mot. at 8-9.) This argument likewise fails. Class representatives often represent individuals under both the landline and cell phone provisions of the TCPA when they only received one type of call, because "[t]he theory of liability [under the two provisions] is virtually the same." *See Spillman v. Dominos Pizza, LLC*, No. 10-cv-349, 2011 WL 721498, at *3 (M.D. La. Feb. 22, 2011) (allowing plaintiff who received calls on her cell phone to represent individuals who received calls on their landlines); *see also Visser v. Caribbean Cruise Lines, Inc., et al.*, No. 13-cv-1029, Dkt. 21 at 33 (W.D. Mich. Apr. 4, 2014). In any event, those arguments are aimed at whether Plaintiff's claims are typical of those of the other class members, not whether the Compelling Order is clearly erroneous or contrary to the law.

Bell's only cited authority on the issue doesn't require a different result. In *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), the Court did not—as Bell contends—create a bright-line rule that modifications of class definitions are improper. (*See* Compelling Order at 16 n.7.) Rather, it held that based on the specific facts of that case, the plaintiff's proposed modification was not warranted because it included factual matters that weren't identified in the pleadings or even considered until after the close of discovery and rested on a faulty interpretation of Florida law. *Vega*, 564 F.3d at 1273, 1276.

Again, unlike in *Vega*, Plaintiff's modified class definition here is supported by the allegations in his complaint, is the result of information learned through discovery and otherwise throughout the course of the litigation, was proposed well before the deadline to move for class certification and the close of discovery, and does not change the claims originally alleged in his complaint. Because the Compelling Order's acceptance of the modified definition does not "misappl[y] the relevant statute[], case law, or rules of procedure," *see Kearney Partners*, 2013 WL 1966967, at *1, and in no way prejudices Bell—nor does Bell argue that it does (aside from its misplaced reliance on *Vega*)—it is not clearly erroneous nor contrary to the law. *See, e.g., Sadler v. Midland Credit Mgmt., Inc.,* No. 06-cv-5045, 2009 WL 901479, at *4 (N.D. Ill. Mar. 31, 2009) (approving proposed narrowing of class definition and finding defendant unprejudiced by modification).

      B.    <u>The class definition outlined in Plaintiff's motion for class certification does not introduce any new causes of action against Bell</u>.

With respect to Bell's argument that the modified class definition improperly introduces a new theory of liability against it—i.e., vicarious liability—Bell argues (i) that LiveVox (the cloud-based dialing system through which the calls were made) is supposedly a wholly separate entity that acted independently to make the calls and (ii) that to the extent he intends to assert

6

such a theory, Cabrera was required to (but didn't) plead a separate cause of action for vicarious liability against it. Neither of these arguments withstands scrutiny either.

As an initial matter, Plaintiff's theory of liability has not changed: he has always maintained (as alleged in his complaint) that Bell is directly liable because it used an ATDS to place the calls at issue. His inclusion in the proposed class definition of the exact type of ATDS used—i.e., the cloud-based dialing system known as LiveVox—doesn't change that. *See, e.g., Echevvaria*, 2014 WL 929275, at *6 (holding entity that used LiveVox to make the offending calls directly liable for its use of an ATDS).

Moreover, LiveVox is not a separate and distinct entity that acted independently to make the unauthorized calls in question here. *See Lardner v. Diversified Consultants Inc.*, --- F. Supp. 2d ----, 2014 WL 1778960, at *6-7 (S.D. Fla. May 1, 2014) (deeming a similar argument concerning LiveVox "absurd" and entering a $63,000 judgment for a single plaintiff who received the unauthorized calls). In reality, it is a cloud-based automatic dialing system through which users may store telephone numbers to be dialed and place prerecorded calls to them. Here, Bell inputted the numbers called into the LiveVox system, directed the system as to when and to whom the calls should be placed, and designed and approved the specific prerecorded messages that should be played when the calls were connected to their recipients. (*See generally* Dkt. 66, Ex. 5; *see also* Dkt. 66, Ex. 2 at 112:4-5, 116:13-16, 117:10-12, 117:20 - 118:20.) Not surprisingly then, courts have repeatedly found that LiveVox constitutes an ATDS and held parties who use it to make allegedly offending calls directly liable for violating the TCPA. *See Echevvaria*, 2014 WL 929275, at *6 (holding there was no genuine issue of material fact as to whether LiveVox is an ATDS and finding entity who used it directly liable); *Lardner*, 2014 WL 1778960, at *5–6 (same).

