UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61390-CIV-WILLIAMS

CARLOS CABRERA,

      Plaintiff,

vs.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, *et al.*,

      Defendants.

_____/

## ORDER

**THIS MATTER** is before the Court on Defendant Bell, LLC's Motion to Dismiss and Motion for Final Summary Judgment (DE 108).[1]

## I.  BACKGROUND

The undisputed facts are as follows.  As part of its business, Government Employees Insurance Company ("GEICO"), an insurance company, pursues subrogation claims against purported tortfeasors (DE 97 ¶¶ 5, 7).  In an effort to recover money GEICO has paid as a result of a car accident involving an insured, adjusters within GEICO's subrogation department send letters and personally place calls to the

---

[1] Also pending before the Court is Plaintiff's Motion for Sanctions and Continuance of Deadlines (DE 153), to which Defendant Bell filed a Response in Opposition (DE 158, 159).  This matter has been pending for more than two years, in large part due to the protracted discovery disputes between Plaintiff and Bell, which have been argued and reargued before Magistrate Judge Barry Seltzer and this Court (*see* DE 42, DE 55, DE 56, DE 58, DE 64, DE 110, DE 125, DE 132, DE 133, DE 144, DE 145, DE 150, DE 153).  In the Motion for Sanctions, Plaintiff requests that Defendant Bell's Motion for Summary Judgment be denied as a sanction for Bell's conduct relating to the ongoing discovery dispute and Plaintiff's contention that Bell failed to comply with the Court's Order (DE 150, DE 153).  This request is well-taken and, as explained *infra*, Bell is not entitled to summary judgment.

purported third-party tortfeasors (DE 97 ¶ 9). When GEICO's subrogation department determines, based on the facts and circumstances of each claim, that it has exhausted its internal recovery efforts, GEICO adjusters may refer claims to third-party collection agencies, like Defendant Bell (DE 97 ¶¶ 10-12). GEICO adjusters are assigned to specific collection agencies, such as Bell, and the adjusters have the discretion to refer claims to their assigned collection agency as they see fit (DE 140-2, Bouvier Dep. 33:10-14; DE 140-1, Bateman Dep. 17:15-18:19, 52:1-9).

According to Mr. Bouvier, Bell's managing director, Bell receives 33% of any funds it recovers on a GEICO claim (Bouvier Dep. 33:11-16). As part of Bell's standard collections practice, Bell's employees place phone calls to the referred tortfeasors to recoup monies owed (Bouvier Dep. 76:12-25). Prior to allowing its employees to place calls, Bell trains its employees on its "strictly applied" process to recover funds (Bouvier Dep. 102:10-106:11). For example, Bell provides its employees with a "Columbo list" – a list of questions Bell expects its employees to ask during their first contact with a purported tortfeasor (Bouvier Dep. 106:19-107:12). This training lasts for approximately one month and includes training on the rules and regulations Bell believes applies to its business (Bouvier Dep. 103:13-104:9). Bell's managers and assistant managers monitor the phone calls made by Bell's employees by listening in and by physically walking behind and watching over the employees as they place calls (Bouvier Dep. 108:1-109:10).

Bell's employees and managers decide, on a file-by-file basis, how many calls to place to the purported tortfeasor (Bouvier Dep. 82:5-12). In addition to manually placing calls, Bell also used LiveVox, a non-attended dialing system, to place calls and leave a

pre-recorded message (Bouvier Dep. 117:1-118:2).   As Mr. Bouvier described it, "[e]ssentially calls were made by LiveVox to people that Bell had designated calls to be made for to, and the gist of the call was to ask – leave a message or ask a person to call Bell." (Bouvier Dep. 117:20-23).  Bell's managers decided which files would be serviced by LiveVox (Bouvier Dep. 120:1-12, 122:20-123:2).   Using a cloud-based system, Bell employees would identify which files, and to which numbers, LiveVox should place calls (Bouvier Dep. 123:4-124:21).   Beginning in October 2012, Bell ceased using LiveVox and increased the number of manual dials placed by Bell's employees (Bouvier Dep. 81:23-82:4, 132:23-25).  Following receipt of this lawsuit, Bell ceased using prerecorded and automated systems (Bouvier Dep. 106:1-11).

Plaintiff Carlos Cabrera was involved in an automobile accident in May 2010 (DE 1 ¶ 19; DE 11 ¶ 19).  Following the accident, GEICO's subrogation department sent two letters and manually dialed Plaintiff's cell phone in an effort to recover money GEICO had paid to its insured as a result of the accident (DE 97 ¶¶ 13-14).  Plaintiff does not have a residential telephone line (DE 97 ¶ 24).  GEICO subsequently referred Plaintiff's file to Bell which resulted in Plaintiff receiving more than 120 calls featuring a pre-recorded message (DE 137-1 ¶ 5).  In response, Plaintiff brought this lawsuit asserting violations of the   Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227, *et seq.*

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard, "[o]nly disputes over facts that might

affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quotation marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Finally, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, "[i]f the non-movant . . . fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

4

## III.   ANALYSIS

Bell's Motion for Summary Judgment hinges on Bell's contention that the alleged calls were not made using an automatic telephone dialing system and that Bell did not make the alleged calls (DE 108 at 8).   Bell attempts to point the finger at LiveVox as the party responsible for the calls (DE 108 at 8-9).   This argument is unavailing and has been soundly rejected by courts throughout the country.