7

Finally, Bell's contention that Plaintiff was required to plead a separate cause of action for vicarious liability against Bell is itself contrary to the federal rules, relevant case authorities and the TCPA. In reality, Plaintiff only needed to put Bell on notice that he held it responsible for calls made on its behalf. *See Legg v. Voice Media Group, Inc.*, --- F. Supp. 3d ----, 2014 WL 2004383, at *4 (S.D. Fla. May 16, 2014); *Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, No. 06-cv-20976, 2008 WL 2557503, at *2 n.5 (S.D. Fla. June 23, 2008) *report and recommendation adopted in part*, No. 06-cv-20976, 2008 WL 2761300 (S.D. Fla. July 15, 2008) (finding that a "plaintiff might [not must] raise direct and vicarious liability as alternative legal theories in separate counts under the same factual allegations."); *In re Dish Network*, CG11-50, 28 F.C.C.R. 6574, 6593 (2013) ("we stress that nothing in this order requires a consumer to provide proof—at the time it files its complaint—that the seller should be held vicariously liable for the offending call."). That said, Bell can be held vicariously liable (i) under formal agency principles because (accepting Bell's arguments) LiveVox acted on Bell's behalf and subject to its control, (ii) under apparent authority principles because Bell directed LiveVox to have purported debtors call it back (not LiveVox) and knew or should have known about the alleged violations of the TCPA but failed to stop them, and (iii) under ratification principles because Bell received a monetary benefit (i.e. a portion of the subrogation payments recovered) when LiveVox was successful in reaching the purported debtors. *See Palm Beach Golf Center-Boca, Inc. v. Sarris,* 981 F. Supp. 2d 1239, 1249 (S.D. Fla. 2013) (recognizing that a party can be held liable for calls made on their behalves under formal agency, apparent authority, and ratification principles) (citing *In re Dish Network*, 28 F.C.C.R. at 6584).[5]

---

[5] Again, Plaintiff's theory of liability has always been that Bell should be held directly liable for placing the calls.

**III.    Magistrate Judge Seltzer's Compelling Order Should Not Be Set Aside as it Relates to The Identification of Class Members and Bell's Purported Consent to Place the Calls.**

Next, Bell argues that the Compelling Order should be set aside as to Request Nos. 3, 4, 5, 33, and 34 and Interrog. Nos. 4, 5, 7, and 13, because (i) it can't determine which files Defendant GEICO (as opposed to some other, unidentified GEICO entity) referred to it, and thus, who falls within the modified class definition, and (ii) it has no records of consent to place the calls in question and therefore, should not be required to produce any. (Def. Mot. at 7.) These arguments fail as well.

A.    <u>Bell need not identify which GEICO division the claim files in question originated because they were all referred to it by party-defendant GEICO through its Claims Center</u>.

First, Bell rehashes its argument that it supposedly can't identify which files Defendant GEICO referred to it, as opposed to some other, unidentified GEICO entity and therefore, can't determine which files fall within the modified class definition and need to be produced. (*See* Request Nos. 3, 4; Interrog. Nos. 4, 7, 13.) The supposed distinction between GEICO entities, however, is one without a difference. That is, regardless of whether any of the claims originated from different GEICO divisions—there is no evidence in the record confirming that they did— all of the claim files at issue here were referred to Bell through the same GEICO Claims Center. (*See, e.g.,* Dkt. 66, Ex. 2 at 33:3-4, 78:22-24; Dkt. 132 at 5.) The Claims Center itself is not a separate entity either; instead it is owned and operated by party-defendant GEICO, as evidenced by the Claims Center's Terms and Conditions, Privacy Policy and Security Policy, each of which identify only GEICO (not, for example, GEICO Corp., GEICO LLC or any other GEICO entity) as the entity with which users are dealing. *See* Terms and Conditions, available at https://media.geico.com/legal/terms_of_use.htm (last accessed Aug. 8, 2014); Privacy Policy,

available at https://media.geico.com/legal/privacy_policy.htm (last accessed Aug. 8, 2014); Security Policy, available at https://media.geico.com/legal/security_policy.htm (last accessed Aug. 8, 2014).[6]

In any event, the idea that Bell can't produce the requested claim files is a non-starter, because it has already begun to do so. Indeed, to date, Bell has produced what appears to be a majority of the estimated 3,500 claim files pursuant to the Compelling Order. (Declaration of Benjamin H. Richman ¶ 4, attached as Exhibit 1.) And within those files are the names and telephone numbers of the class members called—information with which Bell can cross-reference its LiveVox call records to determine the dates of the alleged calls and the number of calls it made, as requested by Request Nos. 3 and 4 and Interrogatory Nos. 4 and 13. As a practical matter though, there is no need to set aside the Compelling Order in this regard given that Bell has already produced (or committed to produce) the claim files anyway. (Richman Decl. ¶ 6.)

   B. <u>That Bell has no records of consent to produce is not a reason to set aside the Compelling Order</u>.

Finally, Bell argues that the Court should set aside the Compelling Order to the extent it requires Bell to produce records of consent to place the calls in question (i.e., Req. Nos. 5, 33, 34; Interrog. No. 5). (Def. Mot. at 7.) This argument fails as well. Here, "Bell has asserted 'prior express consent' as an affirmative defense" to Plaintiff's claims, making information related to consent undoubtedly relevant and discoverable. (*See* Compelling Order at 19 (citing Dkt. 14 at ¶ 60)); *see also Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012)

---

[6]  Party-defendant GEICO also owns and operates the www.geico.com website through which the Claims Center's online operations appear to operate (i.e., www.geico.com/claims and claims.geico.com). *See* WHOIS www.geico.com, available at http://www.whois.net/whois/geico.com (last visited Aug. 8, 2014); *see also* Dkt. 1 ¶ 10.

("Thus, the prior express consent exemption acts an affirmative defense, and 'the burden will be on the creditor to show it obtained the necessary prior express consent.'") (citation omitted); *Lardner*, 2014 WL 1778960, at *7 ("Prior express consent is an affirmative defense for which the defendant bears the burden of proof") (quotations and modifications omitted). Regardless, the fact that Bell doesn't have any records of consent to produce (*see* Def. Mot. at 7) isn't a justification for setting aside the Compelling Order. It just means that Bell has failed to meet its evidentiary burden with respect to its affirmative defense of consent. *Breslow*, 857 F. Supp. 2d at 1319; *Lardner*, 2014 WL 1778960, at *7.[7]

*          *          *

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court (i) overrule Bell's objections to Magistrate Judge Seltzer's Compelling Order, (ii) deny its motion to set aside portions of the Compelling Order, and (iii) provide such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**CARLOS CABRERA**, individually and on behalf of all others similarly situated,

Dated: August 8, 2014            By:   /s/ Bret L. Lusskin, Esq.
                                       One of Plaintiff's Attorneys

---

[7] Bell also strangely relies on *Breslow v. Wells Fargo Bank, N.A.,* --- F.3d ----, 2014 WL 2565984 (11th Cir. June 9, 2014), and *Osorio v. State Farm Bank, FSB*, 746 F.3d 1242 (11th Cir. Mar. 28, 2014), to argue that it cannot identify "whether persons called are subscribers to the phone numbers called, or whether someone provided telephone numbers as the agents of the persons called." (Def. Mot. at 7.) But, those cases don't relieve Bell of the heavy burden of presenting competent proof that it obtained consent to make the calls at issue, regardless of whom provides the consent. *See, e.g., Osario*, 746 F.3d 1251-52 ("one can consent to a call only if one has the authority to do so, and only the subscriber…can give such consent…"). Thus, if Bell has within its possession, custody or control any purported consent—whether provided by a subscriber or anyone else—it must produce it.

11

>Rafey S. Balabanian (Admitted *Pro Hac Vice*)
>rbalabanian@edelson.com
>Benjamin H. Richman (Admitted *Pro Hac Vice*)
>brichman@edelson.com
>Christopher L. Dore (Admitted *Pro Hac Vice*)
>cdore@edelson.com
>EDELSON PC
>350 North LaSalle Street, Suite 1300
>Chicago, Illinois 60654
>Tel: 312.589.6370
>Fax: 312.589.6378
>
>Scott D. Owens
>scott@scottdowens.com
>LAW OFFICE OF SCOTT D. OWENS, ESQ.
>664 E. Hallandale Beach Blvd.
>Hallandale, Florida 33009
>Tel: 954.589.0588
>
>Bret Leon Lusskin, Jr.
>blusskin@lusskinlaw.com
>BRET LUSSKIN, P.A.
>20803 Biscayne Blvd., Ste 302
>Aventura, FL 33180
>Tel: 954.454.5841

## CERTIFICATE OF SERVICE

I, Bret L. Lusskin, Jr., an attorney, hereby certify that on August 8, 2014, I served the above and foregoing ***Plaintiff's Response to Bell's Objections and Motion to Set Aside Portions of Magistrate Judge Seltzer's Compelling Order*** by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 8th day of August 2014.

>/s/ Bret L. Lusskin, Esq.
>BRET L. LUSSKIN, Esq.