Under the TCPA, it is unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . ." 27 U.S.C. § 227(b)(1)(iii).   The TCPA is "essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).   The hallmark of an automatic telephone dialing system is "the capacity to dial numbers without human intervention." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 2003 WL 21517853, 18 F.C.C.R. 14014 ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).   Accordingly, an automatic telephone dialing system includes equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at ¶ 131.   The FCC affirmed this definition of an automatic telephone

dialing system in 2008. *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 2008 WL 65485, 23 F.C.C.R. 559 ¶ 12 (Fed Commc'n Cmm'n Jan. 4, 2008).  Since then, numerous courts have found that equipment qualifies as an automated dialing system if it is able to dial numbers without human intervention, "for example by calling numbers stored in a database." *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 2004383, at *3 (S.D. Fla. May 16, 2014) (collecting cases).

Bell's corporate designee testified that LiveVox is a non-attended dialing system which Bell uses to place calls and leave a pre-recorded message (Bouvier Dep. 117:1-118:2).  He further testified that Bell's employees would identify files they wanted to be serviced by LiveVox and using LiveVox's cloud-based system, Bell employees would designate the file and the number to which they wanted a call to be placed (Bouvier Dep. 117:1-123:21).  The LiveVox system would then pull the phone number and place a phone call without human intervention (Bouvier Dep. 123:16-19).  It appears that LiveVox would continue to place calls to that number until the "campaign" ended without further action from Bell (Bouvier Dep. 115:11-13; 124:22-125:4).  For example, Plaintiff Carlos Cabrera has produced evidence that he received more than 120 of these calls featuring a pre-recorded message (DE 137-1 ¶ 5).

Although Bell contends that the "calls were not made using an automatic telephone dialing system," (DE 108 at 8), the evidence set forth above suggests otherwise.  The Court notes that every court to consider the issue has found that LiveVox is an automatic telephone dialing system under the TCPA. *See, e.g., Lardner v. Diversified Consultants Inc.*, No. 1:13-CV-22751-UU, 2014 WL 1778960, at *5 (S.D.

6

Fla. May 1, 2014) ("[M]any other courts, including this Court, have followed the FCC's interpretation that automated dialing systems . . . including the specific LiveVox software at issue in this action, are 'automatic telephone dialing systems' under the TCPA."); *Bianchi v. Bronson & Migliaccio, LLP,* Case 0:09–cv–61164–UU, May 27, 2010, D.E. 59 at 5 ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention"); *Davis v. Diversified Consultants, Inc.*, No. 13-10875-FDS, 2014 WL 2944864, at *5 (D. Mass. June 27, 2014) (LiveVox is an automatic telephone dialing system under the TCPA because it has the capacity to store or produce numbers); *Echevvaria v. Diversified Consultants, Inc.*, No. 13 CIV. 4980 LAK AJP, 2014 WL 929275, at *6 (S.D.N.Y. Feb. 28, 2014) (same). In addition, it is undisputed that the calls at issue used a prerecorded voice, which is prohibited by the TCPA. Accordingly, the Court finds that questions of material fact remain regarding whether the specific LiveVox product used by Bell constitutes an automatic telephone dialing system under the TCPA.

Bell also argues that it did not make the alleged calls and that it cannot be held vicariously liable under the TCPA for LiveVox's conduct. Bell's argument that it is immune from TCPA liability because it did not make the calls fails based on a plain reading of the statute. The statute prohibits any person from making calls *using* an automatic telephone dialing system. As explained above, it is undisputed that Bell used the LiveVox system to place calls (Bouvier Dep. 117:1-118:2) and that Plaintiff received more than 120 calls as a result. Consequently, Bell can be held directly liable under the TCPA. *See Lardner*, 2014 WL 1778960, at *6; *Bianchi*, Case No. 0:09–cv–61164, D.E. 59 at 4; *Davis*, 2014 WL 2944864, at *4 (rejecting defendants argument "that LiveVox,

not it, actually made the complained-of calls" and holding that "Defendant cannot deny responsibility merely because it used a technological intermediary.").

Bell also argues half-heartedly that it is "uncontroverted that the calls made to Plaintiff were in relation to collection of subrogation claims.  The calls had nothing to do with advertising or telemarketing."  (DE 108 at 12.)  To the extent Bell is suggesting that only telemarketing or advertising calls fall within the ambit of the TCPA, such a suggestion is without merit.  The TCPA prohibits the making of "any call" using an automatic telephone dialing system or an artificial or prerecorded voice.  27 U.S.C. § 227(b)(1)(iii).  As the FCC has explained, "this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'"  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 2008 WL 65485.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Bell LLC's Motion to Dismiss and For Summary Judgment (DE 108) is **DENIED.**

**DONE AND ORDERED** in chambers in Miami, Florida, this 26th day of November, 2014.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